# EXHIBIT "1"

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```

GOVERNMENT EMPLOYEES INSURANCE CO., et al.,

                    Plaintiffs,

   –against–

BHARGAV PATEL, M.D., et al.,

                    Defendants.

Case No.: 1:23-cv-02835-KAM-PK

## **DECLARATION OF KATHLEEN ASMUS**

Kathleen Asmus, pursuant to 28 U.S.C. § 1746, hereby declares the truth of the following:

1. I am employed by Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs") as a Claims Manager.

2. I have personal knowledge of the facts set forth in this declaration and would testify as to them in a court of law if called upon to do so.

3. I respectfully submit this declaration in support of Plaintiffs' motion for an order, pursuant to Fed. R. Civ. P. 65 and the Court's inherent power:

    (i)    staying all No-Fault insurance collection arbitrations pending before the American Arbitration Association ("AAA") and state court collection lawsuits that have been commenced by or on behalf of Defendant Patel Medical Care, P.C. ("Patel Medical"), pending disposition of GEICO's claims in this action; and

    (ii)   enjoining Patel Medical, and anyone acting or purporting to act of its behalf, from commencing any new No-Fault insurance collection arbitrations or state court collection lawsuits against GEICO, pending disposition of GEICO's claims in this action.

4. In connection with GEICO's application, it is essential to note that:

(i) In its Complaint in this action, GEICO very plausibly alleges – among other things – that Patel, with the assistance of the John Doe Defendants, used Patel Medical as a vehicle to submit a large amount of fraudulent "No-Fault" insurance billing to GEICO; and

(ii) The Defendants continue to actively submit billing to GEICO through Patel Medical and attempt collection on Patel Medical's pending fraudulent billing through No-Fault collections arbitrations and state court lawsuits, despite the pendency of the present federal court lawsuit, which seeks – among other things – a declaratory judgment to the effect that the Defendants may not collect on Patel Medical's pending fraudulent billing.

## I. The Defendants' Pending Bills and Collection Proceedings

5. Beginning in August 2019 and continuing through the present, Defendants have submitted thousands of no-fault insurance charges relating to what GEICO alleges are non-reimbursable healthcare services, including initial consultations, initial and follow-up examinations, outcome assessment testing, radial pressure wave therapy that was billed as extracorporeal shockwave therapy, nerve conduction velocity testing, and electromyography studies (the "Fraudulent Services"). Over that time period, Patel Medical's billing to GEICO totals more than $3.8 million in charges seeking reimbursement for No-Fault benefits concerning the Fraudulent Services purportedly provided to GEICO Insureds. However, as alleged in GEICO's Complaint, Patel Medical was never entitled to collect no-fault insurance benefits in the first place due to Defendants' fraudulent conduct.

6. Patel Medical is currently prosecuting 607 collection proceedings (2 arbitrations and 605 lawsuits) against GEICO, which are pending before the AAA or in various New York civil covers, seeking to recover, collectively, more than $2,675,000.00. Each of the collection proceedings are the subject of GEICO's declaratory judgment claim in the present case.

7. Virtually all of the collection proceedings (604 out of 607) were filed by Patel Medical after commencement of the instant action.

8. In addition to the bills that are presently subject to civil court suits or arbitrations, Defendants continue to submit bills through Patel Medical to GEICO for the Fraudulent Services. Each of these bills can be the subject of a new No-Fault collection arbitration or No-Fault collection lawsuit in New York civil court. Each of these bills are also the subject of GEICO's declaratory judgment claim in the present case.

9. Despite GEICO's filing of the instant action, which details their fraudulent behavior, the Defendants continue to submit new charges to GEICO for the Fraudulent Services and actively prosecute the collection arbitrations and civil court collection lawsuits against GEICO.

10. Thus, injunctive relief, including a stay of pending No-fault arbitrations and collection lawsuits filed by the Defendants and an injunction against filing additional arbitrations and collection lawsuits is necessary in light of both the risk of multiple inconsistent judgments and the inability of insurers – such as GEICO – to present complex fraud claims and defenses in the context of New York's expedited No-fault arbitration system and congested civil courts, where each individual collection proceeding concerns only a small number of charges and, therefore, are insufficient vehicles to adjudicate all of the claims and defenses concerning the broader fraudulent scheme that spawned those charges.

