# EXHIBIT "2"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY
COMPANY, GEICO GENERAL
INSURANCE COMPANY, and GEICO
CASUALTY COMPANY,

Plaintiffs,

- against -

BIG APPLE MED EQUIPMENT, INC.,
DAVID ABAYEV, ALEKSANDR
MOSTOVOY, D.C., SURESH PAULUS, D.O.,
PETER MARGULIES, D.C., and JOHN DOE
DEFENDANTS 1-10,

Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-5786 (PKC) (SJB)

PAMELA K. CHEN, United States District Judge:

On November 30, 2020, Plaintiffs Government Employees Insurance Company, GEICO

Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company

(collectively, "Plaintiffs" or "GEICO") commenced this action for civil RICO violations under 18

U.S.C. § 1962(c) and (d), common law fraud, unjust enrichment, and aiding and abetting fraud

based on an alleged fraudulent scheme by Defendants to submit thousands of fraudulent No-Fault

insurance claims.  (*See* Complaint ("Compl."), Dkt. 1, ¶¶ 1–4, 277–312.)  Plaintiffs seek to recover

funds paid as a result of this scheme, as well as a declaratory judgment disclaiming Plaintiff's

obligation to pay pending claims.  (*Id.* ¶¶ 271–312.)  On February 17, 2021, Plaintiffs moved

against Defendants Big Apple Med Equipment, Inc. ("Big Apple") and David Abayev ("Abayev")

(collectively, the "Big Apple Defendants") seeking an order, pending disposition of the declaratory

judgment claim in this action, (1) staying all pending No-Fault insurance collection arbitrations

commenced against GEICO by or on behalf of Big Apple, and (2) enjoining Big Apple and anyone

1

acting on its behalf from commencing any additional No-Fault insurance collection arbitration or

litigation against GEICO.[1]  (*See generally* Plaintiffs' Memorandum of Law in Support of Motion

to Temporarily Stay Collection Arbitrations and Enjoin Collection Actions ("Pls.' Mem."), Dkt.

36-1.)  For the reasons set forth herein, the motion is granted, and bond is waived.

## BACKGROUND

### I.     New York's No-Fault Insurance Laws

The Comprehensive Motor Vehicle Insurance Reparations Act, *see* N.Y. Ins. L. §§ 5101 *et*

*seq.*, codifies New York's "no-fault scheme," under which "automobile insurers must provide

coverage for 'basic economic loss,' including medical expenses, arising out of the use or operation

of a covered motor vehicle, without regard to fault."  *State Farm Mut. Auto. Ins. Co. v. Parisien*,

352 F. Supp. 3d 215, 221 (E.D.N.Y. 2018) (citing N.Y. Ins. Law §§ 5102, 5103).  Under this

scheme, insured parties ("Insureds") may assign their claims for medical expenses to their

healthcare providers, who then bill the insurer directly.  *Id.* (citing 11 N.Y. Comp. Codes R. &

Regs. tit. 11, § 65-3.11); *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-2802 (ILG), 2018 WL

6031156, at *1 (E.D.N.Y. Nov. 16, 2018).  To be eligible to make a claim for benefits, a healthcare

provider must be lawfully incorporated and, *inter alia*, "(1) must be owned by a physician who

actually engages in the practice of medicine through that corporation, (2) may not bill for services

provided by physicians who are not employees of the corporation, such as independent contractors,

and (3) may not pay kickbacks to third parties for the referral of insureds." *Mayzenberg*, 2018 WL

---

[1] As discussed *infra*, such motions are treated like requests for preliminary injunctions.  *See Gov't Emps. Ins. Co. v. Cean*, No. 19-CV-2363 (PKC) (SMG), 2019 WL 6253804, at *4 (E.D.N.Y. Nov. 22, 2019) (citing, *inter alia*, *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013)).

6031156, at *2 (internal citations omitted); *see also Gov't Emps. Ins. Co. v. Badia*, No. 13-CV-1720 (CBA) (VMS), 2015 WL 1258218, at *8–9 (E.D.N.Y. Mar. 18, 2015).

Insurers must pay or deny claims within 30 calendar days of submission; failure to comply with this requirement precludes the insurer from raising most defenses, including fraud and lack of medical necessity. *Parisien*, 352 F. Supp. 3d at 221 (citing N.Y. Ins. Law § 5106(a)). Insurers must also provide claimants an opportunity to arbitrate any dispute arising from the insurers liability to pay a claim. *Mayzenberg*, 2018 WL 6031156, at *2 (citing N.Y. Ins. Law § 5106(b)). These arbitrations "are 'special expedited' proceedings, where no oral arguments are heard, virtually no defenses are permitted, and discovery is limited or non-existent." *Id.* (citing N.Y. Comp. Codes R. & Regs. tit. 11, § 65-4.5); *see also Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014).

## II.    Factual Background

GEICO is authorized to conduct business and issue automobile insurance policies in the State of New York.  (Compl., Dkt. 1, ¶ 11.)  Big Apple, a corporation owned, operated, and controlled by Abayev, is a retailer of durable medical equipment ("DME")[2] and orthotic devices[3] (collectively "Equipment").  (*Id.* ¶¶ 1–2, 12.)  Abayev is not and has never been a licensed healthcare provider.  (*Id.* ¶ 13.)  Plaintiffs allege that Abayev, "devised a scheme in conjunction

---

[2] Durable medical equipment consist of items that can withstand repeated use and are used for medical purposes by individuals in their homes, including items such as bed boards, cervical pillows, orthopedic mattresses, electronic muscle stimulator units, infrared heat lamps, lumbar cushions, orthopedic car seats, transcutaneous electrical nerve stimulators, electrical moist heating pads, cervical traction units, and whirlpool baths.  (Compl., Dkt. 1, ¶ 41.)

