# EXHIBIT "3"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY
COMPANY, GEICO GENERAL
INSURANCE COMPANY, GEICO                          **MEMORANDUM & ORDER**
CASUALTY COMPANY,                                  21-CV-1986 (PKC) (RLM)

                    Plaintiffs,

             - against -

WALLEGOOD, INC., ALEKSANDER
CHERNYSHEV, JACOB KEUM, M.D.,
HONG PAK, M.D., MELISSA EVANS, N.P.,
MINI MATHEW, N.P., JOHN DOE
DEFENDANTS 1-10,

                   Defendants.
--------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

On April 13, 2021, Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively "GEICO") commenced this action alleging RICO violations, 18 U.S.C. §§ 1962(c), 1962(d); common law fraud; unjust enrichment; aiding and abetting fraud; and seeking a declaratory judgment, 28 U.S.C. §§ 2201, 2202, based on an alleged scheme to collect reimbursement on high volumes of fraudulent no-fault insurance claims. (Complaint ("Compl."), Dkt. 1, ¶¶ 1–3, 298–341.)  On May 27, 2021, GEICO filed a letter requesting a pre-motion conference in anticipation of moving to enjoin Defendants Wallegood, Inc. and Aleksander Chernyshev (herein "Defendants") from pursuing collection of their allegedly fraudulent claims through arbitration proceedings and lawsuits in state court. (Dkt. 18, at 1.)  For the reasons set forth below, the Court construes GEICO's letter request as a motion for a preliminary injunction and grants the request in full.

1

# BACKGROUND

### I.    New York's No-Fault Insurance Laws

The Comprehensive Motor Vehicle Insurance Reparations Act, *see* N.Y. Ins. Law §§ 5101 *et seq.*, codifies New York's "no-fault scheme," under which "automobile insurers must provide coverage for 'basic economic loss,' including medical expenses, arising out of the use or operation of a covered motor vehicle, without regard to fault." *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 221 (E.D.N.Y. 2018) (citing N.Y. Ins. Law §§ 5102, 5103). Under this scheme, insured parties may assign their claims for medical expenses to their healthcare providers, who then bill the insurer directly. *Id.* (citing 11 N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.11); *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-2802 (ILG), 2018 WL 6031156, at *1 (E.D.N.Y. Nov. 16, 2018). To be eligible to make a claim for benefits, a healthcare provider must be lawfully incorporated and, among other things, "(1) must be owned by a physician who actually engages in the practice of medicine through that corporation, (2) may not bill for services provided by physicians who are not employees of the corporation, such as independent contractors, and (3) may not pay kickbacks to third parties for the referral of insureds." *Mayzenberg*, 2018 WL 6031156, at *2 (internal citations omitted); *see also Gov't Emps. Ins. Co. v. Badia*, No. 13-CV-1720 (CBA) (VMS), 2015 WL 1258218, at *8–9 (E.D.N.Y. Mar. 18, 2015). Insurers must pay or deny claims within 30 calendar days of submission; failure to comply with this requirement precludes the insurer from raising most defenses, including fraud and lack of medical necessity. *Parisien*, 352 F. Supp. 3d at 221 (citing, *inter alia*, N.Y. Ins. Law § 5106(a)). Insurers must also provide claimants an opportunity to arbitrate any dispute arising from the insurers' liability to pay a claim. *Mayzenberg*, 2018 WL 6031156, at *2 (citing N.Y. Ins. Law § 5106(b)).

2

## II.    Factual Background

GEICO is an authorized automobile insurer in the State of New York.  (Compl., Dkt. 1, ¶ 11.)  Wallegood, Inc., a retailer of durable medical equipment ("DME") and orthotic devices ("OD") (collectively, the "Fraudulent Equipment"), is owned, operated, and controlled by Chernyshev.  (*Id.* ¶¶ 1–2.)  Chernyshev is not and never has been a licensed healthcare provider. (*Id.* ¶ 13.)  GEICO alleges that Chernyshev devised a scheme with various healthcare providers (including other defendants named in this action) wherein Defendants obtained prescriptions to provide the Fraudulent Equipment to individuals who claimed they were involved in automobile accidents and covered by no-fault insurance policies issued by GEICO (the "Insureds").  (*Id.* ¶¶ 2– 3.)  Chernyshev in turn, either directly or through others, submitted "large volumes of billing" to GEICO for reimbursement for the Fraudulent Equipment.  (*Id.* ¶ 2.)

In particular, GEICO alleges that the Fraudulent Equipment for which they were billed by Defendants was "medically unnecessary, illusory, and otherwise not reimbursable" because: (1) it was provided as a result of "unlawful financial arrangements" with healthcare providers, either directly or through third-parties not yet identified; (2) it was provided, if at all, pursuant to "predetermined fraudulent protocols with healthcare providers . . . solely to financially enrich" Defendants "rather than to treat the Insureds"; (3) it was provided, if at all, as a result of "decisions made by laypersons, not based on prescriptions" issued by licensed healthcare providers; (4) the bills submitted to GEICO misrepresented the type and nature of the Fraudulent Equipment provided, if any; and (5) the bills submitted to GEICO "fraudulently and grossly inflated the permissible reimbursement rate" for the Fraudulent Equipment provided, if any.  (*Id.* ¶¶ 2, 4.)

