# EXHIBIT "5"

1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - - - X
3
                                    :
4  STATE FARM MUTUAL INSURANCE       :16-CV-4948  (FB)
   COMPANY,                          :
5                                    :
              Plaintiff,             :
6                                    :United States Courthouse
                                     :Brooklyn, New York
7      -against-                     :
                                     :May 18, 2017
8                                    :11:00 a.m.
                                     :
9  JAMAICA WELLNESS MEDICAL,         :
   P.C., et al.,                     :
10                                   :
              Defendants.            :
11

12
   - - - - - - - - - - - - - - - X
13
           TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
14          BEFORE THE HONORABLE FREDERIC BLOCK
        UNITED STATES SENIOR DISTRICT COURT JUDGE
15

16              A P P E A R A N C E S :

17 For the Plaintiff:    GOLDBERG, MILLER & RUBIN, P.C.
                            121 South Broad Street
18                          Philadelphia, Pennsylvania 19107
                          BY:MATTHEW MORONEY, ESQ.
19
   For the Defendant:    LAW OFFICES OF MELISSA BETANCOURT, P.C.
20                          2761 Bath Avenue
                            Brooklyn , New York  11214
21                        BY:FRANK D'ESPOSITO, ESQ.

22

23

24

25

Proceedings                                               2

1        THE COURTROOM DEPUTY:  Civil cause for oral argument

2    State Farm versus Mittal.  I ask counsel if you could state

3    your appearances.

4        MR. MORONEY:  Mathew Moroney on behalf of State

5    Farm, Your Honor.

6        MR. D'ESPOSITO:  Frank D'Esposito on behalf of

7    several defendants, Your Honor.

8        THE COURT:  Mr. Moroney, you are representing State

9    Farm and you have colleagues here who are representing State

10   Farm.  They are spreading the wealth around a little bit.

11       MR. MORONEY:  Yes, your Honor.

12       THE COURT:  Just one lawyer.

13       MR. MORONEY:  Just one lawyer for this case.

14       THE COURT:  A different law firm?

15       MR. MORONEY:  A different law firm.

16       THE COURT:  I hope State Farm is treating you nicely

17   and treating you fairly, but I have some questions here.  They

18   have a lot of these cases pending in state court.  They have

19   been out there for a number of years.  I don't know.  Some

20   have been resolved already; some have not been resolved.  I

21   have no idea what the status of these multiple litigations are

22   all about on the same level.  Maybe you can give me a feel for

23   that.

24       MR. MORONEY:  Yes, your Honor.  I think in the

25   motion, we cite that as it is now there are approximately, in

Proceedings                                                    3

1  the state courts, in the civil court, generally in Kings

2  County, I think there are about 56 different suits.

3          THE COURT:  50 lawsuits are pending in various state

4  courts?

5          MR. MORONEY:  I think they are all in Kings County

6  civil court, and those cases are among the different

7  defendants, Jamaica Wellness Medical, United Wellness Medical,

8  and there are two durable medical equipment companies.

9          THE COURT:  All right.  The same defendants that are

10 here in this litigation have brought these various litigations

11 in state court to get paid; right?

12         MR. MORONEY:  That's correct, Your Honor.

13         THE COURT:  I understand that.

14         Now, have any of them been resolved or has State

15 Farm taken a very strict position that all of these are phoney

16 claims and we are not going to pay anything?

17         MR. MORONEY:  I think it is the latter, the position

18 is once State Farm had a basis to bring this case, there was a

19 determination that these cases lacked merit.

20         THE COURT:  What is happening in the state claims?

21 They have been out there for a while.  They have been

22 litigated.  Have they be settled, disposed or tried?  Or have

23 they been hanging out there for an indeterminate period of

24 time?

25         MR. MORONEY:  Your Honor, I can't speak accurately

Proceedings                                              4

1   to that.  These companies have been incorporated for several

2   years.  There were actions brought before this action was

3   brought.  I'm sure some of those have been disposed.

4              As we stand here now, after this fraud claim was

5   filed, these are the cases that are outstanding right now.

6              THE COURT:  Mr. D'Esposito, you are representing all

7   of these 50 litigations in the state court?

8              MR. D'ESPOSITO:  We may not represent, Your Honor,

9   them as plaintiffs in all of these actions.  They use other

10  attorneys.

