UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
GEICO INDEMNITY COMPANY, GEICO GENERAL
INSURANCE COMPANY and GEICO CASUALTY
COMPANY;

**MEMORANDUM AND ORDER**

23-CV-2835 (KAM)(PK)

                *Plaintiffs*,

   -against-

BHARGAV PATEL, M.D.,
PATEL MEDICAL CARE, P.C., and
JOHN DOE DEFENDANTS "1"-"10";

                *Defendants*.

---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (together, "Plaintiffs" or "GEICO") commenced this action on April 17, 2023, against Dr. Bhargav Patel ("Patel"), Patel Medical Care, P.C. ("Patel Medical"), and John Doe Defendants Nos. 1-10 (collectively, "Defendants"), seeking declaratory relief and RICO and common law damages, alleging that Defendants submitted thousands of fraudulent No-Fault insurance charges relating to "medically unnecessary, experimental, excessive, illusory, and otherwise unreimbursable healthcare services." (ECF No. 1, Complaint ("Compl.").) On December 22, 2023, GEICO moved for injunctive relief, seeking: (1) a stay of all collection

arbitrations arising under New York's No-Fault insurance laws that are pending before the American Arbitration Association ("AAA") and of all insurance collection lawsuits in state court brought by Defendants against GEICO pending disposition of this federal action; and (2) a preliminary injunction prohibiting Patel Medical, and anyone acting or purporting to act on its behalf, from commencing any new No-Fault collection arbitrations or state collection lawsuits against GEICO pending disposition of this federal action. (ECF No. 24-1, Memorandum of Law in Support of Plaintiffs' Motion ("Pl. Mem."), at 1.) For the reasons set forth below, Plaintiffs' motion for injunctive relief is granted, and bond is waived.

## BACKGROUND

### I.  New York's No-Fault Insurance Laws

New York enacted the Comprehensive Automobile Insurance Reparations Act, New York Insurance Law ("N.Y. Ins. Law") §§ 5101–5109, to "ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists." *Med. Soc'y of State of N.Y. v. Serio*, 800 N.E.2d 728, 731 (N.Y. 2003) (citing Governor's Mem. approving L. 1973, ch. 13, 1973 McKinney's Session Laws of N.Y., at 2335). Under those No-Fault insurance laws, No-Fault insurers like GEICO may reimburse patients without requiring proof of the other

driver's fault in an amount up to $50,000, including for expenses incurred for necessary medical or other professional health services.  *See* N.Y. Ins. Law § 5102(a)(1), (b).

Insurers must review, investigate, and verify an insured's claim for benefits and then pay or deny the claim within 30 days after submission.  *See* N.Y. Ins. Law § 5106(a); 11 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 65-3.8(a), (c).  In certain circumstances, an insured may also assign his or her benefits "directly to providers of health care services" so that the provider may receive direct payment from the insurer.  11 NYCRR § 65-3.11(a).  To be eligible to make a claim for benefits, a healthcare provider must be lawfully incorporated and, *inter alia*, "(1) must be owned by a physician who actually engages in the practice of medicine through that corporation, (2) may not bill for services provided by physicians who are not employees of the corporation, such as independent contractors, and (3) may not pay kickbacks to third parties for the referral of insureds."  *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-2802 (ILG), 2018 WL 6031156, at *2 (E.D.N.Y. Nov. 16, 2018) (internal citations omitted); *see also Gov't Emps. Ins. Co. v. Badia*, No. 13-CV-1720 (CBA), 2015 WL 1258218, at *8-9 (E.D.N.Y. Mar. 18, 2015).

Section 5106 of the New York Insurance Law creates a "[f]air claims settlement" procedure for all No-Fault claims.  No-Fault insurance benefits are deemed overdue if they are not paid or

denied within 30 calendar days after the insured submits a proof of claim.  *See* N.Y. Ins. L. § 5106(a); 11 NYCRR § 65-3.8(c).  If an insurer fails to comply with this timeframe, it is precluded from asserting many (but not all) defenses to coverage, including most fraud-based defenses.  *See Fair Price Med. Supply Corp. v. Travelers Indem. Co.*, 890 N.E.2d 233, 236 (N.Y. 2008); *Cent. Gen. Hosp. v. Chubb Grp. of Ins. Cos.*, 681 N.E.2d 413, 415 (N.Y. 1997). A claimant may bring a civil collection action in state court to recover overdue No-Fault benefits, and in that action the claimant need only show that the prescribed statutory billing forms were mailed and received and that the claimed benefits are overdue. *See Viviane Etienne Med. Care, P.C. v. Country-Wide Ins. Co.*, 35 N.E.3d 451, 458 (N.Y. 2015).

Insurers must also include a clause in their policies allowing the insured to seek arbitration of their claims for No-Fault benefits.  *See* N.Y. Ins. L. § 5106(b); 11 NYCRR § 65-1.1(a), (d). New York's No-Fault insurance laws establish the procedures for arbitration of any disputed claims.  *See* 11 NYCRR § 65-4.5.  By statute, the New York Department of Financial Services Superintendent has designated AAA as the body responsible for administering the No-Fault arbitration process.  *Id.* § 65-4.2(a)(2).  Insurers generally bear the costs associated with the arbitration process in direct proportion to the frequency with which they are named as respondents.  *Id.* § 65-4.2(c)(1).  The

"arbitration process for No-Fault coverage is an expedited, simplified affair meant to work as quickly and efficiently as possible" where "[d]iscovery is limited or non-existent." *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014) (citing 11 NYCRR § 65-4.5). "Complex fraud and racketeering claims, maturing years after the initial claimants were fully reimbursed, cannot be shoehorned into this system." *Id.*

