

WWW.RIVKINRADLER.COM

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000 F 516.357.3333

**SEAN GORTON**
PARTNER
(516) 357-3319
sean.gorton@rivkin.com

December 15, 2025

**VIA ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: *Gov't Emps. Ins. Co., et al v. Bhargav Patel, M.D., et al.*
> Docket No. 1:23-cv-02835-KAM-SDE

Dear Judge Matsumoto:

Plaintiffs (collectively "GEICO" or "Plaintiffs") respectfully request a pre-motion conference in connection with its proposed motions: (1) to exclude the two expert reports authored by Defendant Bhargav Patel, M.D. ("Patel"), annexed hereto as Exhibits "1" & "2"; and (2) for summary judgment on (i) GEICO's RICO claim against Patel and (ii) its claims against Patel and Patel Medical Care, P.C. ("Patel Medical") for common-law fraud, unjust enrichment, and declaratory judgment.

By way of background, GEICO initiated this case against Patel and Patel Medical (collectively, "Defendants") on April 17, 2023, alleging that Defendants engaged in a no-fault insurance fraud scheme by, among other things, illegally submitting millions of dollars in fraudulent billing to GEICO for medically unnecessary initial and follow-up patient examinations, outcome assessment tests, electrodiagnostic ("EDX") testing, and "high-energy," experimental extracorporeal shockwave therapy ("ESWT"), all of which, in many instances, were never actually rendered to patients and were instead billed based on treatment records containing forged patient signatures. See D.E. 1 ¶¶ 1-5, 41-46. As relevant to GEICO's proposed summary judgment motion, GEICO's Complaint alleges that: (i) the billed-for services were performed and billed pursuant to pre-determined, fraudulent treatment and billing protocols; and (ii) the billing codes Defendants used to bill for the services misrepresented and exaggerated the level, nature, and necessity of the services in order to unlawfully inflate the charges submitted to GEICO. See id. ¶¶ 3(i)-(ii) & passim. Based on these allegations, GEICO asserts claims for civil RICO violations, common law fraud, and unjust enrichment. GEICO's damages are premised on hundreds of thousands of dollars paid in reliance on Defendants' fraudulent billing. See id. ¶¶ 286-312. Additionally, GEICO seeks a declaration that it has no obligation to pay Defendants' pending and unpaid billing. See id. ¶¶ 278-285.

Regarding the expert reports authored by Patel, "[a]n expert may be excluded if the expert has a clear conflict of interest or bias of an extraordinary degree." El Ansari v. Graham, 2019 WL 3526714, at *8 (S.D.N.Y. Aug. 2, 2019). By virtue of being a party in this case, Patel has both a clear conflict of interest and bias to an extraordinary degree. See Proteus Books Ltd. v. Cherry Lane Music Co., 873 F.2d 505, 515 (2d Cir. 1989) (finding no error where district court excluded expert witness who was "a party in the case" due to inherent risk that testimony would be "unduly prejudicial"); Hasemann v. Gerber Prods. Co., 2024



Page 2

_____

WL 1282368 at *7 (E.D.N.Y. Mar. 25, 2024) ("To take an obvious example, the Second Circuit has affirmed the exclusion of expert testimony when the witness in question was a party to the case."). The Second Circuit has addressed the exact scenario at issue here. In Ordon v. Karpie, the Second Circuit upheld exclusion of a medical doctor party who sought to act as his own expert witness to opine on healthcare services that he had performed and that were at issue in the litigation. See id., 273 Fed. App'x 27 (2d Cir. 2008) (finding that the medical doctor party was "too intertwined with the facts" and that his testimony "would be more prejudicial than probative because of the difficulty of separating [his] lay testimony about why he approached the surgery as he did from his expert testimony about what a competent professional would have done in the same circumstances"). The same result is warranted here. See Raskin v. Wyatt Co., 125 F. 3d 55, 66 (2d Cir. 1997) ("The court performs the same role at the summary judgment phase as at trial [regarding expert testimony]"). Accordingly, Patel should be prohibited from acting as his own expert witness and, consequently, his expert reports should be excluded from evidence.

Regarding GEICO's proposed motion for summary judgment, the undisputed facts set forth in the attached Rule 56.1 Statement and accompanying declarations establish that: (1) Defendants submitted a large volume of no-fault insurance bills to GEICO through the United States mail; (2) Defendants knew those bills were materially false; (3) the bills were part of a pattern of racketeering spanning multiple years; (4) GEICO paid more than $740,000.00 in reliance on Defendants' facially valid billing and at least $2.8 million of unpaid billing remains in dispute; and (5) GEICO is entitled to summary judgment on its substantive RICO, fraud, unjust enrichment, and declaratory judgment claims.

