United States District Court
Eastern District of New York

-----------------------------------X

GOVERNMENT EMPLOYEES INSURANCE COMPANY; GEICO INDEMNITY COMPANY; GEICO GENERAL INSURANCE COMPANY; and GEICO CASUALTY COMPANY,

*Plaintiffs*,

- against -

BHARGAV PATEL, M.D. and PATEL MEDICAL CARE, P.C.,

*Defendants*.

-----------------------------------X

**Memorandum & Order**

No. 23-CV-2835 (KAM)(SDE)

**Kiyo A. Matsumoto, United States District Judge:**

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively "GEICO" or "Plaintiffs") allege that Defendants Bhargav Patel, M.D. ("Dr. Patel") and Patel Medical Care, P.C. ("Patel Medical") (collectively "Defendants") have engaged in a fraudulent, racketeering scheme to unjustly profit from New York State's No-Fault Insurance Laws. This Court previously granted GEICO's motion for a stay and preliminary injunction of the state court collection proceedings and arbitration proceedings commenced by Defendants against GEICO. Following the close of discovery, GEICO moves for summary judgment, (ECF Nos. 93-95) and to exclude Defendants' proffered expert

reports by Dr. Patel, exclude five patient declarations, and impose sanctions under 28 U.S.C. § 1927 and the Court's inherent authority. (ECF Nos. 96-98.) For the reasons provided below, the Court grants in part and denies in part GEICO's motion for summary judgment, grants GEICO's motion to exclude Defendants' proffered expert reports and testimony and patient declarations, denies GEICO's motion for sanctions, and dismisses GEICO's unjust enrichment claim as duplicative.

## BACKGROUND

### I. Factual Background

The Court assumes the parties' familiarity with the facts of this case and the statutory background of the New York Comprehensive Automobile Insurance Reparations Act, New York Insurance Law §§ 5101-5109, which is also known as the "No-Fault Insurance Laws."[1] The Court, therefore, discusses the facts and procedural history relevant to the motions before the Court to exclude, to impose sanctions, and for summary judgment.

Based on the Parties' Local Rule 56.1 Statements, declarations, and exhibits, the Court has construed the facts in a manner favorable to the non-moving parties—Defendants—and finds that the following material facts are not in genuine dispute.

[1] The Court provided a full explanation of the factual and statutory background in its January 8, 2024 decision. (ECF No. 28, Memorandum of Order granting GEICO's Motion for a Preliminary Injunction); *Government Employees Ins. Co. v. Patel*, No. 23-CV-2835 (KAM) (PK), 2024 WL 84139 (E.D.N.Y. Jan. 8, 2024).

On July 3, 2015, Dr. Patel obtained his license to practice medicine in New York. (Pls.' 56.1 Statement ¶ 1.) Dr. Patel incorporated his own practice, Patel Medical, on July 19, 2019 and is the practice's sole owner and licensed practitioner. (*Id.* ¶¶ 2-3, 7.) Starting in 2019, Dr. Patel provided healthcare services to GEICO insureds in New York through Patel Medical and sought reimbursements from GEICO for his services as an assignee of the GEICO insureds' no-fault insurance benefits. (*Id.* ¶ 4.) Dr. Patel submitted reimbursement requests for services such as initial and follow-up patient encounters, outcome assessment testing, extracorporeal shockwave therapy ("ESWT"), and certain electrodiagnostic testing, including electromyography tests ("EMG") and nerve conduction velocity ("NCV") tests. (*Id.* ¶¶ 5-6.)

Defendants billed GEICO through the United States mail, and GEICO paid Defendants $740,000.00 on the no-fault insurance benefits claims submitted between 2019 to March 5, 2026, the date GEICO's 56.1 Statement alleging these facts was filed. (*Id.* ¶¶ 8, 10.) In addition, Defendants have billed GEICO at least $2,800,000.00 for no-fault insurance benefits that remain unpaid. (*Id.* ¶ 9.) Defendants commenced state court collection actions and no-fault collection arbitrations to collect on the outstanding bills, but the state court collection actions and collection

arbitrations are currently stayed for the remainder of this proceeding. (*Id.* ¶ 9.)

A. Defendants' Billing Hours

Defendants hired the medical billing company Tangent EHR LLC ("Tangent") to submit bills to insurance carriers, including GEICO, on Patel Medical's behalf from 2019 until, at least 2023. (Pls.' 56.1 Statement ¶¶ 11-12.) During this time, Defendants billed insurance companies, including GEICO, over $10 million for healthcare services. (*Id.* ¶ 21.) From 2020 to, at least, 2023, Dr. Patel also worked at Kirby Forensic Psychiatric Center ("Kirby Hospital") located on Wards Island in New York, New York. (*Id.* ¶ 22.)

On many days, Dr. Patel worked at both Kirby Hospital and at his own practice. (*Id.* ¶ 24.) From 2019-2022, Dr. Patel lived in Bellerose, New York, and, sometime in 2023, Dr. Patel moved to a residence in Glen Oaks, New York. (*Id.* ¶ 23.) Dr. Patel traveled by car when he needed to work at both Patel Medical, Kirby Hospital, and other locations to treat patients. (*Id.* ¶ 24.) Dr. Patel traveled between seven to twenty miles when commuting from his residence to a work location or from one work location to another work location for outpatient services. (*Id.* ¶¶ 25-34.) Dr. Patel often worked between four to eight hours when he worked at Kirby Hospital. (*Id.* ¶¶ 35-39.) Between 2019 and 2023, GEICO paid approximately $1,392,080.50 to Patel Medical for services

billed on dates where Dr. Patel recorded hours at both Kirby Hospital and Patel Medical. (*Id.* ¶¶ 41, 43, 45.)