11. Accordingly, a brief discussion of the procedures that apply in the context of No-fault collections proceedings is warranted.

## II. New York No-Fault Insurance Arbitration and Civil Court Collection Proceedings

12. Under the No-fault Laws, healthcare providers, as assignees of persons injured in automobile accidents, may submit disputes over payment of bills to arbitration or bring a civil action in New York civil court. See N.Y. Ins. Law §5106(b) and 11 N.Y.C.R.R. §§ 65-4.1, et seq.

As discussed below, in contrast to the present action, neither New York's no-fault arbitration system nor its civil courts provide GEICO with a full and fair opportunity to litigate its claims.

13. The No-fault arbitration process begins with the assignment of a "conciliator" who is responsible for making attempts to resolve the matter. If the dispute between the healthcare provider and the insurer cannot be resolved within 60 days, the matter is transferred to arbitration by the designated organization. See 11 N.Y.C.R.R. §§ 65-4.2(b)(2)(iv), 65-4.5(a), and 65-4.5(f). The designated organization, the American Arbitration Association ("AAA"), is the body that is responsible for the administration of the no-fault arbitration process.

14. Except for a nominal filing fee paid by the healthcare provider/claimant, all costs associated with the conciliation and arbitration process before AAA are borne by the insurers in relation to the number of matters that are filed against them by claimants in a given year. See 11 N.Y.C.R.R. § 65-4.2(c)(1). Under this regulatory scheme, GEICO is required to pay AAA a mandatory non-refundable fee in every individual case where it is named as a respondent by a healthcare provider seeking payment on a claim for no-fault benefits that GEICO has denied. Thus, when a healthcare provider files a demand for arbitration, this automatically triggers a series of fees that are assessed against GEICO with respect to that case regardless of the size of the claim, whether the case is meritorious, or whether the applicant ultimately withdraws the claim at any stage during the process.

15. The process is driven solely by the healthcare providers because they are not required to accept offers of settlement at the conciliation stage of the proceedings or to withdraw non-meritorious claims. In fact, healthcare providers routinely withdraw claims without prejudice after matters are moved to arbitration, but prior to or at the actual hearings, to avoid adverse determinations. Because of the way the arbitration process operates, counsel for the healthcare

providers routinely seeks to leverage the costs that are incurred by the insurers associated with the proceedings as a means to collect benefits to which they are not entitled.

16. When an arbitration hearing occurs, the expedited No-fault arbitration procedure set forth in 11 N.Y.C.R.R. § 65-4.1 generally contemplates no substantive discovery in advance of the hearing, nor does it generally permit any meaningful examination or cross-examination of witnesses. In fact, No-fault arbitrations typically are heard and resolved in minutes, with arbitrators conducting one hearing after another, generally in 15-minute intervals over the course of a day. These circumstances render it impractical for an arbitrator to adequately consider a <u>pattern</u> of fraudulent treatment or even the need for discovery. To the limited extent that any discovery is even allowed, No-fault arbitrators generally refuse to permit any discovery beyond the discrete claim or claims before them in a given hearing.

17. As for state court proceedings to collect No-Fault benefits, an insurer's ability to present its fraud claims is likewise limited. Although there is a greater ability to conduct discovery in civil court, the amount in controversy, the limited nature of the billing/healthcare service in dispute in each individual case, and the huge volume of cases pending in the civil court system severely restricts the civil court's ability to address complex fraud claims spanning hundreds of Insureds and thousands of no-fault insurance charges, as in this case.

18. For all of the above reasons, GEICO's proposed motion to stay the pending collection proceedings and enjoin Defendants from commencing any new No-fault insurance collection arbitrations or any new No-fault insurance collection lawsuits against GEICO should be granted. No prior application for the relief requested herein has been made.

I declare the truth of the following subject to the penalties of perjury. Executed at Woodbury, New York on November 21, 2023.

*Kathleen Asmus*
Kathleen Asmus