[3] Orthotic devices are applied to the body to align, support, or correct deformities, or to improve the movement of joints, spine, or limbs, including items such as cervical collars, lumbar supports, knee supports, ankle supports, and wrist braces.  (Compl., Dkt. 1, ¶ 42.)

with various healthcare providers,[4] . . . either directly or through others who are not readily identifiable to GEICO, to submit large volumes of billing to GEICO and other New York automobile insurance companies for purportedly providing [f]raudulent Equipment that was medically unnecessary, illusory, and otherwise not reimbursable." (*Id.* ¶ 2.)  To accomplish this goal, Abayev, allegedly entered into financial arrangements with Referral Defendants, and other healthcare providers, either directly or through third parties, in exchange for referrals to Big Apple for fraudulent Equipment. (*Id.* ¶ 13.)  Specifically, Big Apple Defendants obtained prescriptions for medically unnecessary custom-fitted fraudulent Equipment from Referral Defendants, and other healthcare providers, who treated Insureds at "multi-disciplinary medical offices in the New York metropolitan region that cater to high volumes of no-fault insurance patients" (the "Clinics"). (*Id.* ¶ 54.)  After Big Apple Defendants received the "medically unnecessary prescriptions" they sought reimbursement from Plaintiffs for the prescribed Equipment by submitting one of two forms, either the NF-3 or HCFA-1500. (*Id.* ¶ 55.)

Since January 1, 2019, Big Apple Defendants have allegedly submitted more than $1.6 million in fraudulent claims to Plaintiffs. (*Id.* ¶ 52.)  Plaintiffs allege that Big Apple Defendants submitted fraudulent claims for Equipment that was (1) purportedly provided to Insureds pursuant to unlawful financial arrangements (*i.e.*, illegal kickbacks) with Referral Defendants and other healthcare providers (*see* ¶¶ 66–90); (2) not medically necessary, but rather based on predetermined fraudulent protocols designed to enrich Defendants (*id.* ¶¶ 91–211); (3) not actually provided to the Insureds (*id.* ¶¶ 212–24); and (4) described using Healthcare Common Procedure

---

[4] This alleged scheme involved other Defendants named in this matter, including Aleksandr Mostovoy, D.C.; Suresh Paulus, D.O.; Ashley Kiaei, D.C.; and Peter Margulies, D.C. (collectively "Referral Defendants"). (Compl., Dkt. 1, ¶ 2.)  Defendant Kiaei was terminated from this matter on March 14, 2021. (*See* 3/14/2021 Docket Order.)

Coding System ("HCPCS") Codes[5] that misrepresented the type and nature of fraudulent Equipment purportedly provided to the Insureds (*id.* ¶¶ 225–56).  (*See* Pls.' Mem., Dkt. 36-1, at 5.)  For these reasons, Plaintiffs seek a judgment declaring that Defendants have no right to receive payment for any pending bills submitted to GEICO in the name of Big Apple.  (Compl., Dkt. 1, ¶¶ 271–76.)

In total, Plaintiffs voluntarily paid Big Apple Defendants over $122,000 in reimbursements and have disputed $877,000 in pending claims.  (Pls.' Mem., Dkt. 36-1, at 1.)  As of the filing of Plaintiffs' February 17, 2021 motion, Big Apple Defendants were prosecuting 774 individual arbitrations against Plaintiffs related to disputed claims.  (*Id.* at 9.)  The prosecution of these arbitrations appears to be Defendant Big Apple's only ongoing business activity.  (*See id.* at 9–10.)  After Big Apple first billed GEICO in January 2019, Danielle Perdomo, an investigator for GEICO, visited Big Apple's operating address at 16102 Union Turnpike, Fresh Meadows, New York, observed a red awning with the name "Big Apple," and met Abayev.  (*Id.*; Declaration of Danielle Perdomo ("Perdomo Decl."), Dkt. 36-3, ¶¶ 1, 4–5.)  Big Apple submitted its last bill to GEICO for healthcare goods purportedly provided to Insureds on December 29, 2019.  (Pls.' Mem., Dkt. 36-1, at 10.)  On November 17, 2020, Investigator Perdomo returned to the Union Turnpike location, where she discovered that Big Apple's awning had been replaced with an awning for "Fresh Meadows Opth[a]mology" and that Big Apple no longer operated out of this location.  (Perdomo Decl., Dkt. 36-3, ¶ 8.)  An alternative address for Big Apple is not listed with

---

[5] The No-Fault laws provide that healthcare providers can submit charges for DME up to the maximum amounts listed under the New York Medicaid Fee Schedule ("Fee Schedule"), which sets forth maximum reimbursement amounts based on HCPCS Codes.  (Pls.' Mem., Dkt. 36-1, at 5; *see* 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 442.2)

the New York State Department of State or revealed by an internet search.  (*Id.* ¶ 9.)  Big Apple

does not have any real or personal property.  (*Id.* ¶ 10.)