In support of the claim that Defendants entered into unlawful financial arrangements to obtain prescriptions, GEICO alleges that Chernyshev never met with any of the healthcare providers who issued prescriptions, but rather, prescriptions were "procured" through

3

arrangements "facilitated by third-parties associated with healthcare providers at multi-disciplinary medical offices that catered to a high volume of no-fault insurance patients," and further, that Defendants would "frequently cash checks issued by GEICO at check cashing facilities at the same time [they] had legitimate bank accounts at financial institutions." (*Id.* ¶¶ 77, 78 (citing 10 representative examples of checks issued by GEICO to Wallegood and cashed at AVW Check Cashing).)  GEICO also alleges that Defendants received "virtually identical predetermined sets of prescriptions" from different healthcare providers operating out of the same clinic without any communication with or involvement by the Insureds, and, to the extent the Insureds ever received any Fraudulent Equipment, it was typically provided by a clinic receptionist without any involvement by Defendants.  (*Id.* ¶¶ 81–85 (citing five representative examples of Insureds who reported that they received Fraudulent Equipment from a receptionist and, in most cases, were never fitted for the equipment nor provided an explanation for its use).)  Additionally, GEICO alleges that "a frequent amount" of the prescriptions purportedly provided to Defendants were issued by laypersons using photocopies of healthcare provider signatures.  (*Id.* ¶¶ 88–89.)

To support the separate but related claim that Defendants obtained prescriptions "pursuant to predetermined fraudulent protocols," GEICO alleges that virtually all of the Insureds whose claims are listed in Exhibit "1" to the Complaint were involved in low-impact accidents, suffered only minor injuries, and were "subject[ed] to extremely similar treatment including nearly identical prescriptions for Fraudulent Equipment . . . without regard for the Insureds' individual symptoms or presentation."  (*Id.* ¶¶ 92–98, 101 (describing the alleged "predetermined fraudulent protocols").)  GEICO provides 20 representative examples each of (1) Insureds who were issued virtually identical prescriptions for Fraudulent Equipment without regard for medical necessity (*id.* ¶¶ 135–37, 172–74); (2) Insureds who were issued multiple prescriptions for Fraudulent

Equipment on the same date, which allowed Defendants to submit separate bills "to avoid detection of the[] fraudulent scheme[]" (*id.* ¶¶ 148–151, 180–83); and (3) two or more Insureds who were involved in the same accident and prescribed virtually identical Fraudulent Equipment following an initial examination, and in some cases, virtually identical Fraudulent Equipment on later dates despite not having follow-up examinations on those dates (*id.* ¶¶ 153–160, 185–90).

With respect to billing, GEICO alleges that the prescriptions given to Defendants did not definitively identify the Fraudulent Equipment to be provided, thereby allowing Defendants—who are not licensed medical providers—to elect to provide Insureds with equipment that has a higher reimbursement rate. (*Id.* ¶¶ 201–206.) GEICO also alleges that the bills and other documents Defendants submitted to GEICO contained various misrepresentations, including that the Fraudulent Equipment was medically necessary, based on prescriptions by licensed medical providers, and accurately corresponded to or was of comparable high-quality to the listed billing code. (*Id.* ¶¶ 211–82.)

Finally, throughout the Complaint, GEICO cites Exhibit "1" (Dkt. 1-3), a spreadsheet detailing more than 6,800 pieces of Fraudulent Equipment provided by Wallegood to Insureds, that is "a representative sample of the fraudulent claims that have been identified to date." (*Id.* ¶ 8; *see, e.g.*, *id.* ¶ 86 (for "virtually all" of the Exhibit "1" claims where Fraudulent Equipment was provided, Insureds received that equipment without Defendants' involvement); ¶ 102 ("An overwhelming majority of the claims identified in Exhibit '1' are based upon medically unnecessary prescriptions for virtually identical Fraudulent Equipment"); ¶ 191 (for "virtually all" of the Exhibit "1" claims where "two or more Insureds were involved in the same underlying accident [and] were treated at the Kenilworth Place Clinic, healthcare providers . . . virtually

5

always prescribed multiple prescriptions for virtually identical Fraudulent Equipment despite the fact that the Insureds were differently situated").)

Through this lawsuit, GEICO seeks to recover more than $171,000 already paid to Defendants under this alleged fraudulent scheme and a declaratory judgment that it is not obligated to pay reimbursement of more than $468,000 in pending claims submitted in Wallegood's name. (*Id.* ¶¶ 4, 299.)