11             THE COURT:  A number of attorneys.

12             MR. D'ESPOSITO:  Yes.  We may represent --

13             THE COURT:  Some?

14             MR. D'ESPOSITO:  Yes.

15             THE COURT:  So what is the status?  They have been

16  out there for a number of years.  Have any of them been

17  disposed are?  Are any set for trial?  What is the status of

18  these state claims?

19             MR. MORONEY:  Your Honor, these claims don't get

20  resolved as quickly as they should.  There may be motion

21  practice.  Typically, if there is a trial scheduled, they may

22  be adjourned a couple of times.

23             THE COURT:  I want an update so I know, as a

24  practical matter, where we are at?

25             MR. MORONEY:  Your Honor, there are probably motions

Proceedings                                                    5

1   pending.  A lot of them, Your Honor, I believe trials are

2   pending and have been scheduled.  They may be adjourned once

3   or twice.  They may be coming up where there is no further

4   adjournment.

5              THE COURT:  I just want to get an overview, as a

6   practical matter, where we are at with all these litigations.

7              MR. MORONEY:  I am not an attorney of record

8   handling these cases, Your Honor, but I have been told that

9   several of the cases are coming up for a final trial date in

10  the summer.

11             THE COURT:  I get it.

12             Now, you have sort of dragged your feet a little

13  bit.  You have waited for a significant period of time while

14  these cases were being processed under state law before you

15  came here to try to, in federal court, get relief that you are

16  not responsible for any of these claims.  Why is it taking you

17  so long to come here?

18             MR. MORONEY:  I don't think that, Your Honor.  I

19  think the procedural history -- this case was filed, I believe

20  it was late September.

21             THE COURT:  This past September.

22             MR. MORONEY:  This past September and at the initial

23  conference this issue was raised with Judge Gold.  At the time

24  this was one of the issue that was discussed.  Judge Gold

25  didn't put counsel on the spot and say will you agree to stay

Proceedings                                6

1   these underlying matters.  Counsel said I will check with my

2   client and respond back to the court.  Judge Gold then said

3   well, now, State Farm, since there is no agreement, you can

4   filed a motion.  We did so.  There was a response.  We showed

5   up at the last hearing and Judge Gold said this would have to

6   be decided by Your Honor.

7              THE COURT:  Now, you paid out some of these claims

8   and you want reimbursement now?  Is that what this case is

9   basically about?

10             MR. MORONEY:  That's correct, Your Honor.  The case

11  is two buckets:  One is to recoup payments that were made and

12  the second one is for a declaratory ruling that the unpaid

13  bills do not have to be paid.

14             THE COURT:  So there are two categories, you have

15  paid and you want to get the money back and there are other

16  that you want a declaratory judgment that you should not have

17  to pay those claims?

18             MR. MORONEY:  Yes, your Honor.

19             THE COURT:  I just want to get a feel for this.

20             And then, Mr. D'Esposito, you filed a counterclaim

21  claiming that these are all lawful expenses and that you are

22  entitled to get paid and you are not required to recoup

23  because they are not fraudulent claims; correct?

24             MR. D'ESPOSITO:  Yes, your Honor.

25             THE COURT:  So you had to file that counterclaim.

Proceedings                                                7

1  It is a compulsory counterclaim under the federal rules.  So

2  all of these issues are now before me to resolve, which of

3  these claims are lawful, not lawful and how it all shakes

4  out.

5           MR. D'ESPOSITO:  If I may, Your Honor, the first

6  thing is, and I apologize, that it is defendant's position

7  that under 28 U.S. Code 2283, a U.S. court may not grant

8  injunction to stay a state court action.

9           THE COURT:  I don't know whether we are doing that.

10 I think he is asking -- well, are you asking that the state

11 law actions be enjoined, Mr. Moroney?

12           MR. MORONEY:  That is correct.

13           THE COURT:  Mr. D'Esposito says you can't do that

14 under that statute.  What do you say about that, that we have

15 no jurisdiction to enjoin the state proceeding?

16           MR. MORONEY:  I think that this issue is touched

17 upon in the briefing, Your Honor.  There are, I guess, three

18 categories of injunctive relief, that would be for additional

19 claims to be filed.  It would be for the arbitration matters,

20 that no-fault arbitration matters, and it would be for the

21 ongoing state court matters in civil court in Kings County,

22 Your Honor.

23           THE COURT:  Let's talk about the last one.  Isn't

24 there a statute that says that the federal court can't

25 intervene and enjoin a pending state court proceeding?  That

Proceedings                                         8

1   statute that Mr. D'Esposito just cited seems to resonate with

2   me.  What is the section again?