An insurer who pays No-Fault benefits and subsequently discovers fraud may bring an action for damages. *See State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 229-35 (E.D.N.Y. 2008); *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, No. 04-CV-5045 (ILG), 2008 WL 4146190, at *6-7 (E.D.N.Y. Sept. 5, 2008). Where the insurer has not paid, the insurer may bring an action for a declaratory judgment that it is not liable for any unpaid claims because the provider has committed fraud or breached applicable No-Fault regulations. *See* 28 U.S.C. § 2201; *Gov't Emps. Ins. Co. v. Jacques*, No. 14-CV-5299 (KAM) (VMS), 2017 WL 9487191, at *9-11 (E.D.N.Y. Feb. 13, 2017), *report & recommendation adopted*, 2017 WL 1214460 (E.D.N.Y. Mar. 31, 2017); *State Farm Mut. Auto. Ins. Co. v. Cohan*, No. 09-CV-2990 (JS) (WDW), 2009 WL 10449036, at *4 (E.D.N.Y. Dec. 30, 2009), *report and recommendation adopted*, 2010 WL 890975 (E.D.N.Y. Mar. 8, 2010), *aff'd*, 409 F. App'x 453 (2d Cir. 2011). If an insurer is precluded from asserting a defense to coverage (such as provider

fraud) due to its noncompliance with the 30-day rule, however, it will also be precluded from obtaining a declaratory judgment on those same grounds.  *See Allstate Ins. Co. v. Williams*, No. 13-CV-2893 (RJD) (JO), 2015 WL 5560543, at *7 (E.D.N.Y. Aug. 28, 2015), *report and recommendation adopted sub nom. Allstate Ins. Co. v. Dublin*, 2015 WL 5560546 (E.D.N.Y. Sept. 21, 2015); *Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C.*, No. 12-CV-4295 (NG), 2013 WL 5131057, at *8 (E.D.N.Y. Sept. 12, 2013).

## II.  GEICO's Allegations

GEICO is authorized to conduct business and issue automobile insurance policies in the State of New York.  (Compl. ¶ 10.)  Patel is a New York citizen who was licensed to practice medicine in New York on July 3, 2015, and is the owner of Patel Medical.  (*Id.* ¶ 11.)  Patel Medical is a New York professional corporation which was incorporated on or about July 19, 2019, with a principal place of business in New York.  (*Id.* ¶ 12.)

Plaintiffs allege that, since August 2019, Patel and Patel Medical, with the aid of the John Doe Defendants, submitted more than $3.4 million in fraudulent bills to GEICO for services that were not medically necessary (and in some cases, not provided), as part of a scheme designed to exploit New York's No-Fault insurance laws.  (*Id.* ¶¶ 1-5, 35, 279-284.)  Those insurance charges were allegedly "medically unnecessary, experimental, excessive, illusory, and otherwise unreimbursable."  (*Id.* ¶ 1.)  Defendants

allegedly perpetrated the fraudulent scheme by (1) submitting claims with forged signatures in situations where no services were provided; (2) representing that Patel was the "treating provider" when many of the services were performed by "unlicensed technicians, not Patel, and without any supervision by Patel;" and (3) entering into "illegal kickback and referral arrangements in order to gain access to a steady stream of patients" for the scheme. (*Id.* ¶ 2.)

In support of its claims, GEICO alleges several facts regarding the scheme. For instance, in support of the allegation that Defendants' scheme "included billing for services that were never rendered," GEICO states that "multiple Insureds informed GEICO that they either never received [extracorporeal shockwave therapy "ESWT"] or received treatment far less often than indicated by the billing Patel Medical submitted." (*Id.* ¶ 41.) GEICO also alleges that "Patel Medical's claim submissions routinely contained documents purportedly signed by the Insured at the time they allegedly received treatment when, in fact, the Insured's signature was forged." (*Id.* ¶ 42.) GEICO includes a representative sample of the allegedly forged signatures in its unredacted complaint, and even a review by the untrained eye indicates significant differences – including, in several instances, a reversal of last and first names in the allegedly forged signatures submitted by Patel Medical. (ECF No. 27,

Unredacted Complaint at p. 12).  GEICO further offers a list of specific instances of alleged forgery for an insured individual with initials "H.V." that includes 20 separate submissions by Patel Medical.  (Compl. ¶ 45.)

Regarding the alleged kickback and referral scheme, GEICO states that Patel "did not market the existence of Patel Medical" or his medical services to the general public and "did virtually nothing that would be expected of the owner of a legitimate medical professional corporation to develop its reputation and attract patients to [his] Clinics." (*Id.* ¶¶ 51, 53.)  As an example, GEICO points to Patel's Clinic at 85-55 Little Neck Parkway, Floral Park, which GEICO states "is a residential building owned by Patel that he allegedly converted into a medical office in 2020." (*Id.* ¶ 54.)  GEICO provided a photograph of the residential building reflecting no signage or advertising "other than a small sign on the door that is not clearly visible from the street." (*Id.*) GEICO alleges that the lack of marketing, parking, signage, or any other legitimate means of generating patients is "[i]n keeping with the fact that Patel and Patel Medical obtained patients at the Floral Park Clinic pursuant to illegal kickback and referral arrangements." (*Id.* ¶ 55.)

Despite the lack of business development, Patel and Patel medical allegedly submitted over $1.2 million in billing to GEICO based on services "purportedly rendered from the Floral Park Clinic

alone." (*Id.*)  According to GEICO, this was only possible because Patel's kickback and referral scheme ensured that "patients were steered to the Floral Park Clinic by unlicensed individuals, including John Doe Defendants, and transported there directly by [a] transportation company" that was also involved in the scheme. (*Id.* ¶ 58.)  GEICO further states that "at least one other healthcare provider at [Patel's] Clinics has [been] accused of paying illegal kickbacks in exchange for patient referrals." (*Id.* ¶¶ 59-60 (citing *Gov't Employees Ins. Co., et al. v. Fialkov, et al.*, 21-CV-4039 (PKC) (E.D.N.Y.)).)

After the instant action was filed, GEICO alleges that Defendants "began filing hundreds of 'No-Fault' collection proceedings seeking payment for claims denied or disputed by GEICO, as part of the fraudulent scheme and in a conscious effort to undermine the Court's ability to fully adjudicated GEICO's declaratory judgment claim." (Pl. Mem at 2.)  Plaintiffs seek to recover more than $711,000 that Defendants obtained from GEICO, a declaration from the Court that GEICO is not legally obligated to reimburse Defendants for over $2,253,000 in pending No-Fault claims that Defendants have submitted, and a preliminary injunction precluding the Defendants from commencing new arbitrations and state collection actions and staying pending collection arbitrations and actions against GEICO. (Compl. ¶¶ 1, 3; Pl. Mem. at 1.)  GEICO asserts causes of action based on the

Racketeering Influenced and Corrupt Organizations Act ("RICO"), common law fraud, and unjust enrichment. (Compl. ¶¶ 278-312.)