GEICO's proposed summary judgment motion is based on the following six independent grounds, for which there can be no genuine dispute of material fact.[1] First, Defendants represented that the billed-for services were medically necessary and reimbursable as billed when, in fact, Defendants pervasively billed for services that could not have been performed as billed because, on hundreds of dates of service, Patel worked an impossible number of hours each day. Specifically, during the relevant time period: (1) Patel was employed full-time as a physician at Kirby Forensic Psychiatric Center ("Kirby Hospital") on Wards Island, New York, see 56.1 Statement ¶ 22; (2) Patel commuted to Kirby Hospital from his home by car and then commuted from Kirby Hospital to one of the Patel Medical clinic locations (and sometimes multiple clinic locations on the same day), see id. ¶¶ 23-34; and (3) Patel was the only licensed healthcare provider associated with Patel Medical and testified that he spent a minimum amount of time performing each of the services at issue in this case. See id. ¶¶ 7, 14-17, 20. An analysis of Patel's time working at Kirby Hospital, travel times, total billing, and time personally spent performing services demonstrates that: (1) on 232 dates of service, Patel worked at least 24 hours; (2) on 361 dates of service, Patel worked at least 20 hours; and (3) on 447 separate dates of service, Patel worked at least 17 hours. See id. ¶¶ 40, 42, 44. When accounting for the time needed to travel home, perform basic human functions (e.g., sleeping), and perform any non-treatment tasks in connection with his work at Patel Medical, GEICO submits that *it was impossible* for Patel to have worked 17 or more hours per day.

Second, Defendants represented that Patel Medical's ESWT services billed under CPT code 0101T were medically necessary and reimbursable as billed when, in fact, they were not. Under the New York Workers' Compensation Fee Schedule (the "Fee Schedule"), which governs no-fault claims, CPT code

_____

[1] While the accompanying Rule 56.1 statement provides the exact damages subject to each independent ground, we note that the damages among some of these grounds overlap. In the event the Court grants summary judgment covering some, but not all, of the damages at issue in this case, Plaintiffs will provide clarification to the Court to confirm the exact amount of damages subject to any partial grant of summary judgment.



Page 3

0101T is a Category III code, which are temporary codes used for services that have not yet gained acceptance within the medical community. See id. ¶ 54. As defined in the Fee Schedule, CPT code 0101T is specifically reserved for "high-energy" ESWT. See id. ¶ 51. However, the device Patel Medical used from April 2021 through, at least, March 25, 2022 was a low-cost massager incapable of generating the high-energy shockwaves required by the Fee Schedule. See id. ¶¶ 58-63. Moreover, even though Patel Medical purchased a device capable of generating high-energy shockwaves on March 25, 2022, Defendants continued to perform ESWT using the low-cost massager, as none of the services were performed in a manner consistent with legitimate high-energy ESWT. See id. ¶¶ 65-67. Specifically: (1) none of the services were performed with professional anesthesia services and none of Patel Medical's records indicate that patients experienced pain during the treatment, yet multiple studies have demonstrated that patients typically experience substantial pain when receiving high-energy ESWT; and (2) the ESWT was purportedly administered to the patients' spinal regions, which is contraindicated by professional medical society recommendations. See id. ¶¶ 48-50, 56-57.

Third, Defendants represented that Patel Medical's initial examinations were medically necessary and reimbursable as billed when, in fact, they were not. Specifically: (1) Patel Medical billed under CPT code 99245 for consultations – representing the highest complexity examination – despite not receiving a referral for a consultation and not addressing the report to any referring source, as required by the Fee Schedule (see id. ¶¶ 70-74, 81); and (2) Patel Medical's initial examinations billed under CPT codes 99245 and 99204 did not satisfy the Fee Schedule's requirements (see id. ¶¶ 77-83).

Fourth, Defendants represented that Patel Medical's follow-up examination services were medically necessary and reimbursable as billed when, in fact, they were not, because Patel Medical's follow-up examinations billed under CPT codes 99215 and 99214 did not satisfy the Fee Schedule's requirements. See id. ¶¶ 90-94.

Fifth, Defendants represented that the outcome assessment testing ("OAT") services were medically necessary and reimbursable as billed when, in fact, OAT is not an accepted treatment modality in the field of pain management and, in any event, was typically billed on the same dates as Patel Medical's examinations, in violation of the Fee Schedule. See id. ¶¶ 97-102.

Sixth, and finally, Defendants represented that the EDX testing services were medically necessary when, in fact, they were performed pursuant to a predetermined treatment protocol as demonstrated by the report of GEICO's expert, who found that Patel Medical's EDX testing was performed in violation of prevailing medical standards and had tested the exact same set of nerves, without variation, in virtually every patient. See id. ¶¶ 105-108.[2]

In sum, GEICO respectfully submits that the undisputed facts in this matter entitle GEICO to summary judgment on: (i) its RICO claim against Patel; and (ii) its claims against Patel and Patel Medical for common-law fraud, unjust enrichment, and declaratory judgment.

We thank the Court for its continuing attention to this matter.

---

[2] Assuming Patel's expert reports are excluded, the only expert evidence offered by Defendants is the report of Stanley J. Matthew, M.D., who reviewed only five claims where Patel Medical billed for EDX testing. In this RICO action, alleging that Defendants engaged in fraudulent treatment and billing patterns and practices across a large number of claims, Plaintiffs respectfully submit that an expert report based on a review of five claims is woefully insufficient to raise a genuine dispute of material fact.

Page 4

        Respectfully submitted,

        RIVKIN RADLER LLP

        */s/ Sean Gorton*
        Sean Gorton, Esq.

cc:    All counsel via ECF