B. Defendants' Use of Billing Codes

1. Extracorporeal Shockwave Therapy (ESWT)

Defendants billed for ESWT services under the current procedural terminology ("CPT") code 0101T for a charge of $700.39 per unit. (Pls.' 56.1 Statement ¶¶ 46-47.) Defendants did not perform ESWT services with professional anesthesia services, and Defendants performed ESWT services on the spinal region of "multiple" GEICO insureds. (*Id.* ¶¶ 48, 50.) The 2019 New York State Workers' Compensation Medical Fee Schedule ("2019 Fee Schedule") defines CPT code 0101T as an "[e]xtracorporeal shock wave involving musculoskeletal system, not otherwise specified, high energy," and CPT code 0101T is used to identify "emerging technology" that has "not yet gained acceptance within the medical community." (*Id.* ¶¶ 51, 54.) Devices able to deliver "high-energy shockwaves" must be registered with the Food and Drug Administration. (ECF No. 70-18, Expert Report of Scott Metzger, M.D. ("Dr. Metzger Report") at 12-13.)[2]

Between April 2021 and March 25, 2022, GEICO issued $229,027.53 in payments to Defendants for ESWT services billed under CPT code 0101T. (Pls.' 56.1 Statement ¶ 64.) On March 25,

[2] Unless otherwise noted, pincites refer to the page number generated by CM/ECF.

2022, Defendants purchased a Duolith SD-1 T-Top shockwave machine ("Duolith Machine") from Medical Wave, LLP, which can generate a high-energy shockwave as defined by CPT code 0101T. (*Id.* ¶¶ 65–66.) After March 25, 2022, GEICO issued $37,260.73 in payments to Defendants for ESWT services billed under CPT code 0101T. (*Id.* ¶ 68.)

2. <u>Initial Patient Encounters</u>

Defendants billed initial patient encounters under either CPT code 99245 or 99204. (*Id.* ¶ 69.) Healthcare professionals usually bill under CPT code 99245 when they have performed a consultation at the request of "the attending physician, the employer, an attorney, or other appropriate source," and consultations performed at the request of another physician or other appropriate source are reimbursable at a higher rate than patient examinations that are not performed at the request of another physician or other appropriate source. (ECF No. 70-19, 2019 New York State Workers' Compensation Medical Fee Schedule ("2019 Fee Schedule") at 28; Pls.' 56.1 Statement ¶ 71.) Under the Fee Schedule, a patient encounter billed under CPT code 99245 typically consists of an approximately eighty-minute face-to-face meeting with the patient, and a patient encounter billed under CPT code 99204 typically consists of an approximately forty-five-minute face-to-face meeting with the patient. (Pls.' 56.1 Statement ¶¶ 75–76; 2019 Fee Schedule at 28, 31.) GEICO issued $73,686.32 in payments to

Defendants for initial patient encounters billed under CPT code 99245 and $2,380.87 in payments for initial patient encounters billed under CPT code 99204. (Pls.' 56.1 Statement ¶¶ 84-85.)

3. Follow-Up Patient Encounters

Defendants billed GEICO for follow-up patient encounters under either CPT code 99215, 99214, or 99213. (*Id.* ¶ 86.) Each code signified a follow-up encounter for a typical amount of time. Healthcare providers represented that the provider conducted a face-to-face meeting with the patient for approximately forty minutes when billing under CPT code 99215, for approximately twenty-five minutes when billing under CPT code 99214, and for approximately fifteen minutes when billing under CPT code 99213. (Pls.' 56.1 Statement ¶¶ 87-89; 2019 Fee Schedule at 28-29.) GEICO issued $55,676.06 in payments to Defendants for follow-up patient encounters billed under CPT code 99215 and $122,312.07 in payments for follow-up patient encounters bill under CPT code 99214. (Pls.' 56.1 Statement ¶¶ 95-96.)

4. Outcome Assessment Testing

Defendants billed GEICO for outcome assessment testing under CPT code 99358 and, on multiple occasions, billed GEICO for outcome assessment testing on the same date as other evaluation services. (*Id.* ¶¶ 97, 100.) GEICO issued $128,742.88 in payments to Defendants for outcome assessment testing on dates where

Defendants also billed for an initial encounter or a follow-up encounter. (*Id.* ¶ 103.)

5. Electrodiagnostic Testing

Healthcare providers use the electrodiagnostic tests relevant to this action—EMG and NCV tests—to diagnose radiculopathy. (*Id.* ¶ 104.) Defendants billed GEICO for NCV tests that examined more than thirteen nerves, though the American Association of Neuromuscular and Electrodiagnostic Medicine ("AANEM") advises that NCV tests of three motor nerves and NCV tests of two sensory nerves are sufficient to diagnose radiculopathy in 90% of patients. (*Id.* ¶¶ 105-06.) GEICO issued $93,302.73 in payments to Defendants for EMG and NCV tests. (*Id.* ¶ 109.)

## II. Procedural History

GEICO filed its complaint on April 17, 2023. (ECF No. 1, Complaint ("Compl.").) The complaint alleged five claims: 1) Declaratory Judgment; 2) RICO under 18 U.S.C. § 1962(c); 3) RICO conspiracy under 18 U.S.C. § 1962(d); 4) Common-Law Fraud; and 5) Unjust Enrichment. (*Id.* ¶¶ 278-312.) On December 22, 2023, GEICO moved for a stay and a preliminary injunction of collection proceedings in state court and in arbitration. (ECF No. 24, Motion to Stay and Enjoin Defendants' Collection Proceedings.) On January 8, 2024, the Court granted GEICO's motion and stayed all no-fault collection arbitrations pending before the American Arbitration Association and all pending state court collection proceedings