## LEGAL STANDARD

Plaintiffs' requests for a motion to stay pending arbitrations and enjoin additional actions

from being filed will be "considered in tandem" and "utilizing the same standard" applied to

requests for preliminary injunctions.[6]  *Cean*, 2019 WL 6253804, at *4 (citing, *inter alia*, *Elzanaty*,

929 F. Supp. 2d at 217); *see Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 449

(E.D.N.Y. 2020), *appeal dismissed* (May 11, 2020).  To justify a preliminary injunction,

> a movant must demonstrate (1) irreparable harm absent injunctive relief; and
> (2) "either a likelihood of success on the merits, or a serious question going to the
> merits to make them a fair ground for trial, with a balance of hardships tipping
> decidedly in the plaintiff's favor."

*Elzanaty*, 929 F. Supp. 2d at 217 (quoting *Metro. Taxicab Bd. of Trade v. City of New York*, 615

F.3d 152, 156 (2d Cir. 2010)).  "The showing of irreparable harm is perhaps the single most

important prerequisite for the issuance of a preliminary injunction, and the moving party must

show that injury is likely before the other requirements for an injunction will be considered."

*Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (per curiam) (internal quotation marks,

---

[6] In cases such as this one, district courts have found that they have the authority to enjoin
pending and future arbitrations, *see Parisien*, 352 F. Supp. 3d at 233 (citing *Mayzenberg*, 2018
WL 6031156, at *4 (finding "that it would frustrate the purposes of the Federal Arbitration Act
and judicial economy if the Act is interpreted to preclude the Court from enjoining Defendants'
No-Fault collection arbitrations")), and to restrain a party from instituting future state court
proceedings, *see Cean*, 2019 WL 6253804, at *4 n.3 (collecting cases, including *Pathways, Inc. v.
Dunne*, 329 F.3d 108, 114 (2d Cir. 2003) ("The Anti–Injunction Act does not prevent a federal
court from restraining a party from instituting future state proceedings.")).  Big Apple Defendants
do not dispute this proposition, nor cite any contrary case law.  The Court accordingly finds that it
has the authority to grant the relief sought by Plaintiffs.  *See Wellmart RX, Inc.*, 435 F. Supp. 3d
at 456 ("[T]he court does not consider either the Federal Arbitration Act, 9 U.S.C. § 2, nor the
Anti-Injunction Act, 28 U.S.C. § 2283, as barring its authority to enjoin pending and future
arbitrations, or future state law collection suits.").

alternations, and citations omitted); *accord Wellmart RX, Inc.*, 435 F. Supp. 3d at 449; *Cean*, 2019 WL 6253804, at *4.

## DISCUSSION

### I.     Irreparable Harm

Irreparable harm must not be "remote or speculative," but "actual and imminent," *Mayzenberg*, 2018 WL 6031156, at *5 (quoting *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).  Irreparable harm "occurs where 'remedies available at law, such as monetary damages, are inadequate to compensate' the plaintiff for its injury." *Id.* (quoting *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010)); *see, e.g.*, *Wellmart RX, Inc.*, 435 F. Supp. 3d at 449; *Gov't Emps. Ins. Co. v. Moshe*, No. 20-CV-1098 (FB) (RER), 2020 WL 3503176, at *1 (E.D.N.Y. June 29, 2020).

GEICO argues that, absent the requested injunctive relief, it will suffer irreparable harm because, *inter alia*, (1) the hundreds of pending arbitrations—regarding the very same claims that are the subject of the declaratory judgment claim in this matter—"may result in awards that are, at best inconsistent with judicial rulings [in this action] and, at worst, essentially ineffective," and (2) Big Apple is essentially judgment proof, and therefore, any damages award is unlikely to provide adequate compensation.  (Pls.' Mem., Dkt. 36-1, at 11–16.)  In opposition, Big Apple Defendants argue that Plaintiffs have not specified the nature or immediacy of any potentially inconsistent judgments and that two decisions, *Allstate Insurance Co. v. Harvey Family Chiropractic, Physical Therapy & Acupuncture* and *Allstate Insurance Co. v. Avetisyan*, weigh heavily against granting injunctive relief.  (Defendants' Memorandum of Law in Opposition to Motion for a Preliminary Injunction and a Stay ("Defs.' Opp'n"), Dkt. 45, at 4–14.)  The Court finds that the law is decidedly on Plaintiffs' side and concludes that GEICO has met its burden of demonstrating irreparable harm.

Courts have not hesitated to grant motions seeking preliminary relief like Plaintiff's motion under similar circumstances. *See, e.g., Wellmart RX, Inc.*, 435 F. Supp. 3d at 456 (granting motion to stay all pending collection arbitrations, enjoin any future collection arbitrations, and enjoin future collection lawsuits, where insurance company sought declaratory judgment against defendants for allegedly perpetrating fraudulent collection scheme under New York's No-Fault laws); *Moshe*, 2020 WL 3503176, at *4 (same); *Cean*, 2019 WL 6253804, at *6 (same); *Parisien*, 352 F. Supp. 3d at 220–21 (granting motion to stay all pending collection lawsuits, stay all collection arbitrations, and enjoin all future collection lawsuits or arbitrations). In doing so, courts have reiterated that the harm at issue is not merely the "money, time and energy necessarily expended in the absence of a stay," which is not "irreparable," *Elzanaty*, 929 F. Supp. 2d at 221–22 (quoting *Jayaraj v. Scappini,* 66 F.3d 36, 39 (2d Cir.1995)), but rather the "concern [] with wasting time and resources in an arbitration with awards that might eventually be, at best, inconsistent with th[e] Court's ruling, and at worst, essentially ineffective," *id.*; *see, e.g.*, *Moshe*, 2020 WL 3503176, at *2 ("Defendants have 4,786 pending arbitrations against GEICO that present a risk of inconsistent judgments. This certainly establishes irreparable harm."); *Cean*, 2019 WL 6253804, at *5 ("GEICO argues that wasting time and resources in arbitrations with awards that might eventually be, at best, inconsistent with judicial rulings and, at worst, essentially ineffective, constitutes irreparable harm. The Court agrees."); *Mayzenberg*, 2018 WL 6031156, at *5 ("The concern is that allowing over 180 arbitrations to be heard by a mix of arbitrators, each of whom will likely come to their own independent and contradictory conclusions that may be rendered ineffective by this Court, will result in harm to GEICO from which it cannot recover."); *Parisien*, 352 F. Supp. 3d at 233 ("Courts have readily held that irreparable harm occurs where, as here, an insurer is required to waste time defending numerous no-fault actions when those same