## III. Procedural Background

On May 27, 2021, GEICO requested a pre-motion conference in anticipation of moving against Defendants for an order (1) staying more than 70 collection arbitrations against GEICO pending before the American Arbitration Association ("AAA"); (2) staying more than 150 collection lawsuits against GEICO pending in New York City Civil Courts ("Civil Courts"); and (3) enjoining Defendants from commencing any new collection arbitrations or lawsuits against GEICO until resolution of this case in federal court. (Dkt. 18, at 1–2.) GEICO has denied more than 600 other claims that it believes Defendants are likely to pursue through collection arbitrations or Civil Court lawsuits. (*Id.* at 1.) After reviewing Defendants' response opposing the request for a conference and injunction (Dkt. 21), the Court issued an Order noting that "the arguments made by [] Defendants' counsel[1] are virtually identical to arguments made by Defendants' counsel and rejected by this Court in a similar case, *GEICO v. Big Apple Med Equipment, Inc.*, No. 20-CV-5786" and directing Defendants "to show cause why the Court should not rule as it did in *Big Apple* and grant Plaintiffs' request for a stay and injunction." (6/7/2021 Order to Show Cause.)

---

[1] The Court notes that the same attorneys represent Defendants in this case and the defendants in *Big Apple*.

On June 14, 2021, Defendants responded to the Court's Order explaining that Plaintiff's request in this matter is "significantly different from their request in the unrelated case" *Big Apple* because Plaintiffs seek a stay of pending state court litigation, which is barred by the Anti-Injunction Act.  (Dkt. 23, at 1–3.)  Defendants arguments do not otherwise distinguish the injunction request here from the injunction request in *Big Apple*, but rather, as will be explained below, rehash arguments that were previously made by Defendants' counsel in *Big Apple* and soundly rejected by the Court.  GEICO also responded to the Court's Order, explaining that the "factual allegations and causes of action" advanced in this matter are "virtually identical" to those advanced in *Big Apple* and supplementing its arguments in support of an injunction.  (Dkt. 28, at 1.)  Defendants replied.  (Dkt. 31.)

Upon review of the parties' letters, the Court finds that further briefing on the request for an injunction is not necessary.  The Court construes GEICO's request for a pre-motion conference as a motion for a preliminary injunction and grants the request in full.

## LEGAL STANDARD

GEICO's request for an order to stay pending and enjoin future collection actions is evaluated under the same standard as a request for a preliminary injunction.  *See Gov't Emps. Ins. Co. v. Cean*, No. 19-CV-2363 (PKC) (SMG), 2019 WL 6253804, at *4 (E.D.N.Y. Nov. 22, 2019) (citing, *inter alia*, *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013)); *see Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 449 (E.D.N.Y. 2020), *appeal dismissed*, No. 20-225 (2d Cir. May 11, 2020).  To justify a preliminary injunction,

> a movant must demonstrate (1) irreparable harm absent injunctive relief; and (2) "either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor."

*Elzanaty*, 929 F. Supp. 2d at 217 (quoting *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010)).  "The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (per curiam) (internal quotation marks, alterations, and citations omitted); *accord Wellmart RX, Inc.*, 435 F. Supp. 3d at 449; *Cean*, 2019 WL 6253804, at *4.

## DISCUSSION

### I.     Pending Collection Arbitrations are Stayed, Future Collection Actions are Enjoined

The Court finds that the factual allegations and causes of action in this matter and those presented in *Big Apple* are virtually identical.  (Compare Factual Background *supra*, with *Big Apple*, No. 20-CV-5786, Memorandum & Order ("*Big Apple* M&O"), Dkt. 52, at 3–6.)  Likewise, the Court finds that the arguments advanced by GEICO in support of an injunction in this matter are virtually indistinguishable from those advanced in *Big Apple*.  Therefore, for the same reasons the Court granted GEICO's request in *Big Apple*, the Court now grants GEICO's request to stay pending collection arbitrations and to enjoin future collection arbitrations and lawsuits.[2]  In doing

---

[2] In cases such as this one, district courts have found that they have the authority to enjoin pending and future arbitrations, *see Parisien*, 352 F. Supp. 3d at 233 (citing *Mayzenberg*, 2018 WL 6031156, at *4 (finding "that it would frustrate the purposes of the Federal Arbitration Act and judicial economy if the Act is interpreted to preclude the Court from enjoining Defendants' No-Fault collection arbitrations")), and to restrain a party from instituting future state court proceedings, *see Cean*, 2019 WL 6253804, at *4 n.3 (collecting cases, including *Pathways, Inc. v. Dunne*, 329 F.3d 108, 114 (2d Cir. 2003) ("The Anti-Injunction Act does not prevent a federal court from restraining a party from instituting future state proceedings.")).  *See Wellmart RX, Inc.*, 435 F. Supp. 3d at 456 ("[T]he court does not consider either the Federal Arbitration Act, 9 U.S.C. § 2, nor the Anti-Injunction Act, 28 U.S.C. § 2283, as barring its authority to enjoin pending and future arbitrations, or future state law collection suits.").  Defendants do not dispute this proposition, nor cite any contrary case law.  The Court concludes that it has the authority to grant