3              MR. D'ESPOSITO:  28 U.S. Code 2283, Your Honor.

4              THE COURT:  Read it.

5              MR. D'ESPOSITO:  Your Honor, if I may, I had it on

6   my phone.  It basically states that a U.S. court in the U.S.

7   may not grant injunction to stay a proceeding in a state court

8   unless an act of Congress.  I don't have it with me, Your

9   Honor.  If I may, I could put it up on my phone.

10             THE COURT:  Well, we have to flush it out, whether I

11  have the authority to do that.

12             MR. MORONEY:  Your Honor, may I?

13             THE COURT:  Okay.

14             MR. MORONEY:  There is a -- there is a general

15  prohibition from federal court enjoining state court actions.

16  That is the Anti-Injunction Act statute, Your Honor.  The

17  Anti-Injunction Act has no effect on the other two categories;

18  it only potentially has an effect on the ongoing state court

19  action.

20             THE COURT:  We have, apparently, a number of ongoing

21  state court actions.  You have arbitrations, right?

22             MR. MORONEY:  Yes, your Honor.  One of the

23  exceptions to the general anti-injunction prohibition is that

24  the federal courts do have the power to enforce their

25  decisions and protective orders under the, quote, unquote,

Proceedings                                                    9

1  necessary to protect or effectuate its judgement, end quote,

2  exception.

3          THE COURT:  Are you saying that countermands the

4  anti-injunction statute?

5          MR. MORONEY:  It gives the Court an exception where

6  the Court would have the authority to issue an injunction

7  should the general injunction elements be met.

8          THE COURT:  What authority do you cite for that

9  proposition?

10          MR. MORONEY:  Yes, your Honor.  This is laid out in

11  the motion.  This is discussed starting on pages 11 through 13

12  of the motion.  Your Honor, let me take it with the easiest

13  matter first.  So two of the Defendants we are talking about

14  here are the durable medical equipment companies, and that's

15  Daily Medical and Lida's Medical.  They are in default in this

16  case.  They haven't responded to this motion.  They have many

17  of those state court actions.  They are not contesting this as

18  we are here today.  That is a good portion of the state court

19  action.

20          THE COURT:  Is that true, Mr. D'Esposito?

21          MR. D'ESPOSITO:  Your Honor, some of the defendants

22  have not appeared in the action.  I don't think that has any

23  bearing on whether the actions pending regarding our --

24          THE COURT:  Your client?  You are representing who

25  and you have appeared?  Who are you representing?

```
                        Proceedings                    10
```

1            MR. D'ESPOSITO:  We represent Jamaica Wellness

2    Medical, P.C.; Brij Mittal, M.D.; Mark Lampa, D.C.; United

3    Wellness Chiropractic, and David Safir.

4            THE COURT:  That is the group we are dealing with?

5            MR. MORONEY:  Yes.

6            THE COURT:  Now, there are others who have

7    defaulted.  As far as that is concerned, if they have

8    defaulted, then I guess you are entitled to a remedy against

9    them.

10            Do you agree with that, Mr. D'Esposito?  We are not

11    dealing with them; we are dealing with your group?

12            MR. D'ESPOSITO:  Yes, your Honor.

13            MR. MORONEY:  Mr. D'Esposito is correct.  As to him,

14    the two companies we are dealing with are Jamaica Wellness,

15    which is a medical company, and United Wellness Chiropractic,

16    a chiropractic entity.  They have answered.  They filed

17    counterclaims.  They are here contesting this motion.

18            THE COURT:  His clients have filed counterclaims.

19            MR. D'ESPOSITO:  Yes, your Honor.

20            MR. MORONEY:  As to them, Your Honor, there are a

21    couple of cases that are relevant, Your Honor, one is the

22    OnBAN Corp. Case, OnBAN Corp. versus Holtzman, which is a

23    Northern District of New York case.  It cites a case on the

24    Second Circuit called Sperry Rand Corp. and those cases deal

25    with the Anti-Injunction Act.  In particular --

```
                        Proceedings                      11
```

1      THE COURT:  And they say that the general

2  jurisdiction of the federal court can countermand the

3  Anti-Injunction Act under certain circumstances.

4      MR. MORONEY:  Yes.

5      THE COURT:  What are those circumstances?

6      MR. MORONEY:  In this case there is a stipulated

7  protective order that deals with discovery matters in this

8  case between State Farm and the medical company and the

9  chiropractic company.  All discovery issues in this case are

10  governed by that stipulated protective order.  It has

11  procedures in place as to designating materials.