## III. Collection Proceedings

In support of its motion, GEICO submitted the declaration of GEICO's Claims Manager Kathleen Asmus that details the process for collecting No-Fault claims through arbitration, the individual AAA arbitrations brought by the Defendants against GEICO, the process for collecting No-Fault claims within the New York civil courts, and the state collection lawsuits the Defendants are currently prosecuting against GEICO. (ECF No. 24-3, Declaration of Kathleen Asmus ("Asmus Decl.").)

According to Asmus, Defendants are currently prosecuting (i) 2 collection arbitrations against GEICO before the AAA, and (ii) 605 lawsuits against GEICO in various New York civil courts; collectively seeking to recover more than $2,675,000. (Asmus Decl. ¶ 6.) In addition to the bills that are presently subject to state court lawsuits or arbitrations, Defendants have continued to submit bills through Patel Medical to GEICO, each of which could be the subject of a new collection arbitration or lawsuit. (*Id.* ¶ 8.) GEICO seeks to stay these pending arbitrations and state lawsuits and to enjoin Defendants from commencing any new collection arbitrations or state collection actions. (Pl. Mem. at 1.) During the pendency of the instant case, Defendants have continued to pursue collection of individual bills through

arbitration and state court proceedings.  (Pl. Mem. at 8-9; Asmus Decl. ¶¶ 6-8.)

In support of Plaintiffs' requested relief, Asmus asserts that the procedures and practices in No-Fault arbitration proceedings impose significant limitations on insurers like GEICO. Insurers generally are not permitted to seek or obtain pre-hearing discovery beyond the discrete bill and claim at issue, which hinders an insurer's ability to demonstrate a pattern of medically unnecessary treatment or fraudulent billing practices by a provider across multiple patients and claims.  (Asmus Decl. ¶ 16.) Asmus likewise asserts that GEICO's ability to present its fraud claims in state court proceedings is likewise limited given "the amount in controversy, the limited nature of the billing/healthcare service in dispute in each individual case, and the huge volume of cases pending in the civil court system." (*Id.* ¶ 17.)  GEICO argues that the statutorily expedited No-Fault arbitration procedures and civil court proceedings cannot accommodate the time or resources needed for GEICO to demonstrate the existence of the alleged fraudulent scheme and provide evidence of its "patterns and practices, including [through] thousands of bills and supporting medical records, financial records, and the use of medical and financial experts."  (Pl. Mem. at 24.)

Defendants dispute GEICO's claim that there are still two active matters pending before the AAA, stating that a "search in

the AAA account shows no pending arbitrations." (ECF No. 28, Defendants' Memorandum of Law in Opposition ("Def. Mem."), at 1.) Defendants also contest the number of "active civil court cases," stating that it is 619. (*Id.*) Given the dispute is over a relatively small number of cases and does not significantly impact the analysis that will follow, the Court will assume that the amounts in the Asmus Declaration, which was made under penalty of perjury, are correct, for purposes of the instant motion.

## DISCUSSION

GEICO moves to stay and enjoin Defendants' No-Fault collection proceedings and state court collection lawsuits against GEICO. Courts in this Circuit have looked to the preliminary injunction standard under similar circumstances. *See Gov't Emps. Ins. Co. v. Cean*, No. 19-CV-2363 (PKC), 2019 WL 6253804, at *4 (E.D.N.Y. Nov. 22, 2019) (citing *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013)); *see also Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005). To justify a preliminary injunction, "a movant must demonstrate (1) irreparable harm absent injunctive relief; and (2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor.'" *Metro. Taxicab Bd. of Trade v. City of New York,* 615 F.3d 152, 156 (2d Cir. 2010) (quoting *Almontaser v. New York City Dep't of Educ.,* 519

F.3d 505, 508 (2d Cir. 2008)).  "The showing of irreparable harm is [p]erhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered."  *Elzanaty*, 929 F. Supp. 2d at 221 (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)).

Defendants assert that Plaintiffs have failed to show irreparable harm and can be fully compensated by money damages, and that Defendants will suffer more hardship than GEICO if the requested relief is granted. (*See generally* Def. Mem.)  Defendants further argue that the Second Circuit, under similar circumstances, has denied injunctive relief, citing *Allstate Insurance Co. v. Harvey Family Chiropractic,* 677 F. App'x 716 (2d Cir. 2017) (hereafter "*Harvey*").  (Def. Mem. at 15-18.)  As discussed, *infra*, however, *Harvey* and the other cases upon which Defendants rely are materially distinguishable.

As a threshold matter, the Court notes that GEICO's complaint and the instant federal action are substantially similar to several recent actions involving analogous allegations by No-Fault insurers of widespread fraudulent medical billing under New York's No-Fault insurance laws.  *See Gov't Emps. Ins. Co. v. Tolmasov*, 602 F. Supp. 3d 380, 386 (E.D.N.Y. 2022) (collecting cases). Defendants make no effort to distinguish the cited prior decisions from this case, beyond stating that the cases "misconstrue" the

standard for granting injunctive relief and "adopt GEICO's dubious reasoning."  (Def. Mem. at 4, 7.)

Having considered the numerous district court decisions in this Circuit and Second Circuit decisions addressing similar circumstances, and upon review of the well-pleaded and plausible factual allegations in the instant complaint and GEICO's supporting submissions and declarations and Defendant's opposition submissions, this Court concludes that GEICO has satisfied the elements for injunctive relief.  Accordingly, for the reasons set forth below, GEICO's motion to stay all pending No-Fault collection arbitrations before the AAA[1] and state collection actions involving Defendants, and to enjoin Defendants from commencing against GEICO any future No-Fault collection arbitrations before the AAA or state collection actions pending this Court's resolution of the instant federal action, is granted.