between GEICO and Defendants. (ECF No. 28, Order dated 01/28/2024.) The Court also preliminarily enjoined Defendants from commencing any new No-Fault insurance collection arbitrations or lawsuits against GEICO. (*Id.*) Defendants appealed and the Second Circuit affirmed this Court's decision. (ECF No. 29, Notice of Appeal); *Gov't Emp. Ins. Co. v. Patel*, 166 F.4th 280 (2d Cir. 2026). On November 14, 2025, the parties jointly filed a letter certifying that discovery was closed. (ECF No. 69, Joint Letter Certifying Completion of Discovery.) At a February 3, 2026, pre-motion conference, GEICO represented to the Court that it was prepared to voluntarily dismiss the John Doe defendants and GEICO's RICO conspiracy claim, and, on February 10, 2026, the parties filed a stipulation of dismissal for the RICO conspiracy claim. (Minute Entry dated 02/03/2026; ECF No. 79, Stipulation of Dismissal of RICO Conspiracy Claim.) GEICO then filed a fully briefed motion for summary judgment and motion to exclude Defendants' expert witness report, witness declarations, and for imposition of sanctions on May 8, 2026. (ECF No. 93-95, Plaintiffs' Motion for Summary Judgment; ECF No. 96-98, Plaintiffs' Motion to Exclude.)[3]

[3] The Court directed GEICO to refile its motion to exclude under a different description, but, after GEICO provided a sufficient explanation for labeling its motion as a "motion to strike," the Court permitted GEICO to refile its motion to exclude on May 11, 2026 for administrative reasons. (ECF No. 102.) The Court, however, will cite to the documents filed on May 8, 2026.

## **LEGAL STANDARD**

I. *Daubert* and Federal Rule of Evidence 702

The admissibility of expert witness testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. To enforce Rule 702, courts undertake a "gatekeeping" function and apply a permissive and liberal test to decide if a proffered expert's testimony is admissible. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588-89, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

To determine if an expert's testimony is admissible, a court must consider: "(1) whether the witness is a qualified expert; (2) whether the opinion is based on application of reliable data and methodology to the facts of the case; and (3) whether the expert's testimony will assist the trier of fact to understand the evidence or determine an issue of fact." *Evers v. Hoffman*, 822 F. Supp. 3d 295, 300 (E.D.N.Y. 2026) (quoting *Nicolas v. ABF Freight Sys.*, No.

19-CV-06513 (HG) (JAM), 2024 WL 915179, at *1 (E.D.N.Y. Jan. 24, 2024); *accord Nimely v. City of New York*, 414 F.3d 381,396-97 (2d Cir. 2005).

Courts must also consider if, under Federal Rule of Evidence 401, the expert's report is relevant to making the existence of a material fact more or less probable and if, under Federal Rule of Evidence 403, the expert's report's probative value will not be substantially outweighed by the risk of unfair prejudice. *Bustamante v. KIND, LLC*, 100 F.4th 419, 427 (2d Cir. 2024). Moreover, a court may exclude an expert's testimony if the court finds that the expert has "a clear conflict of interest or bias of an extraordinary degree." *Hasemann v. Gerber Prods. Co.*, Nos. 15-CV-2995(EK)(JAM), 16-CV-1153(EK)(JAM), 17-CV-0093(EK)(JAM), 2024 WL 1282368, at *7 (E.D.N.Y. Mar. 25, 2024) (quoting *El Ansari v. Graham*, No. 17-CV-3963 (VEC), 2019 WL 3526714, at *8 (S.D.N.Y. Aug. 2, 2019) and then citing *Proteus Books, Ltd. v. Cherry Lane Music Co., Inc.*, 873 F.2d 502, 515 (2d Cir. 1989)). "In short, the Court must 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *United States v. Leech*, No. 1:24-CR-658 (GHW), 2026 WL 1113346, at *16 (S.D.N.Y. Apr. 24, 2026) (quoting *Kumho Tire*, 526 U.S. at 152).

Courts should not apply the *Daubert* test rigidly. Rather, Rule 702 permits the inquiry to be "flexible," *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (quoting *Daubert*, 509 U.S. at 594, 113 S.Ct. 2786), and "tied to the facts of a particular case." *Id.* (quoting *Kumho Tire*, 526 U.S. at 150, 119 S.Ct. 1167). Following *Daubert*, courts must "focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Bustamante*, 100 F.4th at 427 (quoting *Amorgianos*, 303 F.3d at 266). "So long as 'an expert's analysis is reliable at every step,' it is admissible." *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 123 (2d Cir. 2020) (internal brackets omitted) ("In re Mirena").

A court, however, may find an expert's testimony inadmissible if there is "too great an analytical gap between the data and the opinion proffered." *Gen Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). The party proffering expert testimony bears the burden of establishing the testimony's admissibility by a preponderance of the evidence. *Colwell v. Sig Sauer, Inc.*, 177 F.4th 382, 389 (2d Cir. 2026) (citing *In re Mirena*, 982 F.3d at 122-23 and *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)).

II. <u>Summary Judgment Under Federal Rule of Civil Procedure 56</u>

Summary judgment is governed by Federal Rule of Civil Procedure 56. For the court to grant summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The opposing party, therefore, must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *DeLuca v. Atl. Refining Co.*, 176 F.2d 421, 423 (2d Cir. 1949)); thus "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir. 1996). A fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *accord Colwell*, 177 F.4th at 390 (citing *Bustamante*, 100 F.4th at 432).

"Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party 'must come forth with evidence sufficient to allow a reasonable jury to find in its favor.'" *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (quoting *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001) (internal brackets omitted)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to…depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The court must draw all reasonable inferences in the non-movant's favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). If the opposing party's evidence is "merely colorable" or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

## ANALYSIS

### I. Admissibility of Proffered Expert Witness Testimony

In its motion to exclude, GEICO asks this Court to (1) exclude the expert testimony and two expert reports submitted by Dr. Patel, (2) exclude five witness declarations from Dr. Patel's patients for failure to disclose until after the close of discovery, and

(3) impose sanctions against Defendants. The Court addresses each request in turn.