8

proceedings could be resolved globally in a single, pending declaratory judgment action."); *see also Wellmart RX, Inc.*, 435 F. Supp. 3d at 450 ("The conclusions and reasoning in *Mayzenberg* and *Elzanaty* have been reiterated time and again in this Circuit." (collecting cases)).

The Court agrees with this reasoning, and finds that, here, permitting 774 individual arbitrations to be heard by different arbitrators, "each of whom will likely come to their own independent and contradictory conclusions that may be rendered ineffective by this Court," will result in irreparable harm to Plaintiffs seeking a declaratory judgment as to the claims at issue in those arbitrations. *See Moshe*, 2020 WL 3503176, at *2; *Mayzenberg*, 2018 WL 6031156, at *5. The Court also rejects Big Apple Defendants' argument that any potential inconsistencies arising out of the hundreds of arbitration awards are too speculative to warrant injunctive relief.  At this stage, the Court does not have to address "the precise effect of an inconsistent declaratory judgment from this Court on certain arbitration awards"; rather, "[i]t is sufficient to recognize the large realm of potential problems this may cause on the validity of those awards, especially in light of their multitude and internal inconsistency with each other." *Elzanaty*, 929 F. Supp. 2d at 222.  Given the multitude of individual arbitrations at issue here, it is impossible to overlook "the large realm of potential problems" that could arise from arbitral rulings that are both inconsistent with each other and/or with any declaratory judgment eventually ordered by the Court.  The Court's concerns about such inconsistency, and the consequent irreparable harm to Plaintiffs, is further supported by the reality, as found by the Second Circuit, that "New York's arbitration process for no-fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible. Discovery is limited or non-existent.  Complex fraud and RICO claims, maturing years after the initial claimants were fully reimbursed, cannot be shoehorned into this system." *Mun*, 751 F.3d at

99 (internal citations omitted).  Indeed, doing so here would cause irreparable harm to Plaintiffs.
*See Mayzenberg*, 2018 WL 6031156, at *6.

In reaching this conclusion, the Court is not persuaded by the four-page summary order in
*Allstate Insurance Co. v. Harvey Family Chiropractic*, 677 Fed. App'x 716 (2d Cir. 2017)
(summary order), upon which Big Apple Defendants rely.  In *Harvey*, the panel affirmed the
district court's denial of a preliminary injunction motion similar to the one being sought here.  677
F. App'x at 717–18 (denying insurance company plaintiffs' motion seeking to enjoin defendants
from proceeding with No-Fault insurance claims pending in state court and filing new arbitration
proceedings or civil actions to collect No-Fault benefits from plaintiffs).  There, the panel
reasoned, without any factual discussion or analysis, that the record was devoid of evidence that
the plaintiff could not be fully compensated through money damages, that injuries "in terms of
money, time and energy necessarily expended" were insufficient to establish irreparable harm, and
that the declaratory relief sought by plaintiffs was not "threatened by the other proceedings."  *Id.*
at 718.  Here, by contrast, the record supports Plaintiffs' contention that a money damages award
is unlikely to provide adequate compensation because Big Apple is no longer in business, except
to collect the allegedly fraudulent reimbursements from Plaintiff.  Big Apple no longer operates a
storefront and has no assets other than what may be in the bank and accounts receivable, *i.e.*, funds
collected through arbitration proceedings.[7]  (Pls.' Mem., Dkt. 36-1, at 9–10, 15–16; Perdomo

---

[7] In its opposition, Big Apple does not dispute Plaintiffs' assertion that it is unlikely to be
able to satisfy a money damages award or judgment, but rather obfuscate the issue by arguing that
Plaintiffs did not bring a RICO claim, with a request for treble damages, against Big Apple (only
against Abayev and other individual defendants), and that any liability from aiding and abetting
fraud or a RICO violation will be joint and several.  (*See* Defs.' Opp'n, Dkt. 45, at 5–6.)  However,
the fact remains that Plaintiff has presented evidence that strongly suggests it will not be able to
adequately recover damages from Big Apple—against which it has brought common law fraud
and unjust enrichment claims seeking compensatory damages in excess of $122,000, plus punitive

Decl., Dkt. 36-3, ¶¶ 4–10.)  Moreover, the fact that there are 774 pending arbitrations in this case demonstrates that more than the mere expenditure of "money, time and energy" is at stake; rather, the inevitable inconsistencies that will arise from more than 700 individual arbitral rulings (especially as to Plaintiff's assertions of lack of medical necessity as a defense), both as to each other and as to the Court's rulings, will frustrate the declaratory judgment relief sought by Plaintiffs.  Thus, the Court joins the other courts that have declined to follow *Harvey*.[8]  *See e.g.*, *Wellmart RX, Inc.*, 435 F. Supp. 3d at 451; *Mayzenberg*, 2018 WL 6031156, at *5; *see also Moshe*, 2020 WL 3503176, at *2 ("*Harvey* does not preclude granting an injunction to avoid inconsistent judgments."); *Gov't Emps. Ins. Co. v. Strutsovskiy*, No. 12-CV-330 (LJV), 2017 WL 4837584, at *7 (W.D.N.Y. Oct. 27, 2017) ("*Harvey* provides only limited information about the facts in that case, and so this Court cannot meaningfully compare the facts and circumstances giving rise to the summary order with those in the case at bar.").