so, the Court joins numerous other courts in this district that have granted motions seeking similar relief in cases also involving allegations of widespread fraudulent billing under New York's No-Fault insurance laws. *See, e.g.*, *Gov't Emps. Ins. Co. v. Beynin*, No. 19-CV-6118 (DG) (PK), 2021 WL 1146051, at *10 (E.D.N.Y. Mar. 25, 2021); *Gov't Emps. Ins. Co. v. Zilberman*, No. 20-CV-209 (FB) (RML), 2021 WL 1146086, at *3 (E.D.N.Y. Mar. 25, 2021); *Gov't Emps. Ins. Co. v. Advanced Comprehensive Lab., LLC*, No. 20-CV-2391 (KAM), 2020 WL 7042648, at *4 (E.D.N.Y. Dec. 1, 2020), *appeal withdrawn*, 2021 WL 1382384 (2d Cir. Feb. 23, 2021); *Wellmart RX, Inc.*, 435 F. Supp. 3d at 456; *Gov't Emps. Ins. Co. v. Moshe*, No. 20-CV-1098 (FB) (RER), 2020 WL 3503176, at *4 (E.D.N.Y. June 29, 2020); *Cean*, 2019 WL 6253804, at *6; *Parisien*, 352 F. Supp. 3d at 220–21.

### A.      Irreparable Harm Absent Injunctive Relief

GEICO has demonstrated that it would face irreparable harm if Defendants are permitted to continue pursuing collection actions during the pendency of this lawsuit because those actions "might eventually be, at best, inconsistent with th[e] Court's ruling, and at worst, essentially ineffective." *Elzanaty*, 929 F. Supp. 2d at 222; *see, e.g.*, *Moshe*, 2020 WL 3503176, at *2 ("Defendants have 4,786 pending arbitrations against GEICO that present a risk of inconsistent judgments.   This certainly establishes irreparable harm."); *Cean*, 2019 WL 6253804, at *5 ("GEICO argues that wasting time and resources in arbitrations with awards that might eventually be, at best, inconsistent with judicial rulings and, at worst, essentially ineffective, constitutes irreparable harm. The Court agrees.").   The Court finds that permitting more than 70 pending collection arbitrations to proceed and allowing countless other collection proceedings to be

---

Plaintiff's request to stay pending collection arbitrations and to enjoin future collection arbitrations and collection litigations in state court until this federal court action is resolved.

initiated in pursuit of the more than 600 unpaid claims "would likely subject GEICO to 'independent and contradictory conclusions' that ultimately may 'be rendered ineffective by this Court,' pending the disposition of GEICO's declaratory judgment claim." *Advanced Comprehensive Lab., LLC*, 2020 WL 7042648, at *4 (quoting *Mayzenberg*, 2018 WL 6031156, at *5); *see also Beynin*, 2021 WL 1146051, at *5–6. This is the kind of irreparable harm repeatedly recognized by courts in this Circuit. *Wellmart RX, Inc.*, 435 F. Supp. 3d at 450 ("The conclusions and reasoning in *Mayzenberg* and *Elzanaty* have been reiterated time and again in this Circuit." (collecting cases)).

Moreover, irreparable harm "occurs where 'remedies available at law, such as monetary damages, are inadequate to compensate' the plaintiff for its injury." *Mayzenberg*, 2018 WL 6031156, at *5 (quoting *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010)); *see Wellmart RX, Inc.*, 435 F. Supp. 3d at 453 (finding irreparable harm where it could be inferred that defendant "deliberately stripped its accounts of funds," thereby "frustrating GEICO's ability to collect a judgment in the future"). GEICO has demonstrated that it may not be adequately compensated through money damages because Wallegood, which no longer operates or owns any personal or real property, is essentially judgment proof.[3]  (*See* Declaration of Daniel Curto, Dtk. 28-3, ¶¶ 5–7; Dkt. 28, at 3–4 ("Wallegood no longer conducts business, has been dormant for more than a year

---

[3] Defendants do not dispute GEICO's assertion that Wallegood is unlikely to be able to satisfy a money damages award, but rather obfuscate the issue by arguing that GEICO did not bring a RICO claim, with a request for treble damages, against Wallegood, and that defendants will otherwise be jointly and severally liable.  (Dkt. 31, at 3.)  The Court rejects this argument for the same reasons it did in *Big Apple*—GEICO has presented evidence that strongly suggests it will not be able to recover from Wallegood, against which it seeks compensatory damages in excess of $171,000, together with punitive damages, costs, and interest (Compl., Dkt. 1, ¶¶ 320–32, 342). (*See Big Apple* M&O, Dkt. 52, at 10 n.7.)

and is essentially a shell that remains for collecting on fraudulent account receivables.").)  This demonstrates irreparable harm.