12      THE COURT:  Regardless of that, you want me to issue

13  an injunction to enjoin state court proceedings.  That's the

14  bottom-line.

15      MR. MORONEY:  Right.  And the authority, Your Honor,

16  would be that if the state court actions are allowed to go on,

17  you can do an end around on that stipulated protective order.

18  This court has to enjoin those state court matters or the

19  stipulated protective order, which the parties agreed to and

20  which the Court entered, would have no effect if there were

21  other case out there where Jamaica Wellness and United

22  Wellness could seek the same discovery, go to those courts,

23  have those courts --

24      THE COURT:  The question is do I have the authority.

25  My wonderful law clerk, under the All Writs Act, provides an

1    exception to the Anti-Injunction Act where necessary to aid

2    the jurisdiction of the Court.  I am going to flush that out

3    to make sure that we are on solid ground, because it seems to

4    me, Mr. D'Esposito, that since all of the issues I hear would

5    certainly aid the jurisdiction of court, resolve the matters,

6    avoid fragmentation, avoid multiplicity of litigation which

7    could result in disparate determinations.  It would be a mess,

8    perhaps, that could be avoided by dealing with all these

9    issues in this litigation.  It seems that is the sensible

10   things to do.

11           I found two cases where colleagues of mine came to

12   the same conclusion:  One is Allstate Insurance versus

13   Elzanaty, where Judge Spatt stayed arbitration proceedings.

14   That may be a little different than a state court action.

15           The other one is the case of Bruce versus Martin, a

16   Southern District case, where the Court is seen there to

17   enjoin fragmented state actions so that the federal court

18   could give full and final and complete relief without fear

19   that there is going to be a whole range of different results

20   on the state court level.  So that impresses me and it makes

21   good commonsense to do that here.

22           So what do you have to lose?

23           MR. D'ESPOSITO:  Well, Your Honor, there are a

24   couple of things.  Number one, actually, each of these civil

25   court cases may have been denied for different reasons, Your

Proceedings                                    13

1    Honor; for example, one may have been denied based upon lack
2    of medical necessity, another one should have been denied
3    based upon lack of individual to appear for examination under
4    oath.
5             THE COURT:  I don't know.  I can't go into 50 cases.
6    We have everything before me.  Compulsory counterclaim rule
7    applies.  I can handle all of your problems here.  Why is that
8    not sufficient for you?
9             MR. D'ESPOSITO:  Again, Your Honor, like I
10   indicated, paragraph 75 of the plaintiff's complaint, they
11   allege sometime on or after April 2013 they discovered the
12   alleged fraud.  What is troublesome, Your Honor, is that they
13   commenced this lawsuit September, October 2016, three years
14   later, almost all these actions, Your Honor, were still
15   pending.
16            THE COURT:  So what?  Let me ask you very pointedly:
17   If I do not grant preliminary injunctive relief, how does this
18   litigation go forward before me?  You have your counterclaims.
19   They are the same claims you will have in the state court
20   action I assume.  All of those issues can be brought before
21   me.  As a practical matter, what do you gain by seeking to
22   avoid the preliminary injunction?  You are going to go through
23   all of those 50 state court claims and what are you going do
24   here before me?
25            MR. D'ESPOSITO:  The gain, Your Honor, is that some

Proceedings                                      14

1   of these cases, like counsel said, are ready for trial.  They

2   have performed these services and they feel they it -- it was

3   reasonable services.  Now, in these three years they may have

4   had to oppose --

5            THE COURT:  How are you prejudiced?  You can bring

6   all of this forward before me in your compulsory counterclaim.

7   You can bring all of these arguments before me.  We will look

8   at these 50 claims.  We will decide which are lawful, which

9   are not lawful.  You may be successful before me.

10           MR. D'ESPOSITO:  Your Honor, with all due respect

11  does that -- if it goes to trial, each case may have a

12  different issue.