### a. Irreparable Harm

A party seeking injunctive relief must establish, *inter alia*, irreparable harm absent an injunction.  *See, e.g., Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 529 (2d

---

[1] Defendants argue that the request to stay the collection arbitration cases should be denied as moot, as Defendants allege no active arbitrations are taking place between the parties.  (Def. Mem. at 1.)  As noted *supra*, GEICO alleges that two collection arbitrations were still active as of November 21, 2023.  (Asmus Decl. ¶ 6.)  Because there is a dispute as to the number of active arbitrations, and because Defendants do not show any prejudice that would result from a stay being entered in the absence of any active cases, the Court relies on the Asmus declaration and assumes, without deciding, that there are active arbitrations, and that they should accordingly be subject to the Court's stay.

Cir. 2020).  "To establish irreparable harm, a party seeking preliminary injunctive relief must show that 'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'"  *Kamerling*, 295 F.3d at 214 (quoting *New York Pathological & X-Ray Labs., Inc. v. INS*, 523 F.2d 79, 81 (2d Cir. 1975)).  Defendants contend that money damages are adequate to redress Plaintiffs' alleged harm and that the Second Circuit has held that litigation and inconvenience are insufficient to establish irreparable harm.  (Def. Mem. at 2-5.)  The majority of courts in this Circuit, however, have held that "[i]rreparable harm occurs where 'an insurer is required to waste time defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action.'"  *Gov't Emps. Ins. Co. v. Moshe*, No. 20-CV-1098 (FB), 2020 WL 3503176, at *1 (E.D.N.Y. June 29, 2020) (quoting *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 233 (E.D.N.Y. 2018)); *see also Elzanaty*, 929 F. Supp. 2d at 222; *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-2802 (ILG), 2018 WL 6031156, at *5 (E.D.N.Y. Nov. 16, 2018); *Gov't Employees Ins. Co. v. Zaitsev*, No. 20-CV-03495 (FB), 2021 WL 3173171, at *2 (E.D.N.Y. July 27, 2021); *Gov't Employees Ins. Co.* v. *Wallegood, Inc.*, No. 21-CV-1986 (PKC), ECF No. 36 at 9-10 (E.D.N.Y. July 16, 2021);

*Gov't Employees Ins. Co. v. Landow*, No. 21-CV-1440 (NGG), 2022 WL 939717, at *12 (E.D.N.Y. Mar. 29, 2022).

Defendants further dispute that a declaratory judgment in the instant action would "adjudicate" their collection proceedings in a single forum, noting that if GEICO failed to obtain judgment in the instant case, it would still have "the option of defending on the individual defenses that it raised in civil court actions." (Def. Mem. at 6-7.)   As noted by Plaintiffs in their reply, however, rather than separately "adjudicating" each of the hundreds of collection actions in state court, a judgment by this Court would determine "whether Defendants are *eligible* to collect no-fault benefits due to the behavior alleged in GEICO's complaint."   (ECF No. 26, Plaintiff's Reply in Support ("Pl. Reply"), at 8 (emphasis added).)   Such an outcome would indeed provide an opportunity for the "proceedings [to] be resolved globally in a single, pending declaratory judgment action." *Parisien*, 352 F. Supp. 3d at 233.   Moreover, Plaintiffs will have to prove their damages if they prevail in this Court.

In further disputing the irreparable harm GEICO will suffer, Defendants, as noted *supra*, rely on *Harvey*, a summary order issued by the Second Circuit that affirmed the denial of an insurance company's request to stay No-Fault arbitrations and state court collection suits.   677 F. App'x 716 (2d Cir. 2017).   Defendants do not explain, however, how the facts of the instant case are

analogous to *Harvey*, beyond general arguments that GEICO's alleged injuries are compensable by monetary damages and therefore GEICO has not established irreparable harm. (Def. Mem. 2-3.) Furthermore, for the reasons set forth in this Court's decisions in *Advanced Comprehensive Laboratory*, *Wellmart*, and *Tolmasov*, the Second Circuit's summary decision in *Harvey* does not preclude injunctive relief, because irreparable harm may be established by "the risk of inconsistent judgments." *Gov't Emps. Ins. Co. v. Advanced Comprehensive Laboratory, LLC,* No. 20-CV-2391 (KAM), 2020 WL 7042648, at *5 (E.D.N.Y. Dec. 1, 2020); *Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 451 (E.D.N.Y. 2020) ("the Second Circuit [in *Harvey*] said nothing of the risk of inconsistent judgments"); *see also Moshe*, 2020 WL 3503176, at *2 ("*Harvey* does not preclude granting an injunction to avoid inconsistent judgments").

Here, as in *Advanced Comprehensive Laboratory*, *Wellmart*, and *Tolmasov*, where an insurer demonstrates a risk of inconsistent judgments in No-Fault arbitrations, state collection actions, and RICO- and fraud-based litigation in federal court, irreparable harm may be shown. Indeed, numerous district courts in this Circuit have also found irreparable harm in similar circumstances. *See, e.g., Mayzenberg*, 2018 WL 6031156, at *5 ("The concern is that allowing over 180 arbitrations to be heard by a mix of arbitrators, each of whom will likely come to their own independent

and contradictory conclusions that may be rendered ineffective by this Court, will result in harm to GEICO from which it cannot recover."); *Moshe*, 2020 WL 3503176, at *2 (finding irreparable harm where 4,786 pending arbitrations against GEICO presented a risk of inconsistent judgments); *Parisien*, 352 F. Supp. 3d at 232 (finding irreparable harm where permitting a defendant's individual collection arbitrations and lawsuits would "nullify [GEICO's] efforts to prove fraud at a systematic level, impair a federal declaratory judgment action over which the Court has taken jurisdiction precisely to eliminate such fragmentation, and deprive [GEICO] of an avenue towards complete relief in *any* court"); *Wellmart*, 435 F. Supp. at 449 (finding irreparable harm where the "crux of GEICO's argument is, absent a stay, the collection proceedings will not merely drain GEICO of time and resources, but will also invite inconsistent judicial outcomes"); *Cean*, 2019 WL 6253804, at *5 (finding irreparable harm where an insurer spends resources "defending numerous no-fault actions" when those actions could be resolved in a "single, pending declaratory judgment action"); *see also Liberty Mut. Ins. v. Excel Imaging*, 879 F. Supp. 2d 243, 264 (E.D.N.Y. 2012) ("Permitting these individual claims to proceed to arbitration while [insurer's] claim for a declaratory judgment remains pending in this Court puts the Plaintiffs at significant risk of multiple judgments that may be inconsistent with the ultimate decision in

this case"). The findings and conclusions by numerous district courts in this Circuit further support this Court's conclusion that GEICO will suffer irreparable harm absent injunctive relief.