GEICO first moves to exclude Dr. Patel's expert testimony and his two proffered expert reports. (ECF No. 96-8, Plaintiffs' Memorandum of Law in Support of the Motion to Exclude ("Pls.' Mot. to Exclude") at 11-12.) During discovery, Defendants disclosed Dr. Patel's report on electrodiagnostic testing and Dr. Patel's report on consultations, initial and follow-up patient encounters, outcome assessment testing, and extracorporeal shockwave therapy. (ECF No. 96-2, Dr. Patel Report on Electrodiagnostic Testing ("Dr. Patel Report 1"); ECF No. 96-3, Dr. Patel Report on Patient Consultations, Examinations, and ESWT Therapy ("Dr. Patel Report 2").) GEICO argues that Dr. Patel cannot provide an expert report in this action because he is a defendant, indeed the "main [d]efendant," in this case. (Pls.' Mot. to Exclude at 7-8.) GEICO argues that Dr. Patel, therefore, has a conflict of interest and presents an inherent risk of bias warranting this Court to exclude his own expert reports. (*Id.*) Defendants counter that Dr. Patel's reports were properly served under Federal Rule of Civil Procedure 26, that GEICO did not suffer prejudice or surprise, and that the cases relied upon by GEICO are factually distinguishable from this case. (ECF No. 97, Defendants' Memorandum of Law in Opposition to the Motion to Exclude ("Defs.' Opp. to Mot. to Exclude") at 5-9.)

The Court agrees with GEICO. Dr. Patel is being sued by GEICO for allegedly intentionally misusing billing codes for medical services on which Dr. Patel seeks to provide an expert opinion. (*See generally* Compl.) Dr. Patel's reports could, therefore, be seen by a jury as an attempt to justify his own actions rather than to objectively speak on what a competent healthcare provider would be expected to do. Furthermore, if a jury member makes a credibility determination as to Dr. Patel as a fact witness, the jury member may also make that same credibility determination as to Dr. Patel's testimony as an expert witness, regardless of Dr. Patel's responses.

Because Dr. Patel is directly implicated as a defendant in the factual allegations about which he will offer "expert" opinions, he has a conflict of interest and inherent risk of bias that renders his proffered expert opinion substantially more prejudicial than probative to a finder of fact. Fed. R. Evid. 403, 702; *See also Ordon v. Karpie*, 273 F.App'x 27, 30 (2d Cir. 2008) (summary order) (affirming that the plaintiff could not serve as his own medical expert because he was "too intertwined with the facts of this case as the defendant in the underlying CMEB action and the plaintiff in this action" and his testimony "would be more prejudicial than probative because of the difficulty of separating [his] lay testimony…from his expert testimony."); *Proteus Books Ltd. v. Cherry Lane Music Co., Inc.*, 873 F.2d 502, 515 (2d Cir.

1989) (affirming the district court's exclusion of a proffered expert because the proffered expert was "a party in the case."); *Kranis v. Scott*, 178 F. Supp. 2d 330, 333-34 (E.D.N.Y. 2002) (finding that the plaintiff could not provide expert testimony on the standards of legal malpractice because he was "personally involved at every level of the instant action and his role as past defendant, current plaintiff, attorney, and expert witness would be unfairly prejudicial, misleading, and confusing to the jury."). GEICO's motion to exclude Dr. Patel's two proffered expert reports and expert testimony is granted.

## II. <u>Admissibility of Defendants' Proffered Patient Declarations</u>

After a civil action is filed, a party "must, without awaiting a discovery request, provide to the other parties" the name and contact information, if known, of each individual "likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Parties must make initial disclosures "at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order." Fed. R. Civ. P. 26(a)(1)(C). "A party must make its initial disclosures based on the information then reasonably available to it" and "is not excused from making its disclosures because it has not fully investigated the case." Fed. R. Civ. P. 26(a)(1)(E).

Parties have an ongoing duty to supplement or correct initial

disclosures in a timely manner if they learn that the disclosures are materially incomplete or incorrect. Fed. R. Civ. P. 26(e)(1)(A). Specifically, supplemented disclosure includes information that was "previously unknown or unavailable, that renders information previously provided . . . inaccurate or misleading because it was incomplete." *See S.W. v. City of New York*, No. CV 2009-1777 (ENV) (MDG), 2011 WL 3038776 at *2 (E.D.N.Y. July 25, 2011) (citation omitted).

A party may not use as evidence any witnesses or other information that it has not timely disclosed in accordance with Rules 26(a) and (e), unless such failure is harmless or substantially justified. Fed. R. Civ. P. 37(c)(1). These rules are meant to prevent the practice of "sandbagging" an opposing party with new evidence. *Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (citation omitted). The party seeking Rule 37 sanctions bears the burden of showing that the opposing party failed to timely disclose information. *See Markey v. Lapolla Indus.*, Inc., No. CV 12-4622 (JS) (AKT), 2015 WL 5027522, at *16 (E.D.N.Y. Aug. 25, 2015), report and recommendation adopted, No. 12-CV-4622(JS)(AKT), 2016 WL 324968 (E.D.N.Y. Jan. 26, 2016) (citations omitted). A party may do so by showing that the opposing party failed to disclose information before the relevant discovery deadline. *Pal v. New York Univ.*, No. 06 Civ. 5892 (PAC) (FM), 2008 WL 2627614, at *3 (S.D.N.Y. June 30, 2008). The party

facing sanctions must then show that its failure to comply with Rule 26 is either substantially justified or harmless and therefore deserving of a lesser sanction. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006). To determine if it should exercise its discretion and exclude the untimely disclosures, a court should consider four factors: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. and Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (citing *Outley v. City of New York*, 837 F.2d 587, 590–91 (2d Cir. 1988)).