The Court is likewise unpersuaded by the other decision on which Big Apple Defendants relies, *Allstate Insurance Co. v. Avetisyan*, No. 17-CV-4275 (LDH) (RML), 2018 WL 6344249 (E.D.N.Y. Oct. 30, 2018), which is materially distinguishable from the present matter.  In *Avetisyan*, the court denied insurance company plaintiffs' request for a temporary restraining order and preliminary injunction to enjoin defendants from proceeding with No-Fault collection actions or arbitrations and filing new ones.  2018 WL 6344249, at *1, *5.  The court rejected the plaintiffs'

---

damages, costs, and interest.  (*See* Compl., Dkt. 1, ¶¶ 291–303, 313.)  This supports a finding of irreparable harm.  *See Wellmart RX, Inc.*, 435 F. Supp. 3d at 452–53.

[8] The Court notes, as well, that "[r]ulings by summary order do not have precedential effect."  *AHW Inv. P'ship v. Citigroup, Inc.*, 806 F.3d 695, 703 n.5 (2d Cir. 2015) (quoting 2d Cir. Local R. 32.1.1(b)).  "[T]he rationale underlying [this rule] is that such orders, being summary, frequently do not set out the factual background of the case in enough detail to disclose whether its facts are sufficiently similar to those of a subsequent unrelated case to make our summary ruling applicable to the new case."  *Id.* (first alteration in original) (quoting *Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir.2011)).

argument that an injunction was warranted because continued arbitration and litigation in parallel proceedings presented a serious risk of inconsistent rulings, and found that no such risk existed because the fraudulent coding and billing activity plaintiffs alleged in support of their federal RICO claim and request for declaratory judgment were not asserted as defenses in the parallel proceedings. *Id.* at *2, *4. Thus, the court concluded, "none of the [p]arallel [p]roceedings will result in any determination on the issue of fraud" and "there is simply no danger of inconsistent determinations." *Id.* at *4. Here, by contrast, Plaintiffs have asserted lack of medical necessity both as a defense in the pending arbitrations and as a basis for declaratory judgment in this case. (*See* Compl., Dkt. 1., ¶¶ 91–211 (alleging Big Apple Defendants submitted bills that were not based on medical necessity, but "predetermined fraudulent protocols"), *id.* ¶¶ 271–76 (identifying lack of medical necessity as a basis for granting declaratory relief); Declaration of Gary Tsirelman, Dkt. 45-1, ¶¶ 11–12; *see also* Dkt. 45-3, at ECF[9] 2 ("At issue is whether [GEICO] properly denied benefits based upon a lack of medical necessity."), ECF 14 (identifying dispute as "[w]hether [equipment] was medically necessary"); ECF 20 ("The question presented is whether the [equipment was] medically necessary").) Thus, unlike in *Avetisyan*, here, there is a real danger of inconsistent determinations among the 774 arbitrations and a frustration of purpose if a declaratory judgment is issued in Plaintiffs' favor. *See Wellmart RX, Inc.*, 435 F. Supp. 3d at 451 (distinguishing *Avetisyan* because plaintiffs challenged the underlying reimbursement claims, in part, on the basis that defendant "billed for medically unnecessary prescriptions"; hence, "[a]ny finding by an arbitration panel that [defendant] has submitted a valid claim would necessarily

---

[9] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

entail a finding that the underlying prescription was medically necessary, and thus conflict if a declaratory judgment were entered in favor of [plaintiffs]" (internal citation omitted)).

Thus, for all of these reasons,[10] the Court finds that Plaintiffs have demonstrated irreparable harm absent an injunction.

## II.    Serious Question Going to the Merits

At this early stage in the case, "[l]ikelihood of success [on the merits] is not the focus . . . because any likelihood of success inquiry would be premature.  Instead, the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial." *Parisien*, 352 F. Supp. 3d at 234 (quoting *Elzanaty*, 929 F. Supp. 2d at 217); *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020) ("Ordinarily, to obtain a preliminary injunction, the movant has to 'show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" (citation omitted)).