The Court remains unpersuaded by Defendants' argument—already advanced and rejected in *Big Apple*—that potential inconsistencies arising out of other collection actions are too speculative to demonstrate irreparable harm.  At this stage, the Court is not concerned with "the precise effect of an inconsistent declaratory judgment from this Court on certain arbitration awards," but rather "the large realm of potential problems this may cause on the validity of those awards, especially in light of their multitude and internal inconsistency with each other."  (*Big Apple* M&O, Dkt. 52, at 9 (quoting *Elzanaty*, 929 F. Supp. 2d at 222).)  The Court is also unconvinced by Defendants' continued reliance on the same cases already addressed and distinguished in *Big Apple*.  (*Id.* at 10–13, 13 n.10 (distinguishing, *inter alia*, *Allstate Insurance Co. v. Harvey Family Chiropractic*, 677 F. App'x 716 (2d Cir. 2017) (summary order) and *Allstate Insurance Co. v. Avetisyan*, No. 17-CV-4275 (LDH) (RML), 2018 WL 6344249 (E.D.N.Y. Oct. 30, 2018)); *see also Beynin*, 2021 WL 1146051, at \*5 (distinguishing *Harvey* and *Avetisyan* on similar grounds).  Defendants do not attempt to confront or differentiate the Court's prior reasoning, which, for the reasons stated in *Big Apple*, applies with equal force here.

**B.    Serious Question Going to the Merits**

GEICO has raised serious questions going to the merits.  In its 95-page Complaint, GEICO alleges in great detail a fraudulent scheme involving Defendants, healthcare providers, and third-parties not yet identified, whereby medically unnecessary prescriptions were obtained through illegal financial arrangements and predetermined fraudulent protocols, and bills for reimbursement were submitted with misrepresentations to maximize Defendants' financial gain.  (Compl., Dkt. 1, ¶¶ 2, 4, 88–89, 92–98, 101, 201–06, 211–82).  The Complaint recites dozens of specific, representative examples to demonstrate Defendants' alleged fraudulent activity.  (*Id.* ¶¶ 79, 85,

137, 151, 160, 174, 183, 190.)  Further, Exhibit "1" to the Complaint (Dkt. 1-3) is a voluminous "representative sample" of fraudulent claims identified to date (Compl., Dkt. 1, ¶ 8; *see* ¶¶ 86, 102, 191).  "[A] complaint alone can be sufficient to grant an injunction, [and] [t]his is particularly true where . . . the complaint comprehensively details regulatory violations, unnecessary medical services, and unlawful referrals."  *Beynin*, 2021 WL 1146051, at *7 (alterations in original) (quoting *Moshe*, 2020 WL 3503176, at *2).  GEICO's Complaint has "adequately detailed a complicated scheme of alleged fraud activity" that does not rest on "mere hypotheticals."  *Cean*, 2019 WL 6253804, at *5 (citations omitted); *id.* (finding serious questions going to the merits where plaintiff "alleged, in significant detail, facts relating to Defendants' fraudulent activity in its Complaint, describing fraudulent medical treatment, deceitful billing protocols, and an illegal kickback and referral scheme"); *Big Apple* M&O, Dkt. 52, at 14–17 (finding serious questions going to the merits where plaintiffs alleged specific examples of financial payments for no legitimate purpose, Insureds receiving prescriptions for identical equipment without regard for medical necessity, and billing misrepresentations).

The Court rejects Defendants' argument that the Complaint "does not establish [GEICO's] likelihood of success on the merits because its core allegation that Defendants worked together to submit bills for [DME] to Plaintiffs is conclusory" and supported by no evidence.  (Dkt. 21, at 1–2; Dkt. 23, at 5.)  As the Court explained in *Big Apple*, "[a]t this early stage, before discovery and in the context of an allegedly complex fraudulent scheme involving numerous actors, known and unknown, it is premature to focus, as Defendants [do], on the likelihood of success."  (*Big Apple* M&O, Dkt. 52, at 18 (citing *Parisien*, 352 F. Supp. 3d at 234).)  "Instead, the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial."  *Parisien*, 352 F. Supp. 3d at 234 (quoting *Elzanaty*, 929 F. Supp. 2d at 217).  By specifically

alleging the frequent cashing of reimbursement checks for no legitimate purpose, describing in detail virtually identical treatments for dozens of Insureds, and identifying specific types of billing misrepresentations, GEICO has raised "serious questions going to the merits" of its allegation that Defendants are engaged in a fraudulent billing scheme involving unlawful financial arrangements and the provision of medically unnecessary prescriptions.[4]  GEICO has met its burden on this prong of the analysis.