13           THE COURT:  Isn't that the same that you have in the

14  state court proceeding; each of these different cases may have

15  different issues?  They are going to go before 50 different

16  judges or juries.  Why not have them all before me?

17           MR. D'ESPOSITO:  Your Honor --

18           THE COURT:  I am a friendly person.

19           MR. D'ESPOSITO:  Your Honor, this is what is

20  troublesome, Your Honor, is that plaintiff basically, after

21  alleged that they discovered the alleged fraud in April of

22  2013 waited three-and-a-half years to commence this action,

23  and while the Defendants were litigating these actions in

24  civil court, may be opposing motion, doing motion practice --

25           THE COURT:  There are a lot of things that have

Proceedings                                    15

1   happened in the civil court and you would feel it would be a

2   waste of time.  It is not really in good faith, that after the

3   plaintiffs have litigated this in state court they now want to

4   stop the state court proceedings, and it would be manifestly

5   unfair; that's your argument?

6          MR. D'ESPOSITO:  Yes.

7          THE COURT:  If that's true, why did you wait so

8   long?  You have already done a lot of work in the state court

9   level.  You have obviously defended a lot of these cases.

10  There are 50 cases.  Now you come here after spinning your

11  wheels and after trying to get resolutions.  It seems

12  unseemly.  Now you decide you don't like what's happening on

13  the state court level and you come here.

14         MR. MORONEY:  Your Honor, there has been no delay.

15  State Farm, they take these cases very seriously.

16         THE COURT:  What has happened in the state court

17  litigations?  Have you participated in it?

18         MR. MORONEY:  I have not.  When State Farm had a

19  basis to bring this case and they brought this case, then they

20  look at all of those underlying cases, and they look at what

21  could happen in those underlying case.  Your Honor correctly

22  cited the Bruce versus Martin case.  There is a discussion on

23  the All Writs Act.  There is a discussion of the quagmire that

24  could happen in these underlying cases.

25         THE COURT:  Does it deal with the enjoining of state

MDL   RPR

Proceedings                                              16

1    claims?  We are not talking about arbitrations.

2             MR. MORONEY:  It says a court of equity may grant an

3    injunction to avoid multiple actions at law if the actions

4    involve the same issues of law in fact so that decisions in

5    one action --

6             THE COURT:  And it can enjoin the state court

7    proceedings, does it say that?  Does it discuss the All Writs

8    Act?

9             MR. MORONEY:  It discusses it.

10            THE COURT:  Does it discuss the Anti-Injunction

11   statute?

12            MR. MORONEY:  It does, Your Honor.

13            The Court further goes on to say that the

14   plaintiffs, and in this case, it would be State Farm.  The

15   plaintiffs will be required to assert the same defenses under

16   the federal and state law that they assert as claims here    .

17   Prior rulings by the state courts that decline to stay such

18   actions may be introduced here to preclude this Court from

19   considering a given claim or factual defense.  That is the

20   irreparable harm that both the Bruce versus Martin case and

21   the Allstate versus Elzanaty case looked at as to the

22   defendant's argument as to why they want to go in state court.

23   They don't have an objective reason why they are being

24   prejudiced.  They just subjectively would rather litigate

25   there.

Proceedings                                              17

1              All of their claims are preserved in this case.

2      They filed a counterclaim which includes every case in state

3      court.  They have also brought those claims in this court.

4              THE COURT:  It seems to me that that makes good

5      commonsense.  I am going to take a shot at this, Mr.

6      D'Esposito, and you can go to the Circuit Court if I am wrong

7      I do think there are exceptions to the Anti-Injunction

8      statute.  I do respect the fact we have separate jurisdictions

9      and that normally the federal courts should not intervene and

10     usurp the jurisdiction of a state court proceeding unless it 1

11     is absolutely indicated.  I think this is the case where it is

12     indicated.  I am going to take a shot at making findings here

13     of fact, which I think I am required to do under Rule 52(a).

14     And the findings of fact I am making on the bench are that

15     there is irreparable harm that would be occasioned if I don't

16     grant a preliminary injunction.  We are talking a preliminary

17     injunction not, not just a TRO.