Here, GEICO alleges that Defendants have perpetrated a complex fraudulent billing scheme by submitting thousands of fraudulent, medically unnecessary claims to GEICO for financial gain under New York's No-Fault insurance regime. (*See* Compl. ¶ 1.) The complaint appends documentation to support GEICO's claims of fraudulent and medically unnecessary treatment, including "a representative sample of the fraudulent claims" (*id.* ¶ 7), which shows 8,423 allegedly fraudulent claims identified by GEICO as of the date the instant suit commenced. (*Id.*, Ex. 1 (examples of billing submissions by Patel Medical).) Furthermore, as previously discussed, GEICO has included documentation regarding allegedly forged patient signatures, a referral and kickback scheme, and the provision of medical services by unlicensed technicians with no supervision by Patel. (*See generally id.*)

According to GEICO, Defendants are currently prosecuting (i) 2 collection arbitrations against GEICO before the AAA, and (ii) 605 lawsuits against GEICO in various New York civil courts; collectively seeking to recover more than $2,675,000. (Asmus Decl. ¶ 6.) Of the 607 pending collection proceedings, 604 were filed by Patel Medical after GEICO filed its complaint in the instant case. (*Id.* ¶ 7.) Defendants could have asserted counterclaims in

the instant federal case, but instead created a race to risk inconsistent adjudications.  In addition, GEICO's declaratory judgment claim against the Defendants also relates to bills that Defendants have continued to submit to GEICO and can become "the subject of a new No-Fault collection arbitration or No-Fault collection lawsuit." (*Id.* ¶ 8.)  Without injunctive relief, GEICO asserts that it will suffer irreparable harm in the form of wasted resources and inconsistent arbitration decisions and judicial judgments.  This Court agrees.

Indeed, allowing the remaining collection arbitrations to proceed before different arbitrators, and 605 state lawsuits to continue in parallel proceedings, would very likely subject GEICO to "independent and contradictory conclusions" that ultimately may "be rendered ineffective by this Court," pending the disposition of GEICO's instant lawsuit. *Mayzenberg*, 2018 WL 6031156, at *5. Moreover, under these circumstances, the Court agrees that GEICO will suffer irreparable injury that "is neither remote nor speculative" without injunctive relief because Defendants may continue to commence arbitrations before the AAA and state lawsuits for outstanding claims. *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). Because Defendants failed to confront and distinguish the reasoning in *Advanced Comprehensive Laboratory, Wellmart*, and *Tolmasov*, for the reasons explained in those cases, this Court similarly rejects Defendants'

argument that GEICO will not suffer irreparable harm absent injunctive relief.

Defendants also rely heavily on *Allstate Insurance Co. v. Avetisyan*, No. 17-CV-4275 (LDH), 2018 WL 6344249 (E.D.N.Y. Oct. 30, 2018). That case is materially distinguishable from the present matter. In *Avetisyan*, Plaintiffs argued that an injunction was warranted because continued arbitration and litigation in parallel proceedings presented a serious risk of inconsistent rulings, but the Court found that no such risk existed because the fraudulent coding and billing activity Plaintiffs alleged in support of their federal RICO claim and request for declaratory judgment were not asserted as defenses in the parallel proceedings. *Id.* at *2, *4. Here, by contrast, GEICO has asserted lack of medical necessity and fraudulent billing both as a defense in the underlying collections and as a basis for declaratory judgment in this case. (Pl. Reply at 5). Given that Defendants have 605 civil court lawsuits pending against GEICO (Defendants filed almost all 605 after the complaint) that involve the same claims as GEICO's declaratory judgment claim in this action, an injunction staying the state lawsuits until this action is resolved is necessary to aid this Court's jurisdiction, protect this Court's ability to issue a declaratory judgment, prevent inconsistent results, and avoid wasting judicial resources for all parties involved.

Finally, Defendants cite two decisions by then-District Judge Bianco, denying applications to enjoin the filing and prosecution of No-Fault arbitrations. *See Allstate Ins. Co. v. E. Island Med. Care, P.C.*, 16-CV-2802 (JFB), ECF No. 106 at 23-24 (E.D.N.Y. June 5, 2017) ("I don't believe that the issues that the Plaintiffs are concerned about here that they've raised demonstrate any irreparable harm or inconsistencies in judgments, and I believe that they can be fully compensated by monetary damages. So for those reasons, I don't believe Plaintiffs have met the irreparable harm requirement."); *Allstate Ins. Co. v. Zelefsky*, 13-CV-5830 (JFB), ECF No. 66, at 54 (E.D.N.Y. Apr. 2, 2014) ("[T]he irreparable harm requirement is not met in this case. We are dealing with money damages. All the things that we've discussed that are in the complaint can all be compensated through money damages."). This court considered an identical argument in *Wellmart*, and concluded in that action that Judge Bianco's oral rulings did not provide a specific basis for his conclusion regarding irreparable harm, and as such, would not be considered in the Court's analysis. *See Wellmart*, 435 F. Supp. 3d at 452 ("The court is unable to discern the specific basis for Judge Bianco's conclusion that Allstate was not at risk of irreparable harm, and thus, the *Zelefsky* and *Eastern Island* decisions do not color this court's analysis.").