On June 18, 2025, Magistrate Judge Eshkenazi issued a detailed denial of Defendants' request for extension of discovery.[4] (Order dated 06/18/2025.) Judge Eshkenazi found that Defendants failed to show good cause because they waited too long to request the information after completing depositions and because they failed to show how the additional information sought was "essential" to their defenses. (*Id.*) The parties then certified that discovery was complete on November 14, 2025. (ECF No. 69.) Defendants therefore knew well ahead of time when discovery was set to close

[4] The Court had previously granted four discovery extensions, which were requested jointly or on consent of all parties. (ECF Nos. 34, 37; Orders dated 03/18/2025 and 04/30/2025.)

that the Court would not permit an extension to collect or provide additional evidence. Yet, Defendants did not disclose the patient declarations until they filed the declarations as part of Defendants' 56.1 counterstatement on March 5, 2026. (ECF Nos. 82-7–82-11.) Defendants, inexplicably, do not present opposing arguments to GEICO's motion to exclude their proffered statements of the five patients. The Court, therefore, assesses GEICO's motion to exclude the patient statements as unopposed.

After considering the relevant factors, the Court will exclude the five patient statements proffered by Defendants. Defendants failed to explain their failure to timely disclose the patient declarations to GEICO, GEICO will suffer prejudice because it has not been afforded the opportunity to review the statements before they were filed in opposition to GEICO's motion and to depose each of the patients, and discovery will not be reopened, as Judge Eshkenazi already denied Defendants an extension of discovery on June 18, 2025. GEICO's motion to exclude the five patient declarations proffered by Defendants is granted.

III. Sanctions

The standard for sanctions under the Court's inherent authority and under 28 U.S.C. § 1927 are the same and may be evaluated together. *Jones v. Combs*, 759 F. Supp. 3d 534, 540 (S.D.N.Y. 2024); *see also Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) ("Thus, [t]o impose sanctions under

either authority, the trial court must find clear evidence that (1) the offending party's claim were entirely meritless and (2) the party acted for improper purposes.") (quoting *Agee v. Paramount Communications, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)). "[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent authority is…that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 144 (2d Cir. 2012) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)).

"A federal court may exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023) (citing *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013)). "In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Enmon*, 675 F.3d at 143 (quoting *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)). "[B]oth findings 'must be supported by a high degree of specificity in the factual

findings.'" *Id.* (quoting *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009)). Bad faith is also the "touchstone" for an award under Section 1927. *Revson*, 221 F.3d at 79 (quoting *United States v. Int'l Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991)).

GEICO argues that the Court should impose sanctions on Defendants for their attempts to qualify Dr. Patel as an expert witness and for filing the patient declarations in support of its 56.1 counterstatement. (Pls.' Mot. to Exclude at 16-17.) The Court declines to do so. A party and her counsel may have reasonably believed that a party possessing specialized knowledge in a complex subject area, such as medicine, may be permitted by a court to testify as an expert if the party's report seems particularly compelling and probative. Here, the Court did not find Dr. Patel's report to be sufficiently probative as to substantially outweigh its prejudicial risk and so excluded Dr. Patel's report. Furthermore, the Court does not find that sanctions are necessary in addition to exclusion of Dr. Patel's reports and denying him the ability to testify as an expert. Similarly, the Court does not find that additional sanctions are necessary for Defendants' untimely disclosure of the patient declarations. The Court's imposition of Rule 37 sanctions is sufficient. GEICO's motion for the Court to impose additional

sanctions on Defendants under its inherent authority and under 28 U.S.C. § 1927 is denied.

IV. RICO Claim

Under 18 U.S.C. § 1962(c), Congress "makes it unlawful for any person engaged in interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Liberty Mut. Ins. Co. v. Excel Imaging, Co.*, 879 F. Supp. 2d 243 (E.D.N.Y. 2012) (Weinstein, J.) (quoting 18 U.S.C. § 1962(c)). "RICO creates a private cause of action for 'any person injured in his business or property by reason of a violation of section 1962' of RICO." *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (quoting 18 U.S.C. § 1964(c)); *accord Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 600-01, 145 S.Ct. 931, 221 L.Ed.2d 475 (2025). "To prevail on a RICO claim, [a] plaintiff[] must show (1) a substantive RICO violation under 18 U.S.C. § 1962, (2) injury to the plaintiff's business or property, and (3) that such injury was by reason of the substantive RICO violation." *Edmonson v. Raniere*, 751 F. Supp. 3d 136, 158 (E.D.N.Y. 2024) (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 83 (2d Cir. 2015)); *accord Alix v. McKinsey & Co., Inc.*, 23 F.4th 196, 203 (2d Cir. 2022) (citing *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013)). To establish the first element, "the complaint must allege the existence of seven constituent

elements: (1) that the defendant, (2) through the commission of two or more acts, (3) constituting a pattern (4) of racketeering activity, (5) directly or indirectly invests in, or maintains an interest in, or participates in, (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Id.* at 159 (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)). Here, GEICO argues that it has proven a civil RICO claim against Defendants because Defendants engaged in a RICO enterprise, committed at least two acts of mail fraud constituting a pattern of racketeering activity which affected interstate commerce.

A. <u>Substantive RICO Violation</u>

1. <u>RICO Person and RICO Enterprise</u>

Under 18 U.S.C. § 1962(c), "one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 121 S.Ct. 2087, 2090, 150 L.Ed.2d 198 (2001). 18 U.S.C. § 1961 defines a RICO "person" to include "any individual or entity capable of holding a legal or beneficial interest in property" and a RICO "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §§ 1961(3)-(4). The two need only be

legally distinct, not actually distinct. *Cedric Kushner*, 533 U.S. at 166. Thus, GEICO argues, and the Court agrees, that Dr. Patel qualifies as a RICO "person" and that Patel Medical qualifies as a distinct RICO "enterprise." (ECF No. 93-10, Plaintiffs' Memorandum of Law in Support of the Motion for Summary Judgment ("Pls.' Mem. of Law for Summ. J.") at 29.