---

[10] The Court also finds unpersuasive and unavailing Big Apple Defendants' reliance on two oral rulings by Judge Bianco denying preliminary injunctions.  (*See* Defs.' Opp'n, Dkt. 45, at 10.)  In *Allstate Insurance Co. v. Zelefsky*, 13-CV-5830 (JFB) (AKT) (Apr. 2, 2014) (ECF No. 66), Judge Bianco concluded that plaintiffs could be adequately compensated through money damages, and found that the concern of potential inconsistent results was insufficient "under the circumstances" to constitute irreparable harm.  (*See* Dkt. 45-4, at Tr. 54:6–15.)  In *Allstate Insurance Co. v. Eastern Island Medical Care, P.C.*, 16-CV-2802 (JFB) (AKT) (June 5, 2017) (ECF No. 106), Judge Bianco also concluded that plaintiffs could be adequately compensated through money damages, and that, based on the facts, the risk of inconsistencies in judgments did not establish irreparable harm.  (*See* Dkt. 45-5, at Tr. 24:4–16.)  While neither summary ruling provides sufficient detail or analysis for the Court to discern the precise basis for Judge Bianco's conclusion that plaintiffs were not at risk for irreparable harm, for the reasons already stated, this case appears to be distinguishable in that Plaintiffs have demonstrated both a risk that Big Apple may not be able to satisfy payment of money damages, and that there is a serious risk of inconsistent determinations in parallel proceedings that will conflict with the declaratory judgment relief sought by Plaintiffs.  *See Wellmart RX, Inc.*, 435 F. Supp. 3d at 452 (finding *Zelefsky* and *Eastern Island* irrelevant and unpersuasive to the court's analysis).

In this case, Plaintiff seeks a declaratory judgment stating that "Defendants have no right to receive payment for any pending bills submitted to GEICO in the name of Big Apple." (Compl., Dkt. 1, ¶ 276; Pls.' Mem., Dkt. 36-1, at 1.)  The Declaratory Judgment Act "vests a district court with discretion to exercise jurisdiction over a declaratory action," and in determining whether to exercise that discretion, district courts should consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005); *Mayzenberg*, 2018 WL 6031156, at *6.

As an initial matter, the Court finds that such a judgment would indeed settle the legal issues involved and offer relief from uncertainty regarding pending bills.  Further, for the reasons explained below, the Court concludes that Plaintiffs have demonstrated that there is a serious question going to the merits of their declaratory judgment claim.

Plaintiffs allege that Big Apple Defendants are not entitled to receive payment because they submitted claims for fraudulent Equipment that was (1) purportedly provided to Insureds pursuant to unlawful financial arrangements (*i.e.*, illegal kickbacks) with Referral Defendants and other healthcare providers (*see* Compl., Dkt 1, ¶¶ 66–90); (2) not medically necessary, but rather based on predetermined fraudulent protocols designed to enrich Defendants (*id.* ¶¶ 91–211); (3) not actually provided to the Insureds (*id.* ¶¶ 212–24); and (4) described using HCPCS Codes that misrepresented the type and nature of fraudulent Equipment purportedly provided to the Insureds (*id.* ¶¶ 225–56).  (*See* Pls.' Mem., Dkt. 36-1, at 5.)

With respect to the payment of illegal kickbacks, the Complaint alleges that payments were made to the Referral Defendants and other healthcare providers, through third parties, for the purpose of obtaining prescriptions for Equipment.  (*Id.* ¶ 76.)  In support of this allegation, the

Complaint identifies several specific payments Big Apple Defendants made between May and July 2019 to third-party entities that allegedly served no legitimate purpose, including a $10,675.23 payment to Statewide Employment Professionals, Inc., when Abayev is Big Apple's only employee (*id.* ¶¶ 69–70); a $9,632.38 payment to Prompt Process Serving & Investigation Inc., which is not a licensed process serving agency (*id.* ¶ 71); almost $50,000 in payments within a two-month period to Med Supply Professionals, Inc. (*id.* ¶¶ 72–73); and more than $63,000 in payments within a two-month prior to NY & EU Supply, Inc., which is not a licensed DME and orthotic devices supplier (*id.* ¶¶ 74–75). In further support of the allegation that the prescriptions for Equipment were fraudulent and the result of "unlawful financial arrangements," the Complaint also provides specific examples of five Insureds who received Equipment without any involvement with Big Apple Defendants, and often without ever being measured for or instructed on the use of such Equipment. (*Id.* ¶¶ 83–86.)

In support of the allegation that prescriptions were not medically necessary, but instead based on "predetermined fraudulent protocols" (*id.* ¶ 91), the Complaint alleges that Equipment was almost always prescribed regardless of the circumstances of the Insured's accident or the severity of the Insured's injuries and symptoms (*see id.* ¶¶ 92–97, 107–115, 138–141, 190), without explanation of medical necessity in the Insured's examination report (*see id.* ¶¶ 129–132, 142–143, 148–154, 198–203), and despite conflicting treatment recommendations (*i.e.*, Insureds were given a prescription for an orthotic device to restrict a body part and, also, contrary recommendation for physical therapy to bend and stretch that same body part) (*see id.* ¶¶ 116–118, 133–134, 158–159, 204–206). (Pls.' Mem., Dkt. 36-1, at 18.) In particular, the Complaint alleges

that "an overwhelming majority of the Insureds associated with claims identified in Exhibit '1'"[11] had a similar experience—the Insured would (1) visit a Clinic following a car accident; (2) be seen by a healthcare provider; (3) be directed to undergo conservative treatment and often prescribed Equipment; and (4) return to the Clinic for one or more additional evaluations and receive additional prescription(s) for "virtually identical" Equipment, specifically custom fitted lumbar sacral orthotics ("LSO") and/or cervical traction units.  (Compl., Dkt 1, ¶¶ 100–104.)