### C.    Balance of the Hardships

GEICO has demonstrated that the balance of the hardships tips decidedly in its favor.  As explained above, if pending collection arbitrations are not stayed and future collection proceedings are not enjoined, GEICO will suffer irreparable harm.  By contrast, "[i]f the preliminary injunction is granted and [GEICO] fails to prove its claims, then, at worst, Defendants' recovery of the no-fault benefits to which they are entitled will be delayed." *Parisien*, 352 F. Supp. 3d at 234; *accord Wellmart RX, Inc.*, 435 F. Supp. 3d at 455.  Defendants argue that they will face a hardship greater than delay because the policies under which they seek reimbursement will be exhausted during the pendency of an injunction.  (Dkt. 23, at 5 (explaining that once a "No-Fault insurer has issued $50,000.00 worth of benefits to a particular patient, any additional medical provider seeking reimbursement for goods or services provided to that patient will be unable to recover any money

---

[4] The Court rejects Defendants' argument that by bringing this lawsuit GEICO is forum-shopping because it is "frustrated by the[] results before other competent finders of fact that have ruled in many cases that the equipment at issue here is in fact medically necessary." (Dkt. 21, at 2.)  As the Second Circuit has observed, "New York's arbitration process for no-fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible.  Discovery is limited or non-existent.  Complex fraud and RICO claims, maturing years after the initial claimants were fully reimbursed, cannot be shoehorned into this system." *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014) (internal citations omitted); *accord Mayzenberg*, 2018 WL 6031156, at *6.  Therefore, this is the proper forum to adjudicate GEICO's claims alleging a fraudulent scheme involving thousands of reimbursement requests for medically unnecessary treatments.

from the insurer").)   The Court finds this argument to be "speculative at best considering [D]efendants do not identify any policies nearing exhaustion," *Moshe*, 2020 WL 3503176, at *3, nor point to any courts that have accepted such a theory of hardship.   In the face of GEICO's clear irreparable harm, the Court cannot conclude that Defendants' speculation about exhausted policies diminishes the hardship that tips decidedly in GEICO's favor if relief is not granted.   Moreover, "granting the stay and injunction will actually save *all parties* time and resources" because "[r]ather than adjudicating hundreds of individual claims in a piecemeal fashion, all claims can be efficiently and effectively dealt with in a single declaratory judgment action."   *Big Apple* M&O, Dkt. 52, at 20 (alteration in original) (quoting *Cean*, 2019 WL 6253804, at *5); *see Mayzenberg*, 2018 WL 6031156, at *7 ("[I]it is obviously more efficient and beneficial for Defendants if all of their claims are resolved in one action, rather than in hundreds of different proceedings.")

For all of these reasons, the Court concludes, as it did in *Big Apple*, that GEICO has demonstrated that a preliminary injunction staying pending collection arbitrations and enjoining future collection proceedings is justified.

## II.     Pending Collection Litigations are Stayed

As Defendants appear to concede, the only material difference between GEICO's instant motion and its motion in *Big Apple* is the request to stay lawsuits currently pending in New York Civil Courts.   (Dkt. 23, at 1; Dkt. 28, at 2.)   Defendants argue that issuing such a stay would violate the Anti-Injunction Act ("AIA").   The Court, however, concludes that such relief is justified on the facts presented here and grants the request.

Under the All Writs Act, a federal court "may issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law."   28 U.S.C. § 1651. However, the AIA limits the Court's authority to stay proceedings in state court "except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to

14

protect or effectuate its judgments." *Parisien*, 352 F. Supp. 3d at 224 (quoting 28 U.S.C. § 2283). "On its face the [AIA] is an absolute prohibition [] against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970). The "core message" of the AIA "is one of respect for state courts" and non-interference. *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011); *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977) (Rehnquist, J., plurality) ("The Act's purpose is to forestall the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court."). Therefore, the AIA's narrow exceptions "are not [to] be enlarged by loose statutory construction," and "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Smith*, 564 U.S. at 306 (alterations in original) (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988); *Atl. Coast*, 398 U.S. at 297).

GEICO contends that the in-aid-of-jurisdiction exception applies here, not only to "prevent fragmented results" and "avoid a massive drain of judicial resources," but also because a state court judge ruling on a single case in isolation cannot "fully consider the contours of a fraudulent scheme involving patterns of fraudulent behavior that – by design – is not readily apparent from the face of any individual bill or treatment record." (Dkt. 28, at 2–3.) Defendants respond that the AIA's exceptions are the be narrowly construed and that the Second Circuit has "repeatedly held" that the in-aid-of-jurisdiction exception "only applies to cases in rem." (Dkt. 31, at 1–2.)

Defendants are correct that the in-aid-of-jurisdiction exception "is *generally* reserved for state court actions *in rem,* because the state court's exercise of jurisdiction 'necessarily impairs, and may defeat,' the federal court's jurisdiction over the *res*." *Wyly v. Weiss*, 697 F.3d 131, 137–38 (2d Cir. 2012) (emphasis added) (quoting *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229

15

(1922)).  In contrast, *in personam* actions involving controversies "over liability rather than over possession of a thing" generally do not "tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending." *Id.* at 138 (internal quotation marks and citations omitted).  However, the Second Circuit has recognized "a limited exception to the general rule that the 'in aid of jurisdiction' exception does not permit a federal court to enjoin a parallel *in personam* action."  *United States v. Schurkman*, 728 F.3d 129, 137 (2d Cir. 2013) (citing *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985)[5] (holding that an *in personam* injunction was justified where "the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a res over which the district judge required full control")); *see Wyly*, 697 F.3d at 138 ("We have recognized, however, that an *in personam* injunction may be appropriate under certain limited circumstances.").  Thus, Defendants overstate the extent to which an in-aid-of-jurisdiction injunction is barred simply because it is sought in an *in personam* rather than *in rem* action.