18             MR. MORONEY:  Yes, Your Honor.

19             THE COURT:  There are multiplicity in litigation.

20     We have facts now that have been disclosed during this

21     argument.  I thank counsel for your sincerity.  There are

22     50 cases that are pending on various different issues.  There

23     are some arbitrations.  There are some state court proceedings

24     that are at various different stages in the state

25     jurisdictional aspect, and we have here now all of these

1   issues that can be resolved.  We can avoid multiplicity of

2   litigation.  We can avoid having disparate determinations

3   which may be at variance one from the other.

4            There would be serious questions as to whether or

5   not in this litigation we grant relief and then the state

6   court has made different determinations on the same claims.

7   So, clearly, it seems that the economy of judicial resources

8   is amply served by having all of these issues revolved in this

9   one proceeding and that I think that really warrants the

10  exception to the Anti-Injunction Act here.  So all of these

11  state court proceedings and all of these arbitrations that you

12  have just told me about are going to be preliminarily enjoined

13  at this particular moment going forward.

14           The matters will be litigated in this proceeding.

15  You may be able to resolve these matters.  You may be able to

16  use mediation.  There are many different techniques we have

17  for you folks to come to a resolution.  It seems to me that

18  counsel can talk to each other and find out if there is any

19  real significance to any of these claims, if they are not

20  valid, they may be valid, they may not be valid.  We will

21  flush this all out in the context of litigation here before me

22  and I am sure you will reach a resolution here that will spare

23  you, Mr. D'Esposito, the need to go to 50 different courts.  I

24  don't think it is in your best interest to do that.  It

25  certainly is not in the best interest for the administration

Proceedings                                    19

1    of justice.

2            The preliminary junction is granted.  I have stated

3    for the reasons for that under Rule 52(a).

4            Now, what is the status of your litigation here now?

5            MR. MORONEY:  Yes, your Honor.  Judge Gold has been

6    handling discovery, as you know.

7            THE COURT:  He is a very good magistrate judge, as

8    you know.

9            MR. MORONEY:  He has done a very good job.  Judge

10   Gold, at Mr. D'Esposito's request, has indicated that the

11   defense gets to depose State Farm first before State Farm gets

12   to depose the Defendants and other witnesses.  It is a

13   corporate designee deposition and it is currently being

14   scheduled.  Mr. D'Esposito issued areas of inquiry.  State

15   Farm is identifying a witness.  That will be scheduled.

16           THE COURT:  So you are making progress.  It will

17   give Mr. D'Esposito a chance to find out specifically what

18   these claims are all about and State Farm's position with

19   respect to its effort to seek reimbursement or not to pay out

20   on other pending claims.

21           MR. D'ESPOSITO:  Your Honor, there have been some

22   settlement discussions.  My client would be willing to waive

23   some of the pending claims, which is typically how these

24   claims get resolved.  At this point, according to Mr. Moroney,

25   State Farm is also looking to recover some remuneration for

Proceedings                                    20

1   the alleged claims they paid out for the fraud.

2          Now, another issue, Your Honor, and I am going to be

3   sending Mr. Moroney a letter, Dr. Mittal who is, in fact, the

4   owner of Jamaica Wellness has been stricken with a

5   degenerative neurological disease and the letter from his

6   doctor is he can't participate in any depositions.

7          THE COURT:  Why don't you take this up before

8   Magistrate Judge Gold?  I am just trying to set the table

9   here.

10          Are there any criminal proceedings pending?

11          MR. MORONEY:  I'm sorry, Your Honor, I missed that.

12          THE COURT:  Are there any criminal proceedings

13  pending?

14          MR. MORONEY:  Not to my knowledge.

15          MR. D'ESPOSITO:  No.

16          THE COURT:  I mean, these cases could wind up in

17  federal criminal court.

18          MR. MORONEY:  Dr. Mittal served several years in

19  prison for a different case, but not that I know of for this

20  case.

21          THE COURT:  I was just curious.

22          All right.  We have my determination here.  You have

23  a record here.  You can get the record if you want to from the

24  court reporter.  We will have a minute entry made to indicate

25  we granted the preliminary injunction application for the

Proceedings                                    21

1    reasons stated in open court pursuant to Rule 52(a).

2              MR. MORONEY:  Thank you, Your Honor.

3              (Matter concluded.)

4                        *    *    *    *    *

5    I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

6

7        /s/ Michele D. Lucchese              May 30, 2017
     _____    _____
8        Michele D. Lucchese                    DATE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25