If Defendants are permitted to prosecute the ongoing collection proceedings, GEICO faces imminent and non-speculative risks of inconsistent judgments and unnecessary, and potentially unrecoverable, expenditures of time and resources on arbitrations and state court lawsuits that may be resolved by the instant, pending declaratory judgment action. Accordingly, the Court concludes that GEICO has demonstrated irreparable harm absent injunctive relief.

### b. Serious Questions Going to the Merits

In addition to a showing of irreparable harm, for a preliminary injunction to issue, there must also be "either 'a likelihood of success on the merits' or 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly' in the movant's favor." *Parisien*, 352 F. Supp. 3d at 234 (E.D.N.Y. 2018) (quoting *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). "Likelihood of success is not the focus at the early stages of a case such as this, because any likelihood of success inquiry would be premature. Instead, the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial." *Id.* (quoting *Elzanaty*, 929 F.Supp.2d at 217); *see also Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) ("The 'serious questions' standard permits a district court

to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction. Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips decidedly' in its favor, its overall burden is no lighter than the one it bears under the 'likelihood of success' standard.").

Here, as in *Advanced Labs*, *Wellmart*, and *Tolmasov,* GEICO's submissions easily meet the threshold of showing a serious question going to the merits. *See Advanced Comprehensive Laboratory,* 2020 WL 7042648 at *6; *Wellmart,* 435 F. Supp. 3d at 453; *Tolmasov*, 602 F. Supp. 3d at 390. Plaintiffs seek injunctive relief against Defendants' pursuit of collection arbitrations and lawsuits, and a declaratory judgment that Defendants have "no right to receive payment for any pending bills submitted to GEICO because the Fraudulent Services were not medically necessary and were provided – to the extent they were provided at all – (1) "pursuant to pre-determined fraudulent protocols"; (2) with billing codes that misrepresented the services provided; (3) "pursuant to the dictates of laypersons not licensed to render healthcare services"; (4) "pursuant to illegal kickback payments made in exchange for patient referrals"; and (5) "by independent

contractors, rather than by employees of Patel Medical." (Compl. ¶ 280-84.)  Defendants do not offer any arguments in response to Plaintiff's argument that "that GEICO has shown, at a minimum, sufficiently serious questions going to the merits of GEICO's declaratory judgment claim to make them a fair ground for litigation – if not establish a likelihood of success on the merits." (Pl. Mem. at 15.)

GEICO's evidence in support of the motion for injunctive relief and declaratory relief, as set forth in its motion and exhibits to the complaint "detail a complicated scheme of alleged fraudulent activity," *Elzanaty*, 929 F. Supp. 2d at 222, supported by specific examples and exhibits.  For example, as previously noted, GEICO includes a representative sample of the allegedly forged patient signatures in its unredacted complaint which reveal significant discrepancies even to an untrained observer. (ECF No. 27, Unredacted Complaint at p. 12).  GEICO further offers a list of specific instances of alleged forgery for an insured individual with initials "H.V." that includes 20 separate submissions by Patel Medical.  (Compl. ¶45.)

GEICO also offers significant details and documents regarding the existence of an elaborate kickback and referral scheme, including the use of a transportation company to bring individuals to a residential property owned by Patel and converted into a clinic with no marketing, parking for customers, or obvious

indication that it offered medical services whatsoever. (*Id.* ¶¶ 51-55.) Despite the alleged lack of any marketing to the general public, Patel and Patel Medical nonetheless submitted over $1.2 million in billing to GEICO from the Floral Park clinic alone. (*Id.*) Further, GEICO also alleges that, to the extent services were actually performed, they were often performed by unlicensed technicians who were never employed by Patel or Patel Medical, in direct violation of New York's No-Fault insurance laws. (*Id.* ¶¶ 254-56.) GEICO offers as evidence the fact that "Patel Medical issued IRS 1099-NEC forms in 2021 to multiple unlicensed technicians who performed ESWT services on behalf of Patel Medical." (*Id.* ¶ 263.)

Moreover, GEICO alleges that Defendants, based upon the "fraudulent, pre-determined 'diagnoses' that they purported to provide to Insureds during the purported initial consultations and examinations," subsequently subjected many of the insured individuals to "medically unnecessary" procedures, including (i) electrodiagnostic tests "designed solely to maximize the charges that Patel Medical could submit to GEICO and other insurers"; (ii) electromyography ("EMG") tests that were "medically useless" and "played no genuine role in the treatment or care of the Insureds"; and (iii) "experimental services styled as extracorporeal shockwave therapy ('ESWT') 'treatments' that were, in reality, medically unnecessary, experimental, and non-reimbursable Radial

Pressure Wave Therapy ('RPWT') services". (*Id.* ¶¶ 1, 146, 212, 221, 230.) The complaint also appends documentation to support GEICO's claims of fraudulent and medically unnecessary treatment, including "a representative sample of the fraudulent claims" (*id.* ¶ 7), which shows 8,423 allegedly fraudulent claims identified by GEICO as of the date the instant action commenced. (*Id.*, Ex. 1 (examples of billing submissions by Patel Medical).)

Viewing the record collectively, the complaint's detailed allegations and appended documents satisfy the heightened "likelihood of success" standard with respect to Plaintiffs' statutory and common law causes of action, and, at a minimum, raise a serious question going to the merits as to whether Defendants were fraudulently providing treatment that was not medically necessary and, in some cases, not actually performed. *See Parisien*, 352 F. Supp. 3d at 234 (finding serious question going to the merits where the complaint and exhibits alleged Defendants provided unnecessary medical services); *Elzanaty*, 929 F. Supp. 2d at 222 (finding serious question going to the merits where complaint alleged "complicated scheme" of fraud). In any event, given this Court's finding of irreparable harm to Plaintiffs, sufficiently serious questions going to the merits, and as the Court will discuss next, a balance of hardships tipping decidedly in favor of granting the stay and injunctive relief, the Court need not and does not further address the likelihood of success.

*See Gov't Emps. Ins. Co. v. Strutsovskiy,* No. 12-CV-330 (LJV), 2017 WL 4837584, at *8 (W.D.N.Y. Oct. 26, 2017) (declining to address the likelihood of success where the Court found "sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in favor of granting the stay"); *Parisien,* 352 F. Supp. 3d at 234 (declining to address likelihood of success where the Court found "that there are 'serious questions going to the merits' in lieu of a 'likelihood of success on the merits'").