2. Two or More Acts Constituting a Pattern of Racketeering Activity

A plaintiff claiming a civil RICO violation must also show that the RICO enterprise committed two acts of racketeering activity in a ten-year period. *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) (citing 18 U.S.C. § 1961(5)). Furthermore, the plaintiff must show that "the predicate acts of racketeering activity by a defendant are 'related, *and* that they amount to or pose a threat of continued criminal activity.'" *Id.* (citing *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 29, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). A plaintiff may show a continued threat of predicate acts through either an "open-ended" pattern of racketeering activity or a "closed-ended" pattern of racketeering activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241 (1989). GEICO argues that it has established a closed-ended pattern. (ECF No. 93-10, Plaintiffs' Motion for Summary Judgment ("Pls.' Mot. for Summ. J.") at 33.) To establish a closed-ended pattern, the

plaintiff must submit evidence establishing related predicate acts extending over a substantial period of time. *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 487 (2d Cir. 2014); *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)

"Mail fraud is a RICO predicate act." *Travelers Personal Ins. Co. v. Electrostim Med. Servs., Inc.*, No. 24-CV-8138 (MKB), 2025 WL 2637674, at *15 (E.D.N.Y. Sept. 13, 2025) (citing *Bascuñán v. Elsaca*, 927 F.3d 108, 120–21 (2d Cir. 2019) and 18 U.S.C. § 1961(1)). "The essential elements of mail and wire fraud are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *United States v. Runner*, 143 F.4th 146, 154 (2d Cir. 2025) (quoting *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017)). "To prove a scheme to defraud, the [plaintiff] must prove that the defendant made misrepresentations that were 'material,' and 'that the defendant acted with fraudulent intent.'" *Id.* at 154 (quoting *Weaver*, 860 F.3d at 94).

a) Billing Twenty-Four Hours in a Day

GEICO has presented evidence that Defendants billed GEICO on certain days for hours that were equal to or exceeded twenty-four hours, that GEICO issued $347,2269.62 in payments to Patel Medical for services billed on those dates because of Defendants' billing representations, and that Defendants used the United States mail

to send bills from New York to GEICO in Virginia. (Pls.' 56.1 Statement ¶¶ 10, 40-41; ECF No. 71-6, Declaration of Jillian Gardella ("Gardella Decl.") ¶¶ 9, 25.) GEICO correctly asserts that Dr. Patel cannot possibly work twenty-four or more hours in a day, and a reasonable factfinder must conclude that Dr. Patel was either aware of his conduct or demonstrated reckless disregard for the accuracy of the codes and amounts he billed to GEICO. GEICO also submits a chart showing that Dr. Patel submitted bills for twenty-four or more hours of work on specific dates during the years 2020 to 2023. (ECF No. 70-17 ("Billed Hours Chart").)

Defendants attempt to create a genuine factual dispute as to whether Defendants billed twenty-four or more hours' worth of services on the days alleged by GEICO. The Court does not find Defendants arguments to be availing. First, Defendants take issue with GEICO stating that it factored in the hours Dr. Patel worked at Kirby Hospital and the hours of his travel, and Defendants then list dates on which, according to GEICO's own presented information, Dr. Patel did not work at Kirby Hospital. (ECF No. 82, Defendants 56.1 Counterstatement ("Defs.' 56.1 Counterstatement") ¶ 40.) The Court understands Defendants to be arguing that GEICO is alleging that Dr. Patel worked at Kirby Hospital and commuted there on every date listed in paragraph 40 of GEICO's 56.1 statement. Defendants' argument is incorrect. GEICO did not incorporate Dr. Patel's hours worked at Kirby

Hospital and hours commuting for every date that is listed. Rather, GEICO listed all of the dates Dr. Patel claimed to have worked twenty-four or more hours and, on the dates when Dr. Patel logged hours at Kirby Hospital or another location requiring travel, GEICO included those hours with the hours Dr. Patel billed for his work at Patel Medical on that date. (Pls.' 56.1 Statement ¶ 40; Billed Hours Chart.)

Second, Defendants argue that GEICO's records show that GEICO was not billed by Dr. Patel on certain dates. (Defs.' 56.1 Counterstatement ¶ 40.) The dates provided by Defendants, however, do not correspond with any of the dates listed at paragraph 40 of GEICO's 56.1 statement. Defendants' second contention, thus, fails to raise a genuine dispute of material fact.

Third, Defendants argue that GEICO incorrectly estimates the hours Dr. Patel worked because GEICO estimated the hours based on Dr. Patel's deposition answers of how long his billed services under certain codes typically lasted. (Defs.' 56.1 Counterstatement ¶ 40.) Defendants argue that Dr. Patel's deposition testimony provided generic rather than definitive times for how long he provided services billed under specific codes. Defendants cite to Dr. Patel's deposition, sample billing statements, and a report conducted by GEICO's Special Investigation Unit ("SIU") to support its argument. (*Id.*) The report by the SIU is unsworn, does not meet the requirements of 28

U.S.C. § 1746, and is therefore inadmissible. (ECF No. 82-6 ("SIU Report"); *See Alpha Cap. Anstalt v. Intellipharmaceutics Int'l Inc.*, No. 19-CV-9270 (DLC), 2021 WL 2896040, at *5 (S.D.N.Y. July 9, 2021) (finding a proffered expert report to be inadmissible because it was unsworn and lacked the required language of 28 U.S.C. § 1746); *Jimenez v. System-Freight, Inc.*, No. CV-2007-0935 (MDG), 2010 WL 2653358, at *3 (E.D.N.Y. June 25, 2010) (finding an unsworn expert report to be inadmissible at the summary judgment stage).

Nor do the sample bill and GEICO's use of Dr. Patel's deposition testimony create genuine issues of material fact. A reasonable jury could find that GEICO reasonably used Dr. Patel's deposition testimony to estimate how long Dr. Patel performed the services for which he billed GEICO because Dr. Patel's deposition testimony aligned with the typical amount of time listed for the same services in the 2019 Fee Schedule. Defendants also failed to present sufficient admissible evidence, beyond a sample bill, to create a genuine dispute of fact that GEICO's estimates could have overestimated Dr. Patel's billed hours, especially on the dates that GEICO's evidence established Dr. Patel billed far above twenty-four hours.[5]

[5] GEICO presents four dates when Dr. Patel billed for over fifty hours on each date and twenty-five dates when Dr. Patel billed between forty to forty-five hours on each date. (ECF No. 70-17 at 1-2.)