The Complaint includes specific examples of individual Insureds' experiences, thereby illustrating patterns of treatment that support the allegation that prescriptions were based on "predetermined fraudulent protocols," not medical necessity.  (*See e.g., id.* ¶¶ 124–26 (describing experiences of five patients with Defendant Mostovoy who, *inter alia*, "virtually always" prescribed a "cervical traction unit" and/or "LSO w/ APL Control fitted and Adjusted"), ¶¶ 144–45 (describing experiences of five patients with Defendant Paulus who, *inter alia*, "virtually always" prescribed a "cervical posture pump" and "LSO W/APL Control Custom"); ¶¶ 190–96 (describing experiences of five patients with Defendant Margulies who, *inter alia*, "virtually always" prescribed a "cervical traction unit" and/or "LSO APL Control," often using two separate prescriptions).  Moreover, these allegations are bolstered by the Declaration of Robert Borzone,[12] offered in support of Plaintiffs' instant motion, who reviewed treatment records for approximately 150 Insureds billed to Plaintiffs through Big Apple, and concluded, to a reasonable degree of

---

[11] Exhibit 1 to the Complaint is a spreadsheet summarizing a "[r]epresentative [s]ample" of 2,564 allegedly fraudulent claims, identified by, *inter alia*, claim number, date of accident, service provided date, HCPCS code, product description, and charge amount.  (*See generally* Dkt. 1-3.)

[12] Robert Borzone is a duly licensed chiropractor and acupuncturist in the State of New York.  (Declaration of Robert Borzone ("Borzone Decl."), Dkt. 36-5, ¶ 1.)  He has been in private practice as a chiropractor for over 35 years, and as an acupuncturist for over 19 years.  (*Id.* ¶¶ 2–3.)

medical certainty, that the Equipment "provided to the Insureds by Big Apple were not medically necessary and were provided as a result of predetermined protocols employed without regard for actual patient care." (Borzone Decl., Dkt. 36-5, ¶¶ 5–17.) In particular, Borzone concluded that in virtually all cases the Insureds were prescribed "virtually identical types of DME regardless of each Insured's individual injuries or presentation," specifically a cervical traction unit and a lumbar sacral orthotic brace, which must be custom-fitted to each patient. (*Id.* ¶¶ 6, 9.)

Finally, with respect to alleged fraudulent billing, the Complaint alleges that the bills and other documents submitted to Plaintiffs both misrepresented that the equipment prescribed was medically necessary and that the equipment for which GEICO was billed was actually provided to the patient. (Compl., Dkt. 1, ¶¶ 212–14.) Specifically, the Complaint includes five examples of instances where Insureds either never received the product for which Plaintiffs were billed or received only one of two products for which Plaintiffs were billed. (*Id.* ¶¶ 216–24.) Further, the Complaint alleges that Big Apple Defendants submitted hundreds of bills containing HCPCS Codes for Equipment that require customized fit—for example, lumbar orthotics (Code L0637) and knee orthotics (Code L1832)—but that, upon information and belief, Insureds were provided equipment that did not meet the specifications associated with those codes, *i.e.*, were not actually customized to fit the patient. (*Id.* ¶¶ 225–56.)

Big Apple Defendants argue that GEICO has failed to meet its burden because the Complaint fails to establish any link between Big Apple's payments to third parties and any of the Referral Defendants, and because it identifies only a handful of Insureds,[13] among hundreds of

---

[13] Defendants note that these examples are based on "hearsay testimony" that GEICO's investigators obtained from interviews with Insureds, but concede that "hearsay testimony may be raised in a motion for preliminary injunction." (Defs.' Opp'n, Dkt. 45, at 15.) Defendants are correct. "[I]t is well-established that the strict rules of evidence do not apply to a hearing on a motion for a preliminary injunction," and a Court may consider hearsay evidence. *See Wellmart*

claims, who never received their prescribed DME. (Defs.' Opp'n, Dkt. 45, at 14–15.) The Court

is not persuaded by these arguments. At this early stage, before discovery and in the context of an

allegedly complex fraudulent scheme involving numerous actors, known and unknown, it is

premature to focus, as Defendants appear to, on the likelihood of success. *See Parisien*, 352 F.

Supp. 3d at 234. Rather, the Court is focused on "whether there is a serious question going to the

merits to make them a fair ground for trial." *Id.* (quoting *Elzanaty*, 929 F. Supp. 2d at 217). The

Court finds that Plaintiffs' identification of numerous large payments by Big Apple, within a short

span of time, and to third parties that serve no apparent legitimate purpose, raises serious questions

as to whether Big Apple Defendants were engaged in unlawful financial arrangements related to

obtaining fraudulent prescriptions. The Court also finds that Plaintiffs' detailed descriptions of

five different Insureds who never received the DME they were prescribed raises serious question

as to whether Big Apple Defendants engaged in fraudulent billing practices. In addition, the 79-

page Complaint contains numerous other detailed examples of individual Insureds who received

virtually identical Equipment, raising serious questions about the medical necessity of the

prescriptions upon which Big Apple Defendants based their reimbursement claims. *See Wellmart*

*RX, Inc.*, 435 F. Supp. 3d at 455 ("Facially legitimate treatments may be provided with little

variance across multiple patients, but it is only by analyzing the claims as a whole that the

irresistible inference arises that the treatments are not being provided on the basis of medical

necessity." (quoting *Parisien*, 352 F. Supp. 3d at 229)). Serious questions about the medical

necessity of treatments, and relatedly, the existence of predetermined fraudulent protocols, are

---

*RX, Inc.*, 435 F. Supp. 3d at 455 (quoting *Sills Rd. Realty LLC v. Town of Brookhaven*, No. 07-
CV-4584 (TCP) (ETB), 2008 WL 11449282, at *1 (E.D.N.Y. July 10, 2008)). Therefore, the
Court considers these reports by Insureds, as well as other hearsay evidence in the form of
Declarations, as part of its analysis here.

further underscored by Borzone's analysis of treatment records for approximately 150 Insureds and his conclusion that virtually identical Equipment was provided to patients without regard for actual patient care or need.  (Borzone Decl., Dkt. 36-5, ¶¶ 5–17.)