Indeed, the Court agrees with the Honorable I. Leo Glasser's thorough and well-reasoned opinion in *Parisien* concluding that in the absence of "controlling precedent" to the contrary,[6]

---

[5] The All Writs Act, not the AIA, applied in *Baldwin-United* because the injunction was issued *before* any state court suits were commenced.  *Baldwin-United*, 770 F.2d at 335. Nevertheless, the Circuit looked to cases interpreting both Acts to determine whether the injunction was permissible, noting "cases interpreting [the in-aid-of jurisdiction exception] of the [AIA] have been helpful in understanding the meaning of the All-Writs Act."  *Id.* (citations omitted).

[6] The Court agrees with Judge Glasser's analysis distinguishing *Kline* and *Toucey v. New York Life Ins. Co.*, 314 U.S. 118 (1941).  *See Parisien*, 352 F. Supp. 3d at 226–28; *id* at 226 (finding that *Kline* did not clearly establish a "general rule prohibiting injunctions of state *in personam* cases" or involve "special equities that weighed in favor of an injunction"); *id.* (noting that *Toucey* pre-dated the 1948 amendment to the AIA that added the in-aid-of-jurisdiction exception and finding that no Supreme Court case since the amendment has expressly construed the exception "to apply solely, or even generally," to *in rem* actions).  Notably, the Second Circuit has interpreted the language in the Supreme Court's plurality opinion in *Vendo* (*see supra* at 15), that "[w]e have never viewed parallel in personam actions as interfering with the jurisdiction of either court," 433

16

"theoretical distinctions between *in rem* and *in personam* jurisdiction" alone do not justify denying

an injunction to stay multitudinous pending state court proceedings where a plaintiff has alleged a

single fraudulent scheme in federal court. *Parisien*, 352 F. Supp. 3d at 220, 225–28 (examining

how courts have "liberalized their interpretation of the in-aid-of-jurisdiction exception");

*Mayzenberg*, 2018 WL 6031156, at *8 (finding that while the in-aid-of-jurisdiction exception

"usually involves *in rem* actions . . . there have been notable exceptions to the general *in rem* rule

in multidistrict actions, school desegregation cases, interpleader actions, and class action

settlements" (collecting cases)).  Therefore, the Court rejects Defendants' argument that GEICO's

request should be denied solely because this is an *in personam*, rather than *in rem*, action.

Further, the Court joins Judge Glasser in narrowly holding that on the facts presented

here—which are substantially like the facts in *Parisien*[7]—an order staying the more than 150

collection actions pending in Civil Court is justified.  The general rule is "that an *in personam* state

court action may not be enjoined *merely because* it is duplicative of, or conflicts with, a prior

federal judgment." *Schurkman*, 728 F.3d at 138 (emphasis added).  And it may be appropriate to

deny an injunction where any prospective state court judgment could "peacefully coexist with the

district court's judgment," *id.* at 139; *see Wyly*, 697 F.3d at 139, or where the moving party points

only to the district court's "involvement in complex litigation" without more, *Wyly*, 697 F.3d at

---

U.S. at 642 (Rehnquist, J., plurality) (citing *Kline*, 260 U.S. at 230), to mean that "the Supreme
Court has never held that a district court may enjoin, as necessary in aid of the district court's
jurisdiction, a parallel *in personam* state action," *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*,
386 F.3d 419, 426 (2d Cir. 2004); *Wyly*, 697 F.3d at 138 (same).  In other words, as Judge Glasser
found, there is no "controlling precedent" expressly *prohibiting* an in-aid-of-jurisdiction injunction
in all *in personam* actions.  Defendants have not cited any authority to the contrary.

[7] "The gravamen of [Plaintiff]'s allegations is that Defendants have systematically and
concertedly administered treatments in a rote fashion, independent of the clinical needs of the
patient, in such a combination as to maximize reimbursements while minimizing the possibility of
detection through the use of various controlled entities." *Parisien*, 352 F. Supp. 3d at 229.

139; *see Ret. Sys. of Ala.*, 386 F.3d at 421.  However, for the reasons explained above, a prospective Civil Court judgment may not "peacefully coexist" with a declaratory judgment in this case, and moreover, GEICO does not argue that pending litigation in Civil Court should be stayed merely because it is duplicative or because this action is especially complex.