### c. Balance of Hardships

Lastly, the Court must balance the hardships of GEICO and Defendants.  Given the Court's finding that Plaintiffs will be irreparably harmed and that there are "serious questions going to the merits," for a preliminary injunction to issue, the Court must further determine whether the "balance of hardships tip[s] decidedly" in GEICO's favor.  *Parisien,* 352 F. Supp. 3d at 234. Consistent with this Court's decision in *Advanced Labs*, *Wellmart*, and *Tolmasov*, if the Court grants Plaintiffs' motion to enjoin the underlying collection proceedings and GEICO fails to prove its claims, "then, at worst, [defendants'] recovery of the no-fault benefits to which they are entitled will be delayed; all [defendants] can hope for in pursuing their parallel state lawsuits and arbitrations is to accelerate their receipt of benefits to which they are already entitled."  *Id.* at 234-35.  If Defendants'

pending arbitration and civil collection proceedings are not stayed, then, as discussed above, GEICO will suffer irreparable harm because if GEICO prevails, money damages will be inadequate to remedy the Plaintiffs' time and losses, and because of the risk of inconsistent outcomes. Accordingly, the balance of hardships tips decidedly in favor of GEICO.

Furthermore, in balancing the hardships experienced by defendants, this Court also concludes that Defendants will suffer no prejudice if their right to collect the pending billing is adjudicated in a single declaratory judgment action. "Indeed, granting the stay and injunction will actually save all parties time and resources. Rather than adjudicating hundreds of individual claims in a piecemeal fashion, all claims can be efficiently and effectively dealt with in a single declaratory judgment action." *Gov't Emps. Ins. Co. v. Cean*, No. 19-CV-2363 (PKC), 2019 WL 6253804, at *5 (E.D.N.Y. Nov. 22, 2019) (citing *Elzanaty*, 929 F. Supp. 2d at 222 (finding that "all parties will benefit from having the issue of fraudulent incorporation determined in one action")). Like defendants in other similar actions, here, Defendants "will benefit from the stay if [they] ultimately prevail[] in this matter because [they] will be entitled to the collection of interest at a rate of two percent every month that the No-Fault payments are overdue." *Strutsovskiy*, at *8 (quoting *Elzanaty*, 929 F. Supp. 2d at 222); *see* 11 NYCRR § 65-

3.9(1)(a) ("All overdue mandatory and additional personal injury protection benefits due an applicant or assignee shall bear interest at a rate of two percent per month, calculated on a pro-rata basis using a 30-day month.").

The Court does not find persuasive Defendants' argument that the underlying GEICO insurance policies might be exhausted by other claims from other healthcare providers during the pendency of the stay, thus leaving Defendants unable to collect once the stay is lifted. (Def. Mem. at 20-21.) As noted by Plaintiffs in their reply, Defendants do not identify any claims that might actually be rendered uncollectable, or any reason why Defendants could not collect on their claims from other payors should a hypothetical policy be exhausted. (Pl. Reply at 8.) Given the speculative and conclusory nature of Defendants' contentions, this Court joins other courts in this district which have found such arguments to be insufficient to demonstrate that the balance of hardships tips in Defendants' favor. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Herschel Kotkes, M.D., P.C.*, No. 22-CV-03611 (NRM), 2023 WL 4532460, at *11 (E.D.N.Y. July 13, 2023) ("[Defendant] does not identify any policies nearing exhaustion, nor any particular reason why this may be a legitimate, imminent concern for his patients."); *Gov't Emps. Ins. Co. v. Moshe*, No. 20-CV-1098 (FB), 2020 WL 3503176, at *3 (E.D.N.Y. June 29, 2020) ("[Defendant's]

argument is speculative at best considering defendants do not identify any policies nearing exhaustion").

For the reasons set forth above, because GEICO has made the requisite showing for the Court to grant a stay and preliminary injunction, and because Defendants will not be prejudiced, GEICO's motion is granted.

### d. Undertaking

Federal Rule of Civil Procedure Rule 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Though the Rule appears to use mandatory language, an exception to the bond requirement has been crafted for cases involving the enforcement of "public interests" arising out of "comprehensive federal health and welfare statutes."  *Pharm. Soc. of State of N.Y., Inc. v. N.Y. State Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995).  In determining if claims involve the enforcement of public interest, "the nature of the rights being enforced, rather than the nature of the entity enforcing them, is the central consideration in determining whether the bond requirement should be waived under this exception."  *Id.* at 1175. Further, a district court has wide discretion to dispense with the bond requirement "where there has been no proof of likelihood of

harm." *Donohue v. Mangano*, 886 F. Supp. 2d 126, 163 (E.D.N.Y. 2012).

Although there is no federal health and welfare statute involved in this action, New York's No-Fault insurance statutes are laws "designed to protect accident victims regardless of fault by enabling them to obtain necessary medical attention without concern of the ability to pay." *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-2802 (ILG), 2018 WL 6031156, at *10 (E.D.N.Y. Nov. 16, 2018). In *Mayzenberg*, the court waived the security requirement of Rule 65(c) in light of the systemic nature of the fraud alleged in the complaint and the lack of prejudice to the defendants resulting from a preliminary injunction. *Id.* The same considerations justify dispensing with the bond requirement here, particularly in light of the fact that Defendants do not appear to oppose GEICO's request, and do not provide any showing of prejudice that would result. (*See generally* Def. Mem.) Accordingly, the Court grants GEICO's request to waive the bond requirement.

### e. Authority to Enjoin

The All-Writs Act, 28 U.S.C. § 1651, gives a district court the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *Id.* § 1651(a). Pursuant to this statute, "a federal court may enjoin actions in other jurisdictions that would undermine its ability to reach and resolve the merits of the

federal suit before it." *Parisien*, 352 F. Supp. 3d at 224 (internal quotation marks and citation omitted). "The court's authority to take this action, however, is limited by the Anti-Injunction Act, 28 U.S.C. § 2283, which provides that 'a court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *Gov't Emps. Ins. Co. v. Landow*, No. 21-CV-1440 (NGG), 2022 WL 939717, at *13 (E.D.N.Y. Mar. 29, 2022) (quoting 28 U.S.C. § 2283).