Lastly, Defendants present patient evaluations that Dr. Patel completed one or a few days after the patient examination. Defendants appear to imply that GEICO, therefore, accounted for the hours for those patients' examinations on the incorrect date. The Court is not persuaded. Dr. Patel noted the date of the actual examination on each evaluation form, and GEICO correctly counted Dr. Patel's hours on the date that the examination was performed not on the date that the evaluation form was submitted. Defendants also fail to show how those specific examinations would affect the dates on which GEICO alleges Dr. Patel worked at least twenty-four hours.

Courts have often found that summary judgment is inappropriate for fraud-based claims because fraudulent intent is "a factual question involving the parties' states of mind." *Gov't Emp. Ins. Co. v. Jacobson*, No. 15-CV-07236 (ERK) (RML), 2021 WL 2589717, at *11 (E.D.N.Y. June 24, 2021) (quoting *Golden Budha Corp. v. Canadian Land Co. of Am., N.V.*, 931 F.2d 196, 201–02 (2d Cir. 1991); *see also Gov't Emp. Ins. Co. v. Davy*, No. 22-CV-06158 (HG), 2024 WL 69099, at *2–3 (E.D.N.Y. Jan. 5, 2024); *Gov't Emp. Ins. Co. v. DG Esthetic and Therapy Ctr., Inc.*, No. 18-CV-20921-CMA, 2019 WL 1992930, at *9 (S.D. Fla. Apr. 19, 2019). This case is different, at least as to GEICO's theory of liability that Dr. Patel had fraudulent intent when he billed twenty-four hour days in a single day. A reasonable fact finder must conclude that Dr.

Patel knowingly billed those hours, even though it was an impossible amount of time to work in one day, or that Dr. Patel recklessly disregarded the fact that his billing practice caused him to log twenty-four or more hours of services over 100 times. (Billed Hours Chart); *See Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 158 (2d Cir. 2012) ("Plaintiffs my satisfy the scienter requirement by producing 'evidence of conscious misbehavior or recklessness.'") (quoting *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009)); *see also United States v. Krizek*, 909 F. Supp. 32, 34 (D.D.C. 1995) (finding, in the False Claims Act context, that the defendants were liable under the FCA for instances when the defendants billed in excess of twenty four hours in a single day).

b) <u>Billing Twenty and Seventeen Hours in a Day and Upcoding</u>

Twenty and seventeen hours of work in a single day is demanding, however, GEICO has not presented evidence to establish that working such hours is impossible. (Pls. Mot. for Summ. J. at 7-11.) A reasonable jury would not necessarily find working seventeen to twenty hours in a day to be impossible. Thus, GEICO cannot establish at the summary judgment stage that Dr. Patel billed those hours with fraudulent intent. Nor can Defendants establish that Dr. Patel possessed fraudulent intent if he "upcoded," meaning billing for costlier medical procedures than

were actually performed, for certain medical services. (*Id.* at 18–26.) In those instances, Dr. Patel's state of mind remains a triable issue of fact for a jury. *Gelb v. Board of Elections of New York*, 224 F.3d 149, 157 (2d Cir. 2000) (citing *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) and *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir. 1984)).

3. Affecting Interstate Commerce

A RICO plaintiff need only demonstrate a minimal effect on interstate commerce. *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) (citing *United States v. Barton*, 647 F.2d 224, 233 (2d Cir. 1981)). GEICO does so by showing that Defendants sent bills from New York to Virginia through the United States mail. (Gardella Decl. ¶ 9.); *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 230 (E.D.N.Y. 2009) (citing *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 n.12 (2d Cir. 2004)).

B. Injury to Property and Causation

"[A] civil RICO plaintiff must establish that the RICO violation at issue was a proximate cause of the injury to the plaintiff's business or property for which redress is sought." *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1344 (2d Cir. 1994) (collecting cases). GEICO has submitted sufficient evidence to establish that Defendants submitted fraudulent bills to GEICO and that GEICO paid Defendants in response to receiving those

bills. Therefore, Defendants' substantive RICO violation injured GEICO's business or property.

GEICO's motion for summary judgment as to its civil RICO claim is granted as to liability for the dates when Defendants billed at least twenty-four hours. The Court, however, denies summary judgment as to the amounts alleged to be paid for dates when Dr. Patel worked between seventeen and twenty hours and as to the amounts that were overpaid because of alleged upcoding. Liability as to the remaining RICO claims and damages as to all RICO claims to which Defendants are found liable will be decided at trial.

V. Common-Law Fraud

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 189-90 (2d Cir. 2023) (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015); *accord Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (quoting *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006) and citing *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 827, 59 N.E.3d 485, 491, 37 N.Y.S.3d 750 (2016)). "At the summary judgment stage, a plaintiff must offer enough evidence

to allow a reasonable jury to find by clear and convincing evidence that each of the elements is met." *Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, 723 F. Supp. 3d 212, 226 (E.D.N.Y. 2024) (quoting *Loreley Fin. (Jersey) No. 3 Ltd.*, 13 F.4th at 259-60). "Clear and convincing evidence is evidence that satisfies the factfinder that it is highly probable that what is claimed actually happened and it is evidence that is neither equivocal nor open to opposing presumptions." *Id.* (quoting *Loreley Fin. (Jersey) No. 3 Ltd.*, 13 F.4th at 260).

For the reasons provided above for GEICO's RICO claim, GEICO satisfies the first three elements of common-law fraud as to the dates when Dr. Patel billed twenty-four or more hours. The Court also finds that GEICO reasonably relied on Defendants' representations. "Courts have consistently held that insurers are entitled to rely on a healthcare provider's billing representations in similar circumstances." *Jacobson*, 2021 WL 2589717, at *16 (collecting cases). So too here. Lastly, GEICO has shown that its reliance on Defendants' misrepresentations caused injury because GEICO paid Defendants for services that were fraudulently billed. The Court therefore grants summary judgment as to liability on GEICO's fraud claim for dates when Dr. Patel billed twenty-four or more hours. GEICO's motion for summary judgment on all other theories of common-law fraud are denied because fraudulent intent remains a genuine issue of material fact.

Liability as to the remaining common-law fraud claims and damages as to all fraud claims for which Defendants are found to be liable shall be decided at trial.

VI. Unjust Enrichment

"The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Paulwels*, 83 F.4th at 186 (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)). When, as here, a plaintiff alleges an unjust enrichment claim and a fraud claim, however, the unjust enrichment claim may be found to be "duplicative" of the fraud claim if based on the same factual predicates. *See e.g., Union Mut. Fire Ins. Co. v. Citimed Complete Med. Care, P.C.*, No. 24-CV-06111 (NCM) (VMS), 2026 WL 787869, *11 (E.D.N.Y. Mar. 20, 2026) (citing *Gov't Emp. Ins. Co. v. Galperin*, No. 23-CV-09241, 2025 WL 1029433, at *7 (E.D.N.Y. Feb. 24, 2025)). GEICO's unjust enrichment claim is indeed based off the same fraudulent No-Fault insurance scheme as GEICO's common law fraud claim. Indeed, in its complaint, GEICO alleges the same amount of damages for its fraud and unjust enrichment claims. (Compl. ¶¶ 304, 312.) The Court thus finds that GEICO's unjust enrichment claim is duplicative of its common-law fraud claim and dismisses the unjust enrichment claim as duplicative. *See Gov't Emp. Ins.*

*Co. v. Mayzenberg*, 2022 WL 5173745, at *13 (E.D.N.Y. Aug. 24, 2022) (dismissing the plaintiff's unjust enrichment claim as duplicative and therefore moot).

VII. Declaratory Judgment

"A party seeking a declaratory judgment bears the burden of proving that the district court has jurisdiction." *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 177 (2d Cir. 2001) (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993)). To do so, the moving party must establish that an "actual controversy" exists, *id.* (quoting 28 U.S.C. § 2201(a)), meaning that the controversy is "real and substantial…admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (quoting *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993)).

Under Second Circuit precedent, courts considering exercising their authority under the Declaratory Judgment Act must consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 105 (2d Cir. 2012). Courts may also consider "(1) whether the proposed remedy is being used merely for

'procedural fencing' or a 'race to *res judicata*'; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy." *Chevron Corp. v. Camacho Naranjo*, 667 F.3d 232, 245 (2d Cir. 2012) (quoting *Dow Jones & Co. v. Harrods, Ltd.*, 346 F.3d 357, 359–60 (2d Cir. 2003)). Furthermore, the Supreme Court has stated that courts should avoid "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).

GEICO requests summary judgment on its declaratory judgment claim "based upon Defendants' continued effort to seek reimbursement on their outstanding and unpaid billing submissions" that GEICO asserts are fraudulently inflated. (Pls.' Mot. for Summ. J. at 28.) Defendants, however, are preliminarily enjoined from bringing new actions in state court or arbitrations, and the currently pending state collection and arbitration proceedings are stayed. GEICO's RICO and common-law fraud claims that rely on a theory that Defendants billed twenty or seventeen hours in a day or on a theory that Defendants fraudulently upcoded when they billed GEICO still present genuine issues of disputed fact about Dr. Patel's intent. This Court, therefore, will not interfere with the disposition of the pending state court litigations beyond

the stay and preliminary injunction already imposed. GEICO's motion for summary judgment on its declaratory judgment claim is denied.

VIII. Permanent Injunction, Costs, and Damages

The Court has granted summary judgment only as to GEICO's RICO and common-law fraud claims that are based on GEICO's theory that Defendants billed for an impossible number of hours when they billed for at least twenty-four hours. Dr. Patel's intent remains a genuine issue of fact to be tried before a jury, and, if the jury finds Defendants to be liable on some or all of the claims tried before it, damages also remain an outstanding issue. The Court therefore finds that it is premature to convert its preliminary injunction into a permanent injunction or to impose damages, treble damages, reasonable attorneys' fees, or pre-judgment interest. GEICO's request for a permanent injunction, reasonable attorneys' fees, pre-judgment interest on the fraud claims, and treble damages on the RICO claims are denied without prejudice.

## CONCLUSION

For the reasons provided above, GEICO's motion to exclude Dr. Patel's expert reports and five patient declarations is **GRANTED.** GEICO's motion for sanctions under its inherent authority and under 28 U.S.C. § 1927 is **DENIED.** GEICO's motion for summary judgment is **GRANTED IN PART and DENIED IN PART.** Specifically, GEICO's motion

for summary judgment as to its RICO claim and common-law fraud claim is granted as to liability on the allegations that GEICO issued payments for dates when Dr. Patel billed for at least twenty-four hours of services performed in one day. Damages will be determined at trial. GEICO's motion for summary judgment is denied as to the RICO claim and common-law fraud claim based on Dr. Patel billing twenty hour days and seventeen hour days and on Dr. Patel upcoding for services rendered, and as to the declaratory judgment claim. GEICO's unjust enrichment claim is **DISMISSED AS DUPLICATIVE.** Lastly, pursuant to GEICO's representation at the February 3, 2026 pre-motion conference, **John Does #1–10 are DISMISSED**, and the Clerk of Court is respectfully requested to adjust the case caption.

The parties are directed to confer, discuss settlement, and **advise the Court by October 6, 2026**, how they intend to proceed.

**So ordered.**

Dated: September 29, 2026
Brooklyn, New York

**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York