Taken together, the fact-laden Complaint, the exhibit containing more than 2,000 allegedly fraudulent claims, and Borzone's Declaration lead the Court to conclude that Plaintiffs have "adequately detailed a complicated scheme of alleged fraud activity," such that the request for injunctive relief does not "rest on mere hypotheticals." *Parisien*, 352 F. Supp. 3d at 234 (alteration and citations omitted); *see Moshe*, 2020 WL 3503176, at *2 ("[A] complaint alone can be sufficient to grant an injunction," particularly where "the complaint comprehensively details regulatory violations, unnecessary medical services, and unlawful referrals.")  Thus, the Court finds that there is a serious question going to the merits of the declaratory judgment claim.

### III.    Balancing the Hardships

Finally, having found that are "'serious questions going to the merits,' in lieu of a 'likelihood of success on the merits,' for a preliminary injunction to issue, the court must further determine if there is a 'balance of hardships tipping decidedly' in [Plaintiff]'s favor." *Wellmart RX, Inc.*, 435 F. Supp. 3d at 455 (quoting *Parisien*, 352 F. Supp. 3d at 234); *see Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) ("Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips *decidedly*' in its favor, its overall burden is no lighter than the one it bears under the 'likelihood of success' standard." (emphasis in original and internal citation omitted)).

As previously discussed, if Big Apple Defendants' pending collection proceedings are not stayed and future collection actions enjoined, GEICO will suffer irreparable harm if it succeeds in proving its declaratory judgment claim.  By contrast "[i]f the preliminary injunction is granted and

[Plaintiff] fails to prove its claim[], then, at worst, [Big Apple] Defendants' recovery of the no-fault benefits to which they are entitled will be delayed." *Parisien*, 352 F. Supp. 3d at 234; *accord Wellmart RX, Inc.*, 435 F. Supp. 3d at 455.  In its opposition, Defendants do not offer a single argument that they will face any hardship if the motion is granted.  (Defs.' Opp'n, Dkt. 45, at 15–16.)  The Court finds, in fact, as other courts have, that "granting the stay and injunction will actually save *all parties* time and resources" because "[r]ather than adjudicating hundreds of individual claims in a piecemeal fashion, all claims can be efficiently and effectively dealt with in a single declaratory judgment action."  *Cean*, 2019 WL 6253804, at *5 (emphasis added) (citing *Elzanaty*, 929 F. Supp. 2d at 222); *see Mayzenberg*, 2018 WL 6031156, at *7 ("[I]it is obviously more efficient and beneficial for Defendants if all of their claims are resolved in one action, rather than in hundreds of different proceedings.")  Thus, the Court concludes that the balance of hardships tips decidedly in favor of granting the motion.

## IV.   Security for the Requested Injunction

Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "[A]n exception to the bond requirement has been crafted for cases involving the enforcement of 'public interests' arising out of 'comprehensive federal health and welfare statutes.'"  *Wellmart RX, Inc.*, 435 F. Supp. 3d at 456 (quoting *Pharm. Soc. of State of New York, Inc. v. New York State Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995)).

Courts in this district have reasoned that the enforcement of New York No-Fault insurance statutes, which "were designed to protect accident victims regardless of fault by enabling them to obtain necessary medical attention without concern of the ability to pay" is in the public interest,

as is the prevention of fraud on the healthcare system.  *Mayzenberg*, 2018 WL 6031156, at \*10; *accord Wellmart RX, Inc.*, 435 F. Supp. 3d at 456.  Accordingly, courts have waived the security requirement under Rule 65(c) upon a finding of the "systemic nature of the fraud alleged in the complaint and the lack of prejudice to defendants resulting from a preliminary injunction." *Wellmart RX, Inc.*, 435 F. Supp. 3d at 456; *see Mayzenberg*, 2018 WL 6031156, at \*10.  The Complaint here alleges fraud that is systemic in nature, involving numerous healthcare providers and clinics, and thousands of allegedly fraudulent claims.  Further, for the reasons previously stated, Big Apple Defendants will not be prejudiced by the entry of a preliminary injunction.  *See Moshe*, 2020 WL 3503176, at \*3 ("[C]ourts have 'wide discretion to dispense with the bond requirement' when 'there has been no proof of likelihood of harm.'" (quoting *Donohue v. Mangano*, 886 F. Supp. 2d 126, 163 (E.D.N.Y. 2012)).  Therefore, the Court waives the security requirement.

**CONCLUSION**

For the foregoing reasons, the Court grants Plaintiffs' motion in full and issues an Order (1) staying all pending No-Fault insurance collection arbitrations that have been commenced against GEICO by or on behalf of Big Apple Med Equipment, Inc., pending disposition of GEICO's declaratory judgment claim in this action; and (2) enjoining Big Apple Med Equipment, Inc., and anyone acting on its behalf, from commencing any further No-Fault insurance collection arbitration or litigation against GEICO, pending disposition of GEICO's declaratory judgment claim in this action.  The security requirement under Federal Rule of Civil Procedure 65(c) is waived.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 25, 2021
          Brooklyn, New York

22