Rather, GEICO argues, in part, that the systemic fraud alleged here may not be apparent if claims are examined on a case-by-case basis.  (*See* Dkt. 28, at 2–3.)  This has material consequences for GEICO and for this Court's exercise of jurisdiction over GEICO's declaratory judgment claim.  "[A]s a practical matter [GEICO may not] have a fair opportunity to present its claims unless it is permitted to direct the trier of fact to *all* of the claims at issue." *Parisien*, 352 F. Supp. 3d at 229 (emphasis in original).  Because any judgment in a Civil Court no-fault proceeding "will be *res judicata* for purposes of this action," if GEICO "suffers an adverse judgment in state court, 'this court will be bound to adhere to that decision, even though [the state] court [may] not [have been] able to consider what seems to be the heart of plaintiff's case.'" *Id.* (alterations in original) (citations omitted).  Such a result would "destroy the utility" of a declaratory judgment by this Court, the purpose of which is to provide broad relief and "avoid a multiplicity of lawsuits and piecemeal litigation." *Id.* at 230 (citing *Baldwin-United Corp.*, 770 F.2d at 337 (finding an injunction justified where, *inter alia*, multiple state court actions would "destroy the utility of the multidistrict forum otherwise ideally suited to resolving such broad claims")).  Moreover, as Judge Glasser wisely observed, "[f]ar from creating 'friction between the state and federal courts,' an injunction in this case will serve the public policy of New York in combatting insurance fraud in the no-fault sector." *Id.* at 231 (quoting *Vendo*, 433 U.S. at 630 (Rehnquist, J., plurality)).  Indeed, "New York courts routinely stay collection actions pending declaratory judgment proceedings such as this one." *Id.* at 232 (collecting cases).

In sum, the Court finds that the "fragmentation" of this dispute into more than 150 individual Civil Court actions "would nullify [GEICO]'s efforts to prove fraud at a systemic level, impair a federal declaratory judgment action over which the Court has taken jurisdiction precisely to eliminate such fragmentation, and deprive [GEICO] of an avenue toward complete relief in ***any*** court." *Id.* at 232 (emphasis in original). Therefore, the Court concludes that based on these unique circumstances it has the statutory authority to stay pending Civil Court actions during the pendency of this litigation and should do so here.[8] *Id.* ("The paucity of cases addressing circumstances such as these speaks to the narrowness of the exception that the court is creating."); *see Zilberman*, 2021 WL 1146086, at *3 (granting a preliminary injunction to, *inter alia*, stay all of defendants' pending civil collection lawsuits against GEICO).

For all of the reasons explained above, in addition to demonstrating that an order staying pending collection arbitrations and enjoining future collection proceedings is justified, GEICO has demonstrated that an order staying pending collection lawsuits is also justified.

## III.    Security Requirement is Waived

Finally, although GEICO did not ask the Court to waive the security requirement under Federal Rule of Civil Procedure ("Rule") 65(c) in its letters requesting a pre-motion conference and injunction (*see* Dkts. 18, 28), the Court assumes that it would have made such a request, as it did in *Big Apple*, had the Court ordered briefing. Therefore, to efficiently and completely resolve this motion at this time, the Court concludes that waiver of the security requirement is appropriate.

---

[8] Defendants do not acknowledge or address *Parisien* in their letter briefs. (*See* Dkts. 21, 23, 31.) Defendants make cursory reference to *Mayzenberg*, a decision by Judge Glasser that pre-dates *Parisien* by 10 days and denied GEICO's request to stay pending state court proceedings. 2018 WL 6031156, at *9. For the reasons stated herein, the Court agrees with Judge Glasser's significantly more thorough and compelling decision to stay pending state court proceedings in *Parisien*.

Under Rule 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  An exception to Rule 65(c)'s security requirement "has been crafted for cases involving the enforcement of 'public interests' arising out of 'comprehensive federal health and welfare statutes.'" *Wellmart RX, Inc.*, 435 F. Supp. 3d at 456 (quoting *Pharm. Soc. of State of New York, Inc. v. New York State Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995)).  Courts in this district have repeatedly reasoned that the enforcement of New York No-Fault insurance statutes is in the public interest, as is the prevention of fraud on the healthcare system, and, accordingly, have waived the security requirement upon identifying the "systemic nature of the fraud alleged in the complaint and the lack of prejudice to defendants resulting from a preliminary injunction." *Id.*; *see also Zilberman*, 2021 WL 1146086, at *2; *Advanced Comprehensive Lab., LLC*, 2020 WL 7042648, at *8; *Mayzenberg*, 2018 WL 6031156, at *10. Here, the Complaint alleges fraud that is systemic in nature and Defendants have not demonstrated that they will be prejudiced by the entry of a preliminary injunction.  Therefore, the Court waives Rule 65(c)'s security requirement.

**CONCLUSION**

The Court grants GEICO's request in full and issues an Order (1) staying all No-Fault insurance collection arbitrations and state civil court collection lawsuits between Wallegood and GEICO; and (2) enjoining Defendants Wallegood and Chernyshev from commencing any new arbitration or state civil court cases to collect No-Fault benefits from GEICO.  This Order shall be in effect until the disposition of GEICO's declaratory judgment claim in this action.  The security requirement under Federal Rule of Civil Procedure 65(c) is waived.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 16, 2021
        Brooklyn, New York