"However, if an injunction falls within one of these three exceptions, the All-Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings." *Parisien*, 352 F. Supp. 3d at 225 (internal quotation marks and citation omitted). Despite this, the "mere pendency of a parallel proceeding in state court, in and of itself, is insufficient grounds to invoke the exception." *Id.* Rather, in *Parisien,* "the court held that because the defendants allegedly acted pursuant to one single scheme, and the federal court had jurisdiction over that scheme, it had the authority to stay the [2,300 actions in state civil court]." *Landow*, 2022 WL 939717, at *13 (citing *Parisien*, 352 F. Supp. 3d at 225)).

In their opposition, Defendants argue that the "'[in] aid of jurisdiction' exception to the [Anti-Injunction Act] does not

apply" to the instant case.   (Def. Mem. at 22.)   Specifically, Defendants argue that the line of district court cases, cited by Plaintiffs, that cite to *United States v. Schurkman*, 728 F.3d 129 (2d Cir. 2013) were improperly decided.   Defendants do not explain specifically what those decisions decided incorrectly, but instead summarize the Second Circuit's opinion in *Shurkman* before arguing that "there is simply no way that *Shurkman* applies to this action" without offering any meaningful analysis.   (Def. Mem. at 23.)

Defendants' negligible argument is inadequate to convince this Court that injunctive relief must be denied.   As discussed further above, in recent and analogous cases to this one, courts in this Circuit have concluded that, based on an exception to the AIA, the courts were authorized to stay the state court collection lawsuits insurers have faced pending disposition of the insurer's claims in federal court.[2]   *See  Gov't Emps. Ins. Co. v. Wallegood,*

---

[2] The Court notes that an intra-district split has recently developed on this topic, with two decisions concluding that an exception to the AIA did not apply to an insurer's efforts to stay state court collection proceedings.   *See, e.g., Gov't Emps. Ins. Co. v. Granovsky*, No. 19-CV-6048 (EK), 2022 WL 1810727, at *5 (E.D.N.Y. June 2, 2022) ("the factors that GEICO invokes now are simply not sufficiently analogous (in my view) to merit application of the necessary-in-aid-of-jurisdiction exception"); *State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*, No. 21-CV-5523 (MKB), 2022 WL 1606523, at *13 (E.D.N.Y. May 20, 2022) ("the Court finds that the in-aid-of-jurisdiction exception to the Anti-Injunction Act does not apply to Plaintiffs' request for a preliminary injunction of pending no-fault insurance state court proceedings").   *Metro Pain Specialists* is, as of the time of this opinion, on appeal before the Second Circuit.   Until such time as the Second Circuit offers further guidance on the topic, this Court continues to find persuasive Judge Glasser's thoroughly reasoned opinion in *Parisien,* which found that "the fragmentation of the dispute into more than 2,300 individual actions would nullify [the insurer's] efforts to prove fraud at a systemic level, impair a federal declaratory judgment action over which the Court has taken jurisdiction precisely to eliminate such fragmentation, and deprive [the insurer] of an avenue toward complete relief in any court."   352 F. Supp. 3d at 232.

*Inc.*, No. 21-CV-1986 (PKC), ECF No. 36 at 14-19 (E.D.N.Y. July 16, 2021); *Parisien*, 352 F. Supp. 3d at 232; *Landow*, 2022 WL 939717, at *13; *State Farm Mut. Auto. Ins. Co. v. Herschel Kotkes, M.D., P.C.,* No. 22-CV-03611 (NRM), 2023 WL 4532460, at *12 (E.D.N.Y. July 13, 2023) ("this Court concludes that the 'in aid of jurisdiction' exception applies to pending no-fault collection actions such as this one, in which an insurer-plaintiff has plausibly alleged a broad pattern of fraud in a defendant's no-fault insurance claims that are also the subject of dozens of state court actions").

In this case, the court is persuaded that the exception to the general rule applies. While it may be advisable to deny an injunction when the state court's judgment could "peaceably coexist with the district court's judgment," *Schurkman*, 728 F.3d at 139, GEICO has persuaded this Court that the instant case does not present such a situation. The Plaintiffs face over 600 pending state actions, all of which are connected to the federal action, and none of which would be fully evaluated in state court as to the fraud allegations. (Pl. Reply at 10.) Furthermore, the state court actions have the potential to conflict with the declaratory judgment. *See Parisien*, 352 F. Supp. 3d at 229 ("Any judgment in the state no-fault proceedings will be *res judicata* for purposes of [a federal] action. Therefore, if [plaintiff] suffers an adverse judgment in state court, this court will be bound to adhere to

that decision, even though the state court may not have been able to consider what seems to be the heart of plaintiff's case.").  In addition, "it is unlikely that the balance of federalism, which the Anti-Injunction Act was intended to safeguard, will be significantly disturbed by pausing individual collections actions in order to ascertain whether these actions may be dealt with more efficiently in a declaratory judgment action."  *Kotkes*, 2023 WL 4532460, at *13.  Accordingly, the Court finds that the exception to the Anti Injunction Act applies, and this Court therefore has the ability to enjoin the pending state collection lawsuits.

**CONCLUSION**

For the reasons set forth above, GEICO's motion for preliminary injunctive relief is GRANTED, pending resolution of the instant federal action, to (1) stay all pending No-Fault collection arbitrations before the AAA and all pending state court collection proceedings between Defendants and GEICO; and (2) to enjoin Defendants from commencing any new No-Fault insurance collection arbitrations or collection lawsuits against GEICO.

The parties shall proceed to discovery and are hereby referred to Magistrate Judge Peggy Kuo for all pre-trial matters. Because the Court is preliminarily staying Defendants' rights to commence further No-Fault insurance arbitrations and collection lawsuits against GEICO on behalf of Defendants, all procedures in this matter should proceed on an expedited basis.

SO ORDERED.

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York


Dated: Brooklyn, New York
       January